# U.S. District Court
## District of New Hampshire (Concord)
## CIVIL DOCKET FOR CASE #: <u>1:21–cv–01077–PB</u>

Local 8027, AFT–New Hampshire, AFL–CIO et al v. NH Department of Education, Commissioner et al
Assigned to: Judge Paul J. Barbadoro
Cause: 28:2201 Constitutionality of State Statute(s)

Date Filed: 12/20/2021
Date Terminated: 06/24/2024
Jury Demand: None
Nature of Suit: 950 Constitutional – State Statute
Jurisdiction: Federal Question

**<u>Plaintiff</u>**

**Andres Mejia**

represented by **David A. Vicinanzo**
Nixon Peabody LLP
900 Elm St, 14th Flr
Manchester, NH 03101–2031
603 628–4000
Email: dvicinanzo@nixonpeabody.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chris Erchull**
GLBTQ Legal Advocates & Defenders (GLAD)
18 Tremont St, Ste 950
Boston, MA 02108
520–360–1846
Email: cerchull@glad.org
*ATTORNEY TO BE NOTICED*

**Emerson J. Sykes**
American Civil Liberties Union Foundation
125 Broad St, 18th Flr
New York, NY 10004
646 885–8331
Email: esykes@aclu.org
*ATTORNEY TO BE NOTICED*

**Henry Klementowicz**
American Civil Liberties Union of New Hampshire
18 Low Ave
Concord, NH 03301
603 333–2201
Email: henry@aclu–nh.org
*ATTORNEY TO BE NOTICED*

**Jennifer A. Eber**

Disability Rights Center – NH
64 North Main Street
Suite 2, 3rd Floor
Concord, NH 03301
603–228–0432
Fax: 603–225–2077
Email: jennifere@drcnh.org
*ATTORNEY TO BE NOTICED*

**Kayla Jade Turner**
Disability Rights Center
64 N Main St, Ste 2
Concord, NH 03301–4913
603–410–5188
Email: kaylat@drcnh.org
*ATTORNEY TO BE NOTICED*

**Leah Watson**
American Civil Liberties Union
Foundation
125 Broad St, 18th Flr
New York, NY 10004
404–717–3853
Email: lwatson@aclu.org
*ATTORNEY TO BE NOTICED*

**Morgan C. Nighan**
Nixon Peabody LLP
Exchange Place
53 State St
Boston, MA 02109–2835
617–345–1031
Fax: 855–451–6607
Email: mnighan@nixonpeabody.com
*ATTORNEY TO BE NOTICED*

**Pamela E. Phelan**
Disability Rights Center
64 N Main St, Ste 2
Concord, NH 03301–4913
603 228–0432
Email: pamelap@drcnh.org
*TERMINATED: 10/26/2022*

**Peter J. Perroni**
Peter J. Perroni, ESQ.
73 Princeton
Chelmsford, MA 01863
978–454–3800
Email: peter@nolanperroni.com
*ATTORNEY TO BE NOTICED*

**SangYeob Kim**
American Civil Liberties Union of New
Hampshire
18 Low Ave
Concord, NH 03301
603 224–5591
Fax: 603 617 7264
Email: SangYeob@aclu–nh.org
*ATTORNEY TO BE NOTICED*

**Sarah Hinger**
American Civil Liberties Union
Foundation
125 Broad St, 18th Flr
New York, NY 10004
212–519–7882
Email: shinger@aclu.org
*ATTORNEY TO BE NOTICED*

**Sarah J. Jancarik**
Disability Rights Center
64 N Main St, Ste 2
Concord, NH 03301–4913
603–228–0432
Fax: 603–225–2077
Email: sarahj@drcnh.org
*TERMINATED: 10/26/2022*

**Suzanne Amy Spencer**
Nixon Peabody LLP
900 Elm St, 14th Flr
Manchester, NH 03101–2031
603–628–4000
Email: aspencer@nixonpeabody.com
*ATTORNEY TO BE NOTICED*

**William E. Christie**
Shaheen & Gordon
107 Storrs St
PO Box 2703
Concord, NH 03302–2703
603 225–7262
Email: wchristie@shaheengordon.com
*ATTORNEY TO BE NOTICED*

**Gilles R. Bissonnette**
American Civil Liberties Union of New
Hampshire
18 Low Ave
Concord, NH 03301
603 224–5591
Email: Gilles@aclu–nh.org

**Plaintiff**

| | | |
|---|---|---|
| **Christina Kim Philibotte** | represented by | **David A. Vicinanzo** |

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chris Erchull**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emerson J. Sykes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Henry Klementowicz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jennifer A. Eber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kayla Jade Turner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Leah Watson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Morgan C. Nighan**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Pamela E. Phelan**
(See above for address)
*TERMINATED: 10/26/2022*

**Peter J. Perroni**
(See above for address)
*ATTORNEY TO BE NOTICED*

**SangYeob Kim**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Hinger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah J. Jancarik**
(See above for address)
*TERMINATED: 10/26/2022*

**Suzanne Amy Spencer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William E. Christie**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gilles R. Bissonnette**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **National Education Association–New Hampshire** | represented by | **Emerson J. Sykes**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Esther Kane Dickinson**<br>NEA–New Hampshire<br>9 South Spring St<br>Concord, NH 03301<br>603–224–7751<br>Email: edickinson@nhnea.org<br>*TERMINATED: 02/28/2024*<br><br>**Gilles R. Bissonnette**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED*<br><br>**Jason Walta**<br>National Education Association<br>1201 16th St NW, 8th Flr<br>Washington, DC 20036<br>202–822–7035<br>Fax: 202–822–7033<br>Email: jwalta@nea.org<br>*ATTORNEY TO BE NOTICED*<br><br>**Lauren Snow Chadwick**<br>PO Box 713<br>New London, NH 03257<br>603–731–4296<br>Email: lchadwick@nhnea.org<br>*ATTORNEY TO BE NOTICED*<br><br>**Leah Watson**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Nathan Reed Fennessy**
Preti Flaherty Beliveau Pachios LLP
57 N Main St
PO Box 1318
Concord, NH 03302−1318
603 410−1528
Email: nfennessy@preti.com
*ATTORNEY TO BE NOTICED*

**Peter J. Perroni**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rue Toland**
Preti Flaherty Beliveau Pachios LLP
57 N Main St
PO Box 1318
Concord, NH 03302−1318
603−410−1524
Fax: 603−410−1501
Email: rtoland@preti.com
*TERMINATED: 01/05/2023*

**Sarah Hinger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Suzanne Amy Spencer**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Local 8027, AFT−New Hampshire, AFL−CIO**          represented by   **Harry Sandick**
Patterson Belknap Webb & Tyler
1133 Avenue of the Americas
New York, NY 10036−6710
212−336−2723
Email: hsandick@pbwt.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter J. Perroni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Moerdler**
Patterson Belknap Webb & Tyler
1133 Avenue of the Americas
New York, NY 10036−6710
212−336−2000

Fax: 212–336–2222
Email: cmoerdler@pbwt.com
*ATTORNEY TO BE NOTICED*

**David Kahne**
Steptoe LLP
1114 Avenue of the Americas
Ste Floor 34
New York, NY 10036
212–506–3900
Email: dkahne@stroock.com
*ATTORNEY TO BE NOTICED*

**Elizabeth Clarke Milburn**
Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
212–918–3000
Fax: 212–918–3100
Email: tina.milburn@hoganlovells.com
*ATTORNEY TO BE NOTICED*

**Emerson J. Sykes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gilles R. Bissonnette**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua M. Goldman**
Patterson Belknap Webb & Tyler
1133 Avenue of the Americas
New York, NY 10036–6710
212–336–2000
Fax: 212–336–2222
Email: jgoldman@pbwt.com
*ATTORNEY TO BE NOTICED*

**Leah Watson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Hinger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Joceyln Merrill**          represented by   **Harry Sandick**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter J. Perroni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Moerdler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Kahne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth Clarke Milburn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emerson J. Sykes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gilles R. Bissonnette**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua M. Goldman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Leah Watson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Hinger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Kimberly Green Elliot**                    represented by    **Harry Sandick**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter J. Perroni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Moerdler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Kahne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth Clarke Milburn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emerson J. Sykes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gilles R. Bissonnette**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua M. Goldman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Leah Watson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Hinger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ryan Richman**                    represented by    **Harry Sandick**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter J. Perroni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Moerdler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Kahne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth Clarke Milburn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emerson J. Sykes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gilles R. Bissonnette**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua M. Goldman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Leah Watson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Hinger**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Meghan Evelyn Durden**                represented by    **Peter J. Perroni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Moerdler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Kahne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth Clarke Milburn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emerson J. Sykes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gilles R. Bissonnette**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Leah Watson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Hinger**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**John Dube**                           represented by   **Harry Sandick**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter J. Perroni**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles Moerdler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Kahne**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elizabeth Clarke Milburn**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Emerson J. Sykes**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gilles R. Bissonnette**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joshua M. Goldman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Leah Watson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sarah Hinger**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**NH Department of Education,**         represented by   **Samuel R. V. Garland**
**Commissioner**                                        NH Attorney General's Office (Civil)
*in his official capacity*                              Civil Bureau

*other*
Frank Edelblut

33 Capitol St
Concord, NH 03301–6397
603 271–3650
Email: samuel.rv.garland@doj.nh.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nathan W. Kenison–Marvin**
NH Attorney General's Office (DOJ)
Department of Justice
33 Capitol St
Concord, NH 03301
603–271–3650
Fax: 603–271–2110
Email: nathan.w.kenison–marvin@doj.nh.gov
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**NH Attorney General**
*in his official capacity*
*other*
John M. Formella

represented by  **Samuel R. V. Garland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nathan W. Kenison–Marvin**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**NH Commission for Human Rights,
Executive Director**
*in her official capacity*
*other*
Ahni Malachi

represented by  **Samuel R. V. Garland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nathan W. Kenison–Marvin**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**NH Commission for Human Rights,
Chairperson**
*in his official capacity*
*other*
Christian Kim

represented by  **Samuel R. V. Garland**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nathan W. Kenison–Marvin**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**NH Department of Labor,
Commissioner**

represented by  **Samuel R. V. Garland**
(See above for address)

*in his official capacity*
*other*
Ken Merrifield

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nathan W. Kenison–Marvin**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/20/2021 | 1 | NEW CASE/ COMPLAINT Filing fee $ 402, receipt number ANHDC–2197173 filed by National Education Association–New Hampshire, Christina Kim Philibotte, Andres Mejia. (Attachments: # 1 Exhibit 1 –– Text of Banned Concept Act, # 2 Exhibit 2 –– Educator Code of Conduct, # 3 Exhibit 3 –– LEACT Materials, # 4 Exhibit 4 –– DOJ Implicit Bias Training, # 5 Exhibit 5 –– Courts Implicit Bias Training, # 6 Exhibit 6 –– 9.22.20 Trump Executive Order, # 7 Exhibit 7 –– 9.28.20 Executive Order Enforcement Memo, # 8 Exhibit 8 –– HB544, # 9 Exhibit 9 –– Select HB544 Written Testimony Before House Committee, # 10 Exhibit 10 –– HB2 Materials, # 11 Exhibit 11 –– Rep. Itse Op–ed, # 12 Exhibit 12 –– Open Letter from Business Community, # 13 Exhibit 13 –– SAU70 Resolution Against HB544, # 14 Exhibit 14 –– Hopkinton School District Opposing HB544, # 15 Exhibit 15 –– Manchester School District Opposition to HB544, # 16 Exhibit 16 –– Edelblut Op–ed, # 17 Exhibit 17 –– GACDI Letters, # 18 Exhibit 18 –– 7.12.21 and 8.5.21 NEA–NH Letters, # 19 Exhibit 19 –– 7.21.21 Guidance, # 20 Exhibit 20 –– 9.7.21 Opinion, # 21 Exhibit 21 –– McLane Middleton Discussion of Banned Concepts Act, # 22 Exhibit 22 –– Drummond Woodsum Discussion of Banned Concepts Act, # 23 Exhibit 23 –– Department of Education Complaint Website, # 24 Exhibit 24 –– Moms for Liberty Bounty Tweet, # 25 Civil Cover Sheet, # 26 Summons – Waiver Summons (Edelblut), # 27 Summons – Waiver Summons (Formella), # 28 Summons – Waiver Summons (Malachi), # 29 Summons – Waiver Summons (Kim), # 30 Summons – Waiver Summons (Merrifield))(Bissonnette, Gilles) (Entered: 12/20/2021) |
| 12/20/2021 | 2 | NOTICE of Attorney Appearance by SangYeob Kim on behalf of Andres Mejia, Christina Kim Philibotte Attorney SangYeob Kim added to party Andres Mejia(pty:pla), Attorney SangYeob Kim added to party Christina Kim Philibotte(pty:pla).(Kim, SangYeob) (Entered: 12/20/2021) |
| 12/20/2021 | 3 | NOTICE of Attorney Appearance by Esther Kane Dickinson on behalf of National Education Association–New Hampshire Attorney Esther Kane Dickinson added to party National Education Association–New Hampshire(pty:pla).(Dickinson, Esther) (Entered: 12/20/2021) |
| 12/20/2021 |  | Case assigned to Judge Paul J. Barbadoro. The case designation is: 1:21–cv–1077–PB. Please show this number with the judge designation on all future pleadings. (mc) (Entered: 12/20/2021) |
| 12/20/2021 | 4 | NOTICE of Attorney Appearance by Morgan C. Nighan on behalf of Andres Mejia, Christina Kim Philibotte Attorney Morgan C. Nighan added to party Andres Mejia(pty:pla), Attorney Morgan C. Nighan added to party Christina Kim Philibotte(pty:pla).(Nighan, Morgan) Modified on 12/20/2021 to remove: Appearance for National Education Association–New Hampshire (js). (Entered: 12/20/2021) |
| 12/20/2021 | 5 |  |

| | | |
|---|---|---|
| | | NOTICE of Attorney Appearance by Nathan Reed Fennessy on behalf of National Education Association–New Hampshire Attorney Nathan Reed Fennessy added to party National Education Association–New Hampshire(pty:pla).(Fennessy, Nathan) (Entered: 12/20/2021) |
| 12/20/2021 | | NOTICE. This case has been designated for Electronic Case Filing. All further submissions shall be filed in compliance with the Administrative Procedures for Electronic Case Filing. Pro se litigants are not required to file electronically and may continue to file documents in paper format. Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click HERE. (mc) (Entered: 12/20/2021) |
| 12/20/2021 | 6 | Summonses issued electronically as to NH Attorney General, NH Commission for Human Rights, Chairperson, NH Commission for Human Rights, Executive Director, NH Department of Education, Commissioner, NH Department of Labor, Commissioner. **NOTICE: Counsel shall print and serve the summonses and all attachments in accordance with Fed. R. Civ. P. 4.** (Attachments: # 1 Notice ECF)(mc) (Entered: 12/20/2021) |
| 12/20/2021 | | Corrective Entry to 4 Notice of Attorney Appearance by Morgan C. Nighan. Entry corrected by removing appearance with respect to the National Education Association–New Hampshire chosen mistakenly at filing. (js) (Entered: 12/20/2021) |
| 12/20/2021 | 7 | NOTICE of Attorney Appearance by Rue Toland on behalf of National Education Association–New Hampshire Attorney Rue Toland added to party National Education Association–New Hampshire(pty:pla).(Toland, Rue) (Entered: 12/20/2021) |
| 12/22/2021 | 8 | WAIVER OF SERVICE Returned Executed as to NH Department of Education, Commissioner by All Plaintiffs. Served/Mailed on 12/20/2021. Answer Follow Up on 2/22/2022. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Bissonnette, Gilles) (Entered: 12/22/2021) |
| 12/22/2021 | 9 | WAIVER OF SERVICE Returned Executed as to NH Attorney General by All Plaintiffs. Served/Mailed on 12/20/2021. Answer Follow Up on 2/22/2022. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Bissonnette, Gilles) (Entered: 12/22/2021) |
| 12/22/2021 | 10 | WAIVER OF SERVICE Returned Executed as to NH Commission for Human Rights, Executive Director by All Plaintiffs. Served/Mailed on 12/20/2021. Answer Follow Up on 2/22/2022. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Bissonnette, Gilles) (Entered: 12/22/2021) |
| 12/22/2021 | 11 | WAIVER OF SERVICE Returned Executed as to NH Commission for Human Rights, Chairperson by All Plaintiffs. Served/Mailed on 12/20/2021. Answer Follow Up on 2/22/2022. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Bissonnette, Gilles) (Entered: 12/22/2021) |
| 12/22/2021 | 12 | WAIVER OF SERVICE Returned Executed as to NH Department of Labor, Commissioner by National Education Association–New Hampshire, Christina Kim Philibotte, Andres Mejia. Served/Mailed on 12/20/2021. Answer Follow Up on 2/22/2022. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Bissonnette, Gilles) (Entered: |

| | | 12/22/2021) |
|---|---|---|
| 12/22/2021 | 13 | NOTICE of Attorney Appearance by Chris Erchull on behalf of Andres Mejia, Christina Kim Philibotte Attorney Chris Erchull added to party Andres Mejia(pty:pla), Attorney Chris Erchull added to party Christina Kim Philibotte(pty:pla).(Erchull, Chris) (Entered: 12/22/2021) |
| 12/22/2021 | 14 | Assented to MOTION for Travis Hill to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC−2198515.) filed by Andres Mejia, Christina Kim Philibotte.(Bissonnette, Gilles) (Entered: 12/22/2021) |
| 12/22/2021 | 15 | Assented to MOTION for Alice O'Brien to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC−2198517.) filed by National Education Association−New Hampshire.(Bissonnette, Gilles) (Entered: 12/22/2021) |
| 12/22/2021 | 16 | Assented to MOTION for Jason Walta to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC−2198525.) filed by National Education Association−New Hampshire.(Bissonnette, Gilles) (Entered: 12/22/2021) |
| 12/22/2021 | 17 | Assented to MOTION for Leah Watson to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC−2198526.) filed by Andres Mejia, Christina Kim Philibotte.(Bissonnette, Gilles) (Entered: 12/22/2021) |
| 12/22/2021 | 18 | NOTICE of Attorney Appearance by Henry Klementowicz on behalf of Andres Mejia, Christina Kim Philibotte Attorney Henry Klementowicz added to party Andres Mejia(pty:pla), Attorney Henry Klementowicz added to party Christina Kim Philibotte(pty:pla).(Klementowicz, Henry) (Entered: 12/22/2021) |
| 12/22/2021 | 19 | NOTICE of Attorney Appearance by William E. Christie on behalf of Andres Mejia, National Education Association−New Hampshire, Christina Kim Philibotte Attorney William E. Christie added to party Andres Mejia(pty:pla), Attorney William E. Christie added to party National Education Association−New Hampshire(pty:pla), Attorney William E. Christie added to party Christina Kim Philibotte(pty:pla).(Christie, William) (Entered: 12/22/2021) |
| 12/23/2021 | 20 | NOTICE of Attorney Appearance by Suzanne Amy Spencer on behalf of Andres Mejia, National Education Association−New Hampshire, Christina Kim Philibotte Attorney Suzanne Amy Spencer added to party Andres Mejia(pty:pla), Attorney Suzanne Amy Spencer added to party National Education Association−New Hampshire(pty:pla), Attorney Suzanne Amy Spencer added to party Christina Kim Philibotte(pty:pla).(Spencer, Suzanne) (Entered: 12/23/2021) |
| 12/28/2021 | | **ENDORSED ORDER granting 14 Motion Travis Hill to Appear Pro Hac ; granting 15 MOTION for Alice O'Brien to Appear Pro Hac Vice; granting 16 MOTION for Jason Walta to Appear Pro Hac Vice; granting 17 MOTION for Leah Watson to Appear Pro Hac Vice.** *Text of Order: Granted. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* **So Ordered by Judge Paul J. Barbadoro.** <br><br> The clerks office will provide the admitted attorney with instructions on how to obtain access to electronic filing by separate email. The admitted attorney must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of New Hampshire. After obtaining e−filing access, the admitted attorney must file an appearance to begin receiving electronic notices.(vln) |

| | | |
|---|---|---|
| | | (Entered: 12/28/2021) |
| 12/29/2021 | 21 | NOTICE of Attorney Appearance by Sarah J. Jancarik on behalf of Andres Mejia, Christina Kim Philibotte Attorney Sarah J. Jancarik added to party Andres Mejia(pty:pla), Attorney Sarah J. Jancarik added to party Christina Kim Philibotte(pty:pla).(Jancarik, Sarah) (Entered: 12/29/2021) |
| 01/10/2022 | 22 | NOTICE of Attorney Appearance by Lauren Snow Chadwick on behalf of National Education Association−New Hampshire Attorney Lauren Snow Chadwick added to party National Education Association−New Hampshire(pty:pla).(Chadwick, Lauren) (Entered: 01/10/2022) |
| 01/12/2022 | 23 | Assented to MOTION for Sarah Hinger to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC−2204372.) filed by Andres Mejia, Christina Kim Philibotte.(Bissonnette, Gilles) (Entered: 01/12/2022) |
| 01/12/2022 | 24 | Assented to MOTION for Emerson Sykes to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC−2204382.) filed by Andres Mejia, Christina Kim Philibotte.(Bissonnette, Gilles) (Entered: 01/12/2022) |
| 01/12/2022 | | **ENDORSED ORDER granting 23 Motion for Sarah Hinger to Appear Pro Hac Vice; granting 24 Motion for Emerson Sykes to Appear Pro Hac Vice.** *Text of Order: Granted. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* **So Ordered by Judge Paul J. Barbadoro.** <br><br> The clerks office will provide the admitted attorney with instructions on how to obtain access to electronic filing by separate email. The admitted attorney must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of New Hampshire. After obtaining e−filing access, the admitted attorney must file an appearance to begin receiving electronic notices.(vln) <br><br> (Entered: 01/12/2022) |
| 02/18/2022 | 25 | Assented to MOTION to Consolidate Cases this case with 1:21−cv−01063−JL *(CONSOLIDATE INTO CASE NO. 1:21−CV−01077 AND TO CONDUCT A STATUS CONFERENCE DURING THE WEEK OF FEBRUARY 21, 2022 BEFORE ISSUANCE OF ANY FORM CONSOLIDATION ORDER)* filed by Andres Mejia, National Education Association−New Hampshire, Christina Kim Philibotte.(Bissonnette, Gilles) (Entered: 02/18/2022) |
| 02/18/2022 | 26 | NOTICE of Attorney Appearance by Samuel R. V. Garland on behalf of NH Attorney General, NH Commission for Human Rights, Chairperson, NH Commission for Human Rights, Executive Director, NH Department of Education, Commissioner, NH Department of Labor, Commissioner Attorney Samuel R. V. Garland added to party NH Attorney General(pty:dft), Attorney Samuel R. V. Garland added to party NH Commission for Human Rights, Chairperson(pty:dft), Attorney Samuel R. V. Garland added to party NH Commission for Human Rights, Executive Director(pty:dft), Attorney Samuel R. V. Garland added to party NH Department of Education, Commissioner(pty:dft), Attorney Samuel R. V. Garland added to party NH Department of Labor, Commissioner(pty:dft).(Garland, Samuel) (Entered: 02/18/2022) |
| 02/18/2022 | 27 | Assented to MOTION to Extend Time to Answer to March 14, 2022 filed by NH Attorney General, NH Commission for Human Rights, Chairperson, NH Commission for Human Rights, Executive Director, NH Department of Education, Commissioner, |

| | | NH Department of Labor, Commissioner.(Garland, Samuel) (Entered: 02/18/2022) |
|---|---|---|
| 02/23/2022 | | NOTICE of Hearing re: 25 Assented to MOTION to Consolidate Cases this case with 1:21−cv−01063−JL. Status Conference set VIA VIDEO CONFERENCE for 2/28/2022 02:00 PM before Judge Paul J. Barbadoro.(js) (Entered: 02/23/2022) |
| 02/23/2022 | | **ENDORSED ORDER granting 27 Assented to MOTION to Extend Time to Answer to March 14, 2022.** *Text of Order: Motion to Extend Time to Answer is granted. For the reasons stated in the motion, the court finds good cause to extend the deadline for issuing the scheduling order pursuant to Fed. R. Civ. P. 16(b).* **So Ordered by Judge Paul J. Barbadoro.(js)** (Entered: 02/23/2022) |
| 02/23/2022 | 28 | NOTICE of Attorney Appearance by Jason Walta on behalf of National Education Association−New Hampshire Attorney Jason Walta added to party National Education Association−New Hampshire(pty:pla).(Walta, Jason) (Entered: 02/23/2022) |
| 02/25/2022 | 29 | Assented to MOTION to Continue (RESCHEDULE THE FEBRUARY 28, 2022 HEARING/STATUS CONFERENCE ON CONSOLIDATION) filed by Andres Mejia, National Education Association−New Hampshire, Christina Kim Philibotte.Follow up on Objection on 3/11/2022. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Bissonnette, Gilles) (Entered: 02/25/2022) |
| 02/27/2022 | | **ENDORSED ORDER granting 29 Motion to Continue (RESCHEDULE THE FEBRUARY 28, 2022 HEARING/STATUS CONFERENCE ON CONSOLIDATION).** *Text of Order: Granted.* **So Ordered by Judge Paul J. Barbadoro. Status Conference set VIA VIDEO CONFERENCE for 3/8/2022 09:00 AM before Judge Paul J. Barbadoro.(js)** (Entered: 02/28/2022) |
| 03/08/2022 | | Minute Entry for proceedings held before Judge Paul J. Barbadoro. STATUS CONFERENCE held VIA VIDEO CONFERENCE on 3/8/2022. Court granted motion to consolidate 21−cv−1063−JL into this case. The clerk shall docket the complaint from Judge Laplante's case into this action. Case caption shall be updated to reflect the case caption from Judge Laplante's case. The parties shall meet and confer and file a proposed case management order within 14 days. (Court Reporter: Jan−Marie Glaze) (Pltfs Atty: Gilles R. Bissonnette, David A. Vicinanzo, Peter Perroni, Morgan C. Nighan, Chris Erchull, Esther Kane Dickinson, Jason Walta, Nathan Reed Fennessy, Emerson Sykes, Charles Moerdler, David J. Kahne) (Defts Atty: Samuel R. V. Garland)(Total Hearing Time: 45 minutes) (js) (Entered: 03/08/2022) |
| 03/08/2022 | 30 | COMPLAINT against NH Attorney General, NH Commission for Human Rights, Chairperson, NH Department of Education, Commissioner with Jury Demand filed by Local 8027, AFT−New Hampshire, AFL−CIO, Joceyln Merrill, Kimberly Green Elliot, Ryan Richman, Meghan Evelyn Durden, John Dube. (Attachments: # 1 Exhibit A, # 2 Civil Cover Sheet, # 3 Formella Summons, # 4 Kim Summons, # 5 Edelblut Summons)(js) (Entered: 03/08/2022) |
| 03/08/2022 | | **ORAL ORDER granting 25 Assented to MOTION to Consolidate Cases this case with 1:21−cv−01063−JL (CONSOLIDATE INTO CASE NO. 1:21−CV−01077). 1:21−cv−01063−JL to be statistically closed. So Ordered by Judge Paul J. Barbadoro.(js)** (Entered: 03/15/2022) |
| 03/09/2022 | 31 | |

| | | |
|---|---|---|
| | | NOTICE of Attorney Appearance by Charles Moerdler on behalf of John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Joceyln Merrill, Ryan Richman Attorney Charles Moerdler added to party John Dube(pty:pla), Attorney Charles Moerdler added to party Meghan Evelyn Durden(pty:pla), Attorney Charles Moerdler added to party Kimberly Green Elliot(pty:pla), Attorney Charles Moerdler added to party Local 8027, AFT–New Hampshire, AFL–CIO(pty:pla), Attorney Charles Moerdler added to party Joceyln Merrill(pty:pla), Attorney Charles Moerdler added to party Ryan Richman(pty:pla).(Moerdler, Charles) (Entered: 03/09/2022) |
| 03/09/2022 | 32 | NOTICE of Attorney Appearance by David Kahne on behalf of John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Joceyln Merrill, Ryan Richman Attorney David Kahne added to party John Dube(pty:pla), Attorney David Kahne added to party Meghan Evelyn Durden(pty:pla), Attorney David Kahne added to party Kimberly Green Elliot(pty:pla), Attorney David Kahne added to party Local 8027, AFT–New Hampshire, AFL–CIO(pty:pla), Attorney David Kahne added to party Joceyln Merrill(pty:pla), Attorney David Kahne added to party Ryan Richman(pty:pla).(Kahne, David) (Entered: 03/09/2022) |
| 03/21/2022 | 33 | Joint Assented to MOTION for Entry of Case Management Order filed by Andres Mejia, National Education Association–New Hampshire, Christina Kim Philibotte. Attorney Gilles R. Bissonnette added to party National Education Association–New Hampshire(pty:pla).(Bissonnette, Gilles) (Entered: 03/21/2022) |
| 03/21/2022 | 34 | NOTICE of Attorney Appearance by Pamela E. Phelan on behalf of Andres Mejia, Christina Kim Philibotte Attorney Pamela E. Phelan added to party Andres Mejia(pty:pla), Attorney Pamela E. Phelan added to party Christina Kim Philibotte(pty:pla).(Phelan, Pamela) (Entered: 03/21/2022) |
| 03/21/2022 | | **ENDORSED ORDER granting 33 Joint Assented to Motion for Entry of Case Management Order.** *Text of Order: Granted.* **So Ordered by Judge Paul J. Barbadoro.(js)** (Entered: 03/22/2022) |
| 03/25/2022 | 35 | Assented to MOTION to Exceed Page Limit filed by NH Attorney General, NH Commission for Human Rights, Chairperson, NH Commission for Human Rights, Executive Director, NH Department of Education, Commissioner, NH Department of Labor, Commissioner.(Garland, Samuel) (Entered: 03/25/2022) |
| 03/25/2022 | 36 | MOTION to Dismiss for Failure to State a Claim filed by NH Attorney General, NH Commission for Human Rights, Chairperson, NH Commission for Human Rights, Executive Director, NH Department of Education, Commissioner, NH Department of Labor, Commissioner.Follow up on Objection on 4/8/2022. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Memorandum of Law Memorandum of Law, # 2 Exhibit HB 544 Docket, # 3 Exhibit HB 544 – As Introduced, # 4 Exhibit Amendment to HB 544, # 5 Exhibit HB 2 Docket, # 6 Exhibit Senate Finance Committee Minutes, # 7 Exhibit Amendment to HB 2, # 8 Exhibit Education FAQs, # 9 Exhibit Employer FAQs, # 10 Exhibit Attorney General Opinion)(Garland, Samuel) (Entered: 03/25/2022) |
| 03/25/2022 | 37 | MOTION to Dismiss for Failure to State a Claim filed by NH Attorney General, NH Commission for Human Rights, Chairperson, NH Commission for Human Rights, Executive Director, NH Department of Education, Commissioner, NH Department of Labor, Commissioner.Follow up on Objection on 4/8/2022. The court only follow up |

| | | |
|---|---|---|
| | | date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Garland, Samuel) (Entered: 03/25/2022) |
| 03/28/2022 | | **ENDORSED ORDER granting 35 Assented to Motion to Exceed Page Limit. *Text of Order: Granted.* So Ordered by Judge Paul J. Barbadoro.**(js) (Entered: 03/28/2022) |
| 03/29/2022 | 38 | MOTION for Elizabeth C. Milburn to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2231827.) filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Joceyln Merrill, Ryan Richman.Follow up on Objection on 4/12/2022. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit (Affidavit))(Perroni, Peter) (Entered: 03/29/2022) |
| 03/29/2022 | | ACTION REQUIRED – NOTICE Nonconforming Document re 38 MOTION for Elizabeth C. Milburn to Appear Pro Hac Vice filed by Meghan Evelyn Durden, Kimberly Green Elliot, Joceyln Merrill, John Dube, Ryan Richman, Local 8027, AFT–New Hampshire, AFL–CIO.<br><br>The document fails to comply with LR 7.1– No statement of concurrence was included. File statement as addendum using the Other Documents/Addendum event and link filing(s) to document no. 38.<br><br>The document will remain on file. Please note that unless a document curing the defect is filed by the Notice of Compliance Deadline the matter may be referred to a judicial officer for appropriate action. Compliance Deadline set for 3/30/2022.(js) (Entered: 03/29/2022) |
| 03/29/2022 | 39 | Addendum/ to 38 MOTION for Elizabeth C. Milburn to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2231827.) *pursuant to L.R. 7.1* by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Joceyln Merrill, Ryan Richman. (Perroni, Peter) (Entered: 03/29/2022) |
| 03/31/2022 | | **ENDORSED ORDER granting 38 Motion for Elizabeth C. Milburn to Appear Pro Hac Vice. *Text of Order: Granted. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* So Ordered by Judge Paul J. Barbadoro.**<br><br>The clerk's office will provide the admitted attorney with instructions on how to obtain access to electronic filing by separate email. The admitted attorney must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of New Hampshire. After obtaining e–filing access, the admitted attorney must file an appearance to begin receiving electronic notices.(js)<br><br>(Entered: 03/31/2022) |
| 04/04/2022 | 40 | NOTICE of Attorney Appearance by Sarah Hinger on behalf of John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman Attorney Sarah Hinger added to party John Dube(pty:pla), Attorney Sarah Hinger added to party Meghan Evelyn Durden(pty:pla), Attorney Sarah Hinger added to party Kimberly Green Elliot(pty:pla), Attorney Sarah Hinger added to party Local 8027, AFT–New Hampshire, AFL–CIO(pty:pla), Attorney Sarah Hinger added to party Andres |

| | | |
|---|---|---|
| | | Mejia(pty:pla), Attorney Sarah Hinger added to party Jocelyn Merrill(pty:pla), Attorney Sarah Hinger added to party National Education Association–New Hampshire(pty:pla), Attorney Sarah Hinger added to party Christina Kim Philibotte(pty:pla), Attorney Sarah Hinger added to party Ryan Richman(pty:pla).(Hinger, Sarah) (Entered: 04/04/2022) |
| 04/04/2022 | 41 | NOTICE of Attorney Appearance by Leah Watson on behalf of John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman Attorney Leah Watson added to party John Dube(pty:pla), Attorney Leah Watson added to party Meghan Evelyn Durden(pty:pla), Attorney Leah Watson added to party Kimberly Green Elliot(pty:pla), Attorney Leah Watson added to party Local 8027, AFT–New Hampshire, AFL–CIO(pty:pla), Attorney Leah Watson added to party Andres Mejia(pty:pla), Attorney Leah Watson added to party Joceyln Merrill(pty:pla), Attorney Leah Watson added to party National Education Association–New Hampshire(pty:pla), Attorney Leah Watson added to party Christina Kim Philibotte(pty:pla), Attorney Leah Watson added to party Ryan Richman(pty:pla).(Watson, Leah) (Entered: 04/04/2022) |
| 04/04/2022 | 42 | NOTICE of Attorney Appearance by Elizabeth Clarke Milburn on behalf of John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Joceyln Merrill, Ryan Richman Attorney Elizabeth Clarke Milburn added to party John Dube(pty:pla), Attorney Elizabeth Clarke Milburn added to party Meghan Evelyn Durden(pty:pla), Attorney Elizabeth Clarke Milburn added to party Kimberly Green Elliot(pty:pla), Attorney Elizabeth Clarke Milburn added to party Local 8027, AFT–New Hampshire, AFL–CIO(pty:pla), Attorney Elizabeth Clarke Milburn added to party Joceyln Merrill(pty:pla), Attorney Elizabeth Clarke Milburn added to party Ryan Richman(pty:pla).(Milburn, Elizabeth) (Entered: 04/04/2022) |
| 04/18/2022 | | **ENDORSED ORDER.** *Text of Order: By May 16, 2022, the parties shall jointly file a Bates–stamped copy of the agreed–upon complete legislative history of the challenged state statute. All subsequent filings shall refer to the legislative history using the Bates–stamped version.* **So Ordered by Judge Paul J. Barbadoro.(js)** (Entered: 04/18/2022) |
| 05/16/2022 | 43 | THE PARTIES JOINT SUBMISSION OF LEGISLATIVE HISTORY by Andres Mejia, Christina Kim Philibotte (Attachments: # 1 Exhibit A –– Notice of Conventional Filing re HB544 Legislative History, # 2 Exhibit B –– Notice of Conventional Filing re HB2 Legislative History)(Bissonnette, Gilles) (Entered: 05/16/2022) |
| 05/20/2022 | 44 | Assented to MOTION to Exceed Page Limit on Objections to Motion to Dismiss filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman. Attorney Gilles R. Bissonnette added to party John Dube(pty:pla), Attorney Gilles R. Bissonnette added to party Meghan Evelyn Durden(pty:pla), Attorney Gilles R. Bissonnette added to party Kimberly Green Elliot(pty:pla), Attorney Gilles R. Bissonnette added to party Local 8027, AFT–New Hampshire, AFL–CIO(pty:pla), Attorney Gilles R. Bissonnette added to party Joceyln Merrill(pty:pla), Attorney Gilles R. Bissonnette added to party Ryan Richman(pty:pla).(Bissonnette, Gilles) |

| | | |
|---|---|---|
| | | (Entered: 05/20/2022) |
| 05/20/2022 | 45 | MEMORANDUM in Opposition re 37 MOTION to Dismiss for Failure to State a Claim , 44 Assented to MOTION to Exceed Page Limit on Objections to Motion to Dismiss , 36 MOTION to Dismiss for Failure to State a Claim *(Joint Opposition)* filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman. Attorney Peter J. Perroni added to party Andres Mejia(pty:pla), Attorney Peter J. Perroni added to party National Education Association–New Hampshire(pty:pla), Attorney Peter J. Perroni added to party Christina Kim Philibotte(pty:pla). Follow up on Reply on 5/27/2022. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit Exhibit A– No Left Turn Correspondence 2/7/22, # 2 Exhibit Exhibit B– Commissioner Edelblut Op–Ed 4/15/22)(Perroni, Peter) Modified on 5/23/2022 to add descriptions for exhibits as provided by counsel(js). (Entered: 05/20/2022) |
| 05/20/2022 | 46 | MEMORANDUM in Opposition re 36 MOTION to Dismiss for Failure to State a Claim , 37 MOTION to Dismiss for Failure to State a Claim , 44 Assented to MOTION to Exceed Page Limit on Objections to Motion to Dismiss filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill. Follow up on Reply on 5/27/2022. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Perroni, Peter) (Entered: 05/20/2022) |
| 05/23/2022 | | **ENDORSED ORDER granting 44 Assented to Motion to Exceed Page Limit on Objections to Motion to Dismiss. *Text of Order: Granted.* So Ordered by Judge Paul J. Barbadoro.(js)** (Entered: 05/23/2022) |
| 05/23/2022 | | NOTICE of ECF Filing Error re: 45 Memorandum in Opposition to Motion filed by Andres Mejia, Meghan Evelyn Durden, Kimberly Green Elliot, John Dube, Ryan Richman, Local 8027, AFT–New Hampshire, AFL–CIO, National Education Association–New Hampshire, Jocelyn Merrill, Christina Kim Philibotte. |
| | | No description of exhibit or attachment was included. Exhibit or attachment shall be followed by a short description of the document and shall not exceed five words. AP 2.5(a). See Properly Attach Exhibits to Pleadings in ECF. |
| | | Please email description for exhibits to jennifer_sackos@nhd.uscourts.gov.(js) (Entered: 05/23/2022) |
| 06/10/2022 | 47 | Assented to MOTION to Extend Time to Reply and Surreply filed by NH Attorney General, NH Commission for Human Rights, Chairperson, NH Commission for Human Rights, Executive Director, NH Department of Education, Commissioner, NH Department of Labor, Commissioner.(Garland, Samuel) (Entered: 06/10/2022) |
| 06/13/2022 | | **ENDORSED ORDER granting 47 Assented to Motion to Extend Time to Reply and Surreply. *Text of Order: Granted.* So Ordered by Judge Paul J. Barbadoro. Follow up on Reply on 6/24/2022. Surreply due by 7/22/2022. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (js)** (Entered: 06/13/2022) |
| 06/24/2022 | 48 | REPLY to Objection to Motion re 36 MOTION to Dismiss for Failure to State a Claim , 37 MOTION to Dismiss for Failure to State a Claim *(Reply to Joint* |

| | | |
|---|---|---|
| | | *Objection)* filed by NH Attorney General, NH Commission for Human Rights, Chairperson, NH Commission for Human Rights, Executive Director, NH Department of Education, Commissioner, NH Department of Labor, Commissioner. Surreply due by 6/29/2022. (Garland, Samuel) (Entered: 06/24/2022) |
| 06/24/2022 | 49 | REPLY to Objection to Motion re 36 MOTION to Dismiss for Failure to State a Claim *(Reply to AFT Objection)* filed by NH Attorney General, NH Commission for Human Rights, Chairperson, NH Commission for Human Rights, Executive Director, NH Department of Education, Commissioner, NH Department of Labor, Commissioner. Surreply due by 6/29/2022. (Garland, Samuel) (Entered: 06/24/2022) |
| 07/05/2022 | 50 | NOTICE of Attorney Appearance by Emerson J. Sykes on behalf of John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman Attorney Emerson J. Sykes added to party John Dube(pty:pla), Attorney Emerson J. Sykes added to party Meghan Evelyn Durden(pty:pla), Attorney Emerson J. Sykes added to party Kimberly Green Elliot(pty:pla), Attorney Emerson J. Sykes added to party Local 8027, AFT–New Hampshire, AFL–CIO(pty:pla), Attorney Emerson J. Sykes added to party Andres Mejia(pty:pla), Attorney Emerson J. Sykes added to party Joceyln Merrill(pty:pla), Attorney Emerson J. Sykes added to party National Education Association–New Hampshire(pty:pla), Attorney Emerson J. Sykes added to party Christina Kim Philibotte(pty:pla), Attorney Emerson J. Sykes added to party Ryan Richman(pty:pla).(Sykes, Emerson) (Entered: 07/05/2022) |
| 07/19/2022 | | NOTICE re: 36 MOTION to Dismiss for Failure to State a Claim, 37 MOTION to Dismiss for Failure to State a Claim. Motion Hearing set for 9/14/2022 01:00 PM before Judge Paul J. Barbadoro.(js) (Entered: 07/19/2022) |
| 07/22/2022 | 51 | Assented to MOTION to Exceed Page Limit for Sur–replies Regarding Defendants' Motion to Dismiss filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman.(Bissonnette, Gilles) (Entered: 07/22/2022) |
| 07/22/2022 | 52 | SURREPLY to Reply to 36 MOTION to Dismiss for Failure to State a Claim , 37 MOTION to Dismiss for Failure to State a Claim *(AFT Plaintiffs)* filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Joceyln Merrill. (Perroni, Peter) (Entered: 07/22/2022) |
| 07/22/2022 | 53 | SURREPLY to Reply to 35 Assented to MOTION to Exceed Page Limit , 36 MOTION to Dismiss for Failure to State a Claim *(All Plaintiffs Joint Surreply)* filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman. (Perroni, Peter) (Entered: 07/22/2022) |
| 07/25/2022 | | **ENDORSED ORDER granting 51 Assented to Motion to Exceed Page Limit for Sur–replies Regarding Defendants' Motion to Dismiss. *Text of Order: Granted.* So Ordered by Judge Paul J. Barbadoro.(js)** (Entered: 07/25/2022) |
| 08/23/2022 | 54 | NOTICE of Supplemental Authority by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman. (Attachments: # 1 Exhibit Supplemental |

| | | |
|---|---|---|
| | | Authority)(Perroni, Peter) (Entered: 08/23/2022) |
| 09/14/2022 | | Minute Entry for proceedings held before Judge Paul J. Barbadoro. MOTION HEARING held on 9/14/2022 re 36 MOTION to Dismiss for Failure to State a Claim, 37 MOTION to Dismiss for Failure to State a Claim. Order to issue. (Court Reporter: Brenda Hancock) (Pltfs Atty: Charles Moerdler, Gilles R. Bissonnette, Peter J. Perroni, Elizabeth Clarke Milburn, David Kahne)(Total Hearing Time: 2 hours 30 minutes) (js) (Entered: 09/14/2022) |
| 10/18/2022 | 55 | TRANSCRIPT of Proceedings for Motion Hearing held on September 14, 2022. Court Reporter: Brenda K. Hancock, Telephone # 603–225–1454. Transcript is available for public inspection, but may not be copied or otherwise reproduced, at the Clerk's Office for a period of 90 days. Additionally, only attorneys of record and pro se parties with an ECF login and password who purchase a transcript from the court reporter will have access to the transcript through PACER during this 90–day period. If you would like to order a copy, please contact the court reporter at the above listed phone number.<br><br>**NOTICE: Any party who requests an original transcript has 21 days from service of this notice to determine whether it is necessary to redact any personal identifiers and, if so, to electronically file a Redaction Request.**<br><br>Redaction Request Follow Up 11/8/2022. Redacted Transcript Follow Up 11/18/2022. Release of Transcript Restriction set for 1/13/2023.(js) (Entered: 10/18/2022) |
| 10/26/2022 | 56 | NOTICE of Attorney Withdrawal by Pamela E. Phelan on behalf of Andres Mejia, Christina Kim Philibotte(Phelan, Pamela) (Entered: 10/26/2022) |
| 10/26/2022 | 57 | NOTICE of Attorney Appearance by Jennifer Aimee Eber on behalf of Andres Mejia, Christina Kim Philibotte Attorney Jennifer Aimee Eber added to party Andres Mejia(pty:pla), Attorney Jennifer Aimee Eber added to party Christina Kim Philibotte(pty:pla).(Eber, Jennifer) (Entered: 10/26/2022) |
| 10/26/2022 | 58 | NOTICE of Attorney Withdrawal by Sarah J. Jancarik on behalf of Andres Mejia, Christina Kim Philibotte(Jancarik, Sarah) (Entered: 10/26/2022) |
| 11/08/2022 | 59 | NOTICE of Supplemental Authority by NH Attorney General, NH Commission for Human Rights, Chairperson, NH Commission for Human Rights, Executive Director, NH Department of Education, Commissioner, NH Department of Labor, Commissioner. (Attachments: # 1 Exhibit Frese v. Formella Opinion)(Garland, Samuel) (Entered: 11/08/2022) |
| 11/09/2022 | 60 | RESPONSE re 59 Notice (Other), *of Supplemental Authority* filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman. (Bissonnette, Gilles) (Entered: 11/09/2022) |
| 11/18/2022 | 61 | NOTICE of Supplemental Authority (Second) by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman. (Attachments: # 1 Exhibit Pernell Order)(Bissonnette, Gilles) (Entered: 11/18/2022) |
| 01/05/2023 | 62 | |

| | | |
|---|---|---|
| | | NOTICE of Attorney Withdrawal by Rue Toland on behalf of National Education Association–New Hampshire(Toland, Rue) (Entered: 01/05/2023) |
| 01/12/2023 | 63 | ///**MEMORANDUM & ORDER granting in part and denying in part 36 Motion to Dismiss for Failure to State a Claim; denying 37 Motion to Dismiss for Failure to State a Claim. So Ordered by Judge Paul J. Barbadoro.(js)** (Entered: 01/12/2023) |
| 01/13/2023 | | NOTICE OF PRETRIAL CONFERENCE. Pretrial Conference set VIA VIDEO CONFERENCE for 2/15/2023 04:00 PM before Judge Paul J. Barbadoro. Follow up on Discovery Plan 2/8/2023. (js) (Entered: 01/13/2023) |
| 01/26/2023 | 64 | Assented to MOTION to Extend Time to Answer to February 9, 2023 filed by NH Attorney General, NH Commission for Human Rights, Chairperson, NH Commission for Human Rights, Executive Director, NH Department of Education, Commissioner, NH Department of Labor, Commissioner.(Garland, Samuel) (Entered: 01/26/2023) |
| 01/27/2023 | | **ENDORSED ORDER granting 64 Assented to MOTION to Extend Time to Answer to February 9, 2023.** *Text of Order: Granted.* **So Ordered by Judge Paul J. Barbadoro. (js)** (Entered: 01/27/2023) |
| 02/09/2023 | 65 | Assented to MOTION to Extend Time to File a Discovery Plan to Monday, February 13, 2023 filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman.(Bissonnette, Gilles) (Entered: 02/09/2023) |
| 02/09/2023 | | **ENDORSED ORDER granting 65 Assented to Motion to Extend Time to File a Discovery Plan to Monday, February 13, 2023.** *Text of Order: Granted.* **So Ordered by Judge Paul J. Barbadoro. (js)** (Entered: 02/09/2023) |
| 02/09/2023 | 66 | Assented to MOTION to Extend Time to Answer to February 14, 2023 filed by NH Attorney General, NH Commission for Human Rights, Chairperson, NH Commission for Human Rights, Executive Director, NH Department of Education, Commissioner, NH Department of Labor, Commissioner.(Garland, Samuel) (Entered: 02/09/2023) |
| 02/13/2023 | | **ENDORSED ORDER granting 66 Assented to MOTION to Extend Time to Answer to February 14, 2023.** *Text of Order: Granted.* **So Ordered by Judge Paul J. Barbadoro. (js)** (Entered: 02/13/2023) |
| 02/13/2023 | 67 | Proposed Discovery Plan *(Joint)* filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman. (Bissonnette, Gilles) (Entered: 02/13/2023) |
| 02/14/2023 | 68 | ANSWER to 30 Complaint, filed by NH Attorney General, NH Commission for Human Rights, Chairperson, NH Department of Education, Commissioner.(Garland, Samuel) (Entered: 02/14/2023) |
| 02/14/2023 | 69 | ANSWER to 1 Complaint – New Case,,,,,, filed by NH Attorney General, NH Commission for Human Rights, Chairperson, NH Commission for Human Rights, Executive Director, NH Department of Education, Commissioner, NH Department of Labor, Commissioner.(Garland, Samuel) (Entered: 02/14/2023) |
| 02/15/2023 | | Minute Entry for proceedings held before Judge Paul J. Barbadoro. PRETRIAL CONFERENCE held on 2/15/2023. Discovery plan approved as proposed. Case to be |

| | | decided on cross motions for summary judgment. 50 page limit on briefs. Oral Argument to be held. No reply or surreply shall be allowed. (Court Reporter: Liza Dubois) (Pltfs Atty: Charles Moerdler, Gilles R. Bissonnette, Peter J. Perroni, Elizabeth Clarke Milburn, David Kahne; Morgan C. Nighan, Chris Erchull, Esther Kane Dickinson; Henry Klementowicz; Jennifer Eber; Suzanne Amy Spencer; Nathan Reed Fennessy) (Defts Atty: Samuel Garland)(Total Hearing Time: 1 hour) (js) (Entered: 02/16/2023) |
|---|---|---|
| 02/15/2023 | | **ORAL ORDER approving 67 Discovery Plan. So Ordered by Judge Paul J. Barbadoro.(js)** (Entered: 02/16/2023) |
| 02/17/2023 | 70 | Assented to MOTION to Clarify Order on Discovery Plan *(and for Imposition of a Revised Discovery Plan)* filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Jocelyn Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman.(Bissonnette, Gilles) (Entered: 02/17/2023) |
| 02/21/2023 | 71 | NOTICE of Attorney Appearance by Kayla Jade Turner on behalf of Andres Mejia, Christina Kim Philibotte Attorney Kayla Jade Turner added to party Andres Mejia(pty:pla), Attorney Kayla Jade Turner added to party Christina Kim Philibotte(pty:pla).(Turner, Kayla) (Entered: 02/21/2023) |
| 02/21/2023 | | **ENDORSED ORDER granting 70 Motion to Clarify Order on Discovery Plan (and for Imposition of a Revised Discovery Plan).** *Text of Order: Granted.* **So Ordered by Judge Paul J. Barbadoro.(js)** (Entered: 02/21/2023) |
| 02/21/2023 | | NOTICE of Hearing. Oral Argument set for 8/14/2023 02:00 PM before Judge Paul J. Barbadoro.(js) (Entered: 02/21/2023) |
| 02/22/2023 | | NOTICE OF CANCELLATION: Oral Argument set for 8/14/2023 is CANCELLED. The hearing will be rescheduled after the court confers with the parties about a new date once the briefing is completed. (js) (Entered: 02/22/2023) |
| 03/22/2023 | 72 | TRANSCRIPT of Proceedings for STATUS CONFERENCE HELD VIA VIDEOCONFERENCE on February 15, 2023. Court Reporter: Liza Dubois, Telephone # 603–225–1442. Transcript is available for public inspection, but may not be copied or otherwise reproduced, at the Clerk's Office for a period of 90 days. Additionally, only attorneys of record and pro se parties with an ECF login and password who purchase a transcript from the court reporter will have access to the transcript through PACER during this 90–day period. If you would like to order a copy, please contact the court reporter at the above listed phone number. **NOTICE: Any party who requests an original transcript has 21 days from service of this notice to determine whether it is necessary to redact any personal identifiers and, if so, to electronically file a Redaction Request.** Redaction Request Follow Up 4/12/2023. Redacted Transcript Follow Up 4/24/2023. Release of Transcript Restriction set for 6/20/2023.(js) (Entered: 03/22/2023) |
| 03/24/2023 | 73 | NOTICE of Attorney Appearance by Nathan W. Kenison–Marvin on behalf of NH Attorney General, NH Commission for Human Rights, Chairperson, NH Commission for Human Rights, Executive Director, NH Department of Education, Commissioner, NH Department of Labor, Commissioner Attorney Nathan W. Kenison–Marvin added to party NH Attorney General(pty:dft), Attorney Nathan W. Kenison–Marvin added to party NH Commission for Human Rights, Chairperson(pty:dft), Attorney Nathan |

| | | |
|---|---|---|
| | | W. Kenison–Marvin added to party NH Commission for Human Rights, Executive Director(pty:dft), Attorney Nathan W. Kenison–Marvin added to party NH Department of Education, Commissioner(pty:dft), Attorney Nathan W. Kenison–Marvin added to party NH Department of Labor, Commissioner(pty:dft).(Kenison–Marvin, Nathan) (Entered: 03/24/2023) |
| 05/01/2023 | 74 | NOTICE of Attorney Withdrawal by Suzanne Amy Spencer on behalf of Andres Mejia, National Education Association–New Hampshire, Christina Kim Philibotte Attorney Suzanne Amy Spencer added to party National Education Association–New Hampshire(pty:pla).(Spencer, Suzanne) (Entered: 05/01/2023) |
| 05/03/2023 | 75 | Joint Assented to MOTION for Protective Order filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman. (Attachments: # 1 Exhibit A –– Proposed Protective Order)(Bissonnette, Gilles) (Entered: 05/03/2023) |
| 05/04/2023 | | **ENDORSED ORDER granting 75 Motion for Protective Order. *Text of Order: Granted.* So Ordered by Judge Paul J. Barbadoro.(js)** (Entered: 05/04/2023) |
| 05/04/2023 | 76 | **PROTECTIVE ORDER. So Ordered by Judge Paul J. Barbadoro.(js)** (Entered: 05/04/2023) |
| 05/22/2023 | 77 | Joint Assented to MOTION to Continue and Extend Deadlines ESTABLISHED IN THE COURTS FEBRUARY 15, 2023 ORAL ORDER AND FEBRUARY 21, 2023 ORDER filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman. (Attachments: # 1 Exhibit Civil Form 3)(Bissonnette, Gilles) (Entered: 05/22/2023) |
| 05/24/2023 | | **ENDORSED ORDER granting 77 Joint Assented to MOTION to Continue and Extend Deadlines ESTABLISHED IN THE COURTS FEBRUARY 15, 2023 ORAL ORDER AND FEBRUARY 21, 2023 ORDER *Text of Order: Granted.* So Ordered by Judge Paul J. Barbadoro. (js)** (Entered: 05/24/2023) |
| 05/25/2023 | 78 | THE PARTIES ERRATUM REGARDING THEIR JOINT MOTION TO EXTEND DEADLINES ESTABLISHED IN THE COURTS FEBRUARY 15, 2023 ORAL ORDER AND FEBRUARY 21, 2023 ORDER by National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman(Bissonnette, Gilles) (Entered: 05/25/2023) |
| 05/26/2023 | | **ENDORSED ORDER re: 78 THE PARTIES ERRATUM REGARDING THEIR JOINT MOTION TO EXTEND DEADLINES ESTABLISHED IN THE COURTS FEBRUARY 15, 2023 ORAL ORDER AND FEBRUARY 21, 2023 ORDER. *Text of Order: Reviewed.* So Ordered by Judge Paul J. Barbadoro.(lw)** (Entered: 05/26/2023) |
| 06/23/2023 | 79 | Assented to MOTION to Continue and Extend Deadlines ESTABLISHED IN THE COURTS MAY 24, 2023 ORDER filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman. (Attachments: # 1 Exhibit Civil Form 3)(Bissonnette, Gilles) (Entered: 06/23/2023) |
| 07/10/2023 | | |

| | | |
|---|---|---|
| | | **ENDORSED ORDER granting 79 Motion to Continue and Extend Deadlines ESTABLISHED IN THE COURT'S MAY 24, 2023 ORDER.** *Text of Order: Granted.* **So Ordered by Judge Paul J. Barbadoro.**(jwb) (Entered: 07/10/2023) |
| 07/19/2023 | 80 | NOTICE of Attorney Appearance by Suzanne Amy Spencer on behalf of Andres Mejia, Christina Kim Philibotte (Spencer, Suzanne) (Entered: 07/19/2023) |
| 08/07/2023 | 81 | Assented to MOTION to Extend Time to File Briefing Schedule filed by NH Attorney General, NH Commission for Human Rights, Chairperson. (Attachments: # 1 Exhibit Civil Form 3)(Garland, Samuel) (Entered: 08/07/2023) |
| 08/09/2023 | | **ENDORSED ORDER granting 81 Motion to Extend Time to File Briefing Schedule.** *Text of Order: Granted.* **So Ordered by Judge Paul J. Barbadoro. Summary Judgment Motions due by 8/14/2023. Response deadline set for 9/18/2023.**(jwb) (Entered: 08/09/2023) |
| 08/14/2023 | 82 | Joint Assented to MOTION to Exceed Page Limit for Memoranda of Law In Support of Motions for Summary Judgment filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman.(Bissonnette, Gilles) (Entered: 08/14/2023) |
| 08/14/2023 | 83 | MOTION for Summary Judgment filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman. **HEARING REQUESTED.**Follow up on Objection on 9/13/2023. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Memorandum of Law Notice of Provisional Filing Under Seal)(Bissonnette, Gilles) (Additional attachment(s) added on 8/16/2023: # 2 Memorandum of Law Redacted Public Version) (jwb). (Entered: 08/14/2023) |
| 08/14/2023 | 84 | MOTION for Summary Judgment filed by NH Attorney General, NH Commission for Human Rights, Chairperson, NH Commission for Human Rights, Executive Director, NH Department of Education, Commissioner, NH Department of Labor, Commissioner. **HEARING REQUESTED.**Follow up on Objection on 9/13/2023. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Memorandum of Law Memorandum of Law in Support of Defendants' Motion for Summary Judgment)(Kenison–Marvin, Nathan) (Entered: 08/14/2023) |
| 08/14/2023 | 85 | Plaintiffs' Statement of Undisputed Facts in Support of Their Motion for Summary Judgment by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman (Attachments: # 1 Exhibit (Affidavit) Declaration of Attorney Gilles Bissonnette, # 2 Exhibit 1 –– The Amendments (Depo. Ex. 1), # 3 Exhibit 2 –– Edelblut Transcript (Redacted), # 4 Exhibit 3 –– Fenton Transcript (Redacted), # 5 Exhibit 4 –– Farrell Transcript (Redacted), # 6 Exhibit 5 –– Malachi Transcript (Redacted), # 7 Exhibit 6 –– Cohen Transcript (Redacted), # 8 Exhibit 7 –– Declaration of NEA–NH President Megan Tuttle, # 9 Exhibit 8 –– Declaration of AFT–NH President Deb Howes, # 10 Exhibit 9 –– Declaration of Plaintiff John Dube, # 11 Exhibit 10 –– Declaration of Kamren Munz, # 12 Exhibit 11 –– Declaration of Alison OBrien, # 13 Exhibit 12 –– Declaration of Patrick Keefe, # 14 Exhibit 13 –– Declaration of Plaintiff Christina |

Kim Philibotte, # <u>15</u> Exhibit 14 –– Declaration of Jennifer Given, # <u>16</u> Exhibit 15 ––
Declaration of Plaintiff Andres Mejia, # <u>17</u> Exhibit 16 –– Declaration of Sean OMara,
# <u>18</u> Exhibit 17 –– Declaration of Plaintiff Ryan Richman, # <u>19</u> Exhibit 18 ––
Declaration of Plaintiff Jocelyn Merrill, # <u>20</u> Exhibit 19 –– July 26, 2021 email from
DOE Commissioner Frank Edelblut, # <u>21</u> Exhibit 20 –– HRCs October 7, 2021
Commissioners meeting minutes (Depo. Ex. 56), # <u>22</u> Exhibit 21 –– DOE
Commissioner Edelbluts June 13, 2021 op–ed (Depo. Ex. 4), # <u>23</u> Exhibit 22 ––
Northwood Republican Town Committees CRT Parents Guide (Depo. Ex. 51), # <u>24</u>
Exhibit 23 –– Depo. Ex. 32 (Sealed), # <u>25</u> Exhibit 24 –– HRC docketed charge
(Depo. Ex. 62) (Sealed), # <u>26</u> Exhibit 25 –– Depo. Ex. 63 (Sealed), # <u>27</u> Exhibit 26
–– Depo. Ex. 64 (Sealed), # <u>28</u> Exhibit 27 –– Kathryn Borysenkos Aug. 19, 2022
article (Depo. Ex. 65), # <u>29</u> Exhibit 28 –– Depo. Ex. 66 (Sealed), # <u>30</u> Exhibit 29 ––
August 2022 Actively Unwoke tweets (Depo. Ex. 67) (Conventionally Filed), # <u>31</u>
Exhibit 30 –– Depo. Ex. 68 (Sealed), # <u>32</u> Exhibit 31 –– Depo. Ex. 69 (Sealed), # <u>33</u>
Exhibit 32 –– Depo. Ex. 70 (Sealed), # <u>34</u> Exhibit 33 –– Depo. Ex. 71 (Sealed), # <u>35</u>
Exhibit 34 –– Depo. Ex. 72 (Sealed), # <u>36</u> Exhibit 35 –– Depo. Ex. 73 (Sealed), # <u>37</u>
Exhibit 36 –– Depo. Ex. 74 (Sealed), # <u>38</u> Exhibit 37 –– Depo. Ex. 75 (Sealed), # <u>39</u>
Exhibit 38 –– Depo. Ex. 76 (Sealed), # <u>40</u> Exhibit 39 –– Depo. Ex. 77 (Sealed), # <u>41</u>
Exhibit 40 –– DOE Commissioner Edelbluts April 15, 2022 op–ed and attachments
(Depo. Ex. 14), # <u>42</u> Exhibit 41 –– September 22, 2021 email exchange between AFT
and DOE Commissioner Edelblut (Depo. Ex. 9), # <u>43</u> Exhibit 42 –– NEA–NHs July
12, 2021 and August 5, 2021 letters (Depo. Ex. 11), # <u>44</u> Exhibit 43 –– Sept. 13, 2021
NEA–NH email to the HRC (Depo. Ex. 54), # <u>45</u> Exhibit 44 –– Oct. 18, 2021 email
from R. Farrell to D. Fenton (Depo. Ex. 24), # <u>46</u> Exhibit 45 –– July 21, 2021
Guidance (Depo. Ex. 55), # <u>47</u> Exhibit 46 –– DOJs interrogatory responses, # <u>48</u>
Exhibit 47 –– HRCs interrogatory responses (Depo. Ex. 58), # <u>49</u> Exhibit 48 ––
DOEs interrogatory responses (Depo. Ex. 57), # <u>50</u> Exhibit 49 –– RCs website and
questionnaire (Depo. Ex. 60), # <u>51</u> Exhibit 50 –– DOEs December 2021 presentation
(Depo. Ex. 3), # <u>52</u> Exhibit 51 –– DOEs August 2021 presentation (Depo. Ex. 7), #
<u>53</u> Exhibit 52 –– Nov. 24, 2021 J. McKim email chain, # <u>54</u> Exhibit 53 –– Attorney
Generals 2021–02 Opinion dated Sept. 7, 2021 (Depo. Ex. 12), # <u>55</u> Exhibit 54 ––
Excerpts of the 2019 book How to be an Anti–racist by Dr. Ibram X. Kendi (Depo.
Ex. 50), # <u>56</u> Exhibit 55 –– Sept. 28, 2020 Executive Office of the Presidents
Memorandum, # <u>57</u> Exhibit 56 –– Excerpts of the July 8, 2021 Board of Education
meeting, # <u>58</u> Exhibit 57 –– Dec. 14, 2021 email chain with DOE Commissioner F.
Edelblut, # <u>59</u> Exhibit 58 –– July 22, 2021 email from S. Gibson to A. Malachi
(Depo. Ex. 47), # <u>60</u> Exhibit 59 –– Nov. 15, 2021 F. Edelblut/Northwood GOP
Meeting email exchange (Depo. Exs. 37 and 52), # <u>61</u> Exhibit 60 –– Jan. 20, 2023 D.
Fenton email exchange (Depo. Ex. 10), # <u>62</u> Exhibit 61 –– HRCs May 2, 2022 letter
to NEA–NH, # <u>63</u> Exhibit 62 –– Nov. 15, 2021 R. Farrell email exchange (Depo. Ex.
34), # <u>64</u> Exhibit 63 –– Aug. 20, 2021 F. Edelblut email exchange (Depo. Ex. 45), #
<u>65</u> Exhibit 64 –– Aug. 25, 2022 email to F. Edelblut (Depo. Ex. 48), # <u>66</u> Exhibit 65
–– Excerpts of the Mar 8, 2023 HB533 hearing (Depo. Ex. 6), # <u>67</u> Exhibit 66 ––
Aug. 27, 2021 F. Edelblut email exchange, # <u>68</u> Exhibit 67 –– Oct. 21, 2021 F.
Edelblut email exchange, # <u>69</u> Exhibit 68 –– Dec. 13, 2021 F. Edelblut email
exchange (Depo. Ex. 15), # <u>70</u> Exhibit 69 –– Aug. 23, 2021 F. Edelblut email
exchange (Depo. Ex. 19), # <u>71</u> Exhibit 70 –– Aug. 12, 2021 F. Edelblut email
exchange, # <u>72</u> Exhibit 71 –– June 14, 2022 email to R. Farrell (Depo. Ex. 36), # <u>73</u>
Exhibit 72 –– Nov. 15, 2021 DOE email exchange (Depo. Ex. 22), # <u>74</u> Exhibit 73 ––
Nov. 15, 2021 F. Edelblut email exchange, # <u>75</u> Exhibit 74 –– Dec. 28, 2021 F.
Edelblut email exchange (Depo. Ex. 43), # <u>76</u> Exhibit 75 –– HRCs March 4, 2022
letter (Depo. Ex. 53), # <u>77</u> Exhibit 76 –– Implicit Bias Training Hosted by the New

| | | |
|---|---|---|
| | | Hampshire Attorney Generals Office on November 20, 2020, # <u>78</u> Exhibit 77 –– May 3, 2021 and May 4, 2021 Presentations to N.H. Court System, # <u>79</u> Exhibit 78 –– Sept. 22, 2020 Trump Executive Order, # <u>80</u> Exhibit 79 –– HB544 Docket and Language, # <u>81</u> Exhibit 80 –– Select Written Testimony from Public Supporting HB544, # <u>82</u> Exhibit 81 –– HB2/Budget Trailer Materials, # <u>83</u> Exhibit 82 –– Article Compromise Sought on Anti–Critical race Theory Bill from April 19, 2021, # <u>84</u> Exhibit 83 –– Rep. Daniel Itse, Taxpayers Money is Being Used to Promote Systemic Racism in NH,, # <u>85</u> Exhibit 84 –– Excerpt from the Jan. 11, 2022 HB1313 hearing, # <u>86</u> Exhibit 85 –– Feb. 1, 2022 F. Edelblut email exchange, # <u>87</u> Exhibit 86 –– Mar. 18, 2022 D. Fenton email exchange (Depo. Ex. 23), # <u>88</u> Exhibit 87 –– Drummond Woodsum August 5, 2021 Presentation, # <u>89</u> Exhibit 88 –– DOEs Nov. 10, 2021 website (Depo. Ex. 21), # <u>90</u> Exhibit 89 –– DOEs Nov. 10, 2021 press release (Depo. Ex. 25), # <u>91</u> Exhibit 90 –– Nov. 15, 2021 F. Edelblut email exchange (Depo. Ex. 41), # <u>92</u> Exhibit 91 –– Nov. 17, 2021 HRC email exchange (Depo. Ex. 61), # <u>93</u> Exhibit 92 –– Oct. 25, 2021 F. Edelblut email exchange (Depo. Ex. 33), # <u>94</u> Exhibit 93 –– Oct. 26, 2021 F. Edelblut email exchange (Depo. Ex. 38), # <u>95</u> Exhibit 94 –– Oct. 1, 2021 F. Edelblut email exchange, # <u>96</u> Exhibit 95 –– Oct. 26, 2021 F. Edelblut email exchange, # <u>97</u> Exhibit 96 –– Sept. 7, 2021 F. Edelblut email exchange (Depo. Ex. 16), # <u>98</u> Exhibit 97 –– Sept. 3, 2021 F. Edelblut email exchange (Depo. Ex. 17), # <u>99</u> Exhibit 98 –– Depo Ex. 31 (Sealed), # <u>100</u> Exhibit 99 –– Depo. Ex. 40 (Sealed), # <u>101</u> Exhibit 100 –– Feb. 7, 2022 No Left Turn Letter (Depo. Ex. 26), # <u>102</u> Exhibit 101 –– Feb. 22, 2022 F. Edelblut email exchange (Depo. Ex. 27), # <u>103</u> Exhibit 102 –– Feb. 14, 2022 R. Farrell email exchange (Depo. Ex. 28), # <u>104</u> Exhibit 103 –– Apr. 7, 2022 DOE email exchange (Depo. Ex. 18), # <u>105</u> Exhibit 104 –– Depo. Ex. 46 (Sealed), # <u>106</u> Exhibit 105 –– Aug. 24, 2022 R. Farrell email exchange (Depo. Ex. 29), # <u>107</u> Exhibit 106 –– Sept. 21, 2021 F. Edelblut email exchange (Depo. Ex. 39), # <u>108</u> Exhibit 107 –– Jan. 7, 2022 email from Ann Marie Banfield opposing SB304, # <u>109</u> Exhibit 108 –– Feb. 18, 2021 email from D. Richards in HB544s legislative history (Depo. Ex. 49), # <u>110</u> Exhibit 109 –– Educator Code of Conduct)(Bissonnette, Gilles) (Additional attachment(s) added on 8/16/2023: # <u>111</u> Plaintiff's Statement Public Redacted) (jwb). (Entered: 08/14/2023) |
| 08/14/2023 | <u>86</u> | Assented to MOTION SEAL (I) THE UNREDACTED VERSION OF PLAINTIFFS MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT, (II) THE UNREDACTED VERSION OF PLAINTIFFS STATEMENT OF UNDISPUTED FACTS, (III) UNREDACTED COPIES OF FIVE DEPOSITION TRANSCRIPTS, AND (IV) 18 EXHIBITS ATTACHED TO PLAINTIFFS STATEMENT OF UNDISPUTED FACTS filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman.(Bissonnette, Gilles) (Entered: 08/14/2023) |
| 08/15/2023 | | **ENDORSED ORDER granting <u>86</u> Assented to MOTION SEAL (I) THE UNREDACTED VERSION OF PLAINTIFFS MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT, (II) THE UNREDACTED VERSION OF PLAINTIFFS STATEMENT OF UNDISPUTED FACTS, (III) UNREDACTED COPIES OF FIVE DEPOSITION TRANSCRIPTS, AND (IV) 18 EXHIBITS ATTACHED TO PLAINTIFFS STATEMENT OF UNDISPUTED FACTS. *Text of Order: Granted.* So Ordered by Judge Paul J. Barbadoro.(jwb)** (Entered: 08/15/2023) |
| 08/15/2023 | | **ENDORSED ORDER granting <u>82</u> Motion to Exceed Page Limit for Memoranda of Law In Support of Motions for Summary Judgment. *Text of Order: Granted.*** |

| | | |
|---|---|---|
| | | **So Ordered by Judge Paul J. Barbadoro.**(jwb) (Entered: 08/15/2023) |
| 08/15/2023 | 87 | SEALED PLAINTIFFS' JOINT MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT re: 83 Motion for Summary Judgment at Level I filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Jocelyn Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman.(jwb) (Entered: 08/15/2023) |
| 08/15/2023 | 88 | SEALED PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR JOINT MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND EXHIBITS 2–6, 23–26, 28, 30–39, 98, 99 AND 104 re: 85 Plaintiffs' Statement of Undisputed Facts at Level I filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Jocelyn Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman. (Attachments: # 1 Exhibit 2– Edelblut Transcript, # 2 Exhibit 3– Fenton Transcript, # 3 Exhibit 4– Farrell Transcript, # 4 Exhibit 5– Malachi Transcript, # 5 Exhibit 6– Cohen Transcript, # 6 Exhibit 23– Depo. Ex. 32, # 7 Exhibit 24– HRC docketed charge (Depo. Ex. 62), # 8 Exhibit 25– Depo. Ex. 63, # 9 Exhibit 26– Depo. Ex. 64, # 10 Exhibit 28– Depo. Ex. 66, # 11 Exhibit 30– Depo. Ex. 68, # 12 Exhibit 31– Depo. Ex. 69, # 13 Exhibit 32– Depo. Ex. 70, # 14 Exhibit 33– Depo. Ex. 71, # 15 Exhibit 34– Depo. Ex. 72, # 16 Exhibit 35– Depo. Ex. 73, # 17 Exhibit 36– Depo. Ex. 74, # 18 Exhibit 37– Depo. Ex. 75, # 19 Exhibit 38– Depo. Ex. 76, # 20 Exhibit 39– Depo. Ex. 77, # 21 Exhibit 98– Depo Ex. 31, # 22 Exhibit 99– Depo. Ex. 40, # 23 Exhibit 104– Depo. Ex. 46)(jwb) (Entered: 08/15/2023) |
| 08/15/2023 | | NOTICE OF CONVENTIONAL FILING re: 85 Plaintiffs' Statement of Undisputed Facts in Support of Their Motion for Summary Judgment– Exhibit 29 Filed Conventionally in Clerk's Office. (jwb) (Entered: 08/15/2023) |
| 08/24/2023 | 89 | MOTION for Daniel J. McNeil to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2413914.) filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Jocelyn Merrill.Follow up on Objection on 9/7/2023. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit AFFIDAVIT)(Perroni, Peter) (Entered: 08/24/2023) |
| 08/24/2023 | | ACTION REQUIRED – NOTICE Nonconforming Document re 89 MOTION for Daniel J. McNeil to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2413914.) filed by Andres Mejia, Meghan Evelyn Durden, Kimberly Green Elliot, Jocelyn Merrill, John Dube, Local 8027, AFT–New Hampshire, AFL–CIO. <br><br> The document fails to comply with LR 7.1– No statement of concurrence was included. File statement as addendum using the Other Documents/Addendum event and link filing(s) to document no. 89. <br><br> The document will remain on file. Please note that unless a document curing the defect is filed by the Notice of Compliance Deadline the matter may be referred to a judicial officer for appropriate action. Compliance Deadline set for 8/29/2023.(jwb) (Entered: 08/24/2023) |
| 09/01/2023 | | SECOND NOTICE ISSUED– ACTION REQUIRED – NOTICE Nonconforming Document re 89 MOTION for Daniel J. McNeil to Appear Pro Hac Vice filed by |

| | | |
|---|---|---|
| | | Andres Mejia, Meghan Evelyn Durden, Kimberly Green Elliot, Joceyln Merrill, John Dube, Local 8027, AFT–New Hampshire, AFL–CIO. |
| | | The document fails to comply with LR 7.1–No statement of concurrence was included. File statement as addendum using the Other Documents/Addendum event and link filing(s) to document no. 89. The document will remain on file. Please note that unless a document curing the defect is filed by the Notice of Compliance Deadline the matter may be referred to a judicial officer for appropriate action. Compliance Deadline set for 9/6/2023.(jwb) (Entered: 09/01/2023) |
| 09/01/2023 | 90 | Addendum/ to 89 MOTION for Daniel J. McNeil to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2413914.) *Rule 7.1 Concurrence* by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill. (Perroni, Peter) (Entered: 09/01/2023) |
| 09/05/2023 | | **ENDORSED ORDER granting 89 Motion for Daniel J. McNeil to Appear Pro Hac Vice. *Text of Order: Granted. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* So Ordered by Judge Paul J. Barbadoro.** <br><br> The clerk's office will provide the admitted attorney with instructions on how to obtain access to electronic filing by separate email. The admitted attorney must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of New Hampshire. After obtaining e–filing access, the admitted attorney must file an appearance to begin receiving electronic notices.(jwb) <br><br> (Entered: 09/05/2023) |
| 09/07/2023 | 91 | Joint Assented to MOTION to Extend Time to Object/Respond to 84 MOTION for Summary Judgment , 83 MOTION for Summary Judgment to September 26, 2023 filed by Andres Mejia, Christina Kim Philibotte. (Attachments: # 1 Civil Form 3)(Bissonnette, Gilles) (Entered: 09/07/2023) |
| 09/12/2023 | | **ENDORSED ORDER granting 91 Joint Motion to Extend Time to Object/Respond to 83 Motion for Summary Judgment, 84 Motion for Summary Judgment to September 26, 2023. *Text of Order: Granted.* So Ordered by Judge Paul J. Barbadoro. (jwb)** (Entered: 09/12/2023) |
| 09/25/2023 | 92 | Assented to MOTION to Extend Time to Object/Respond to 84 MOTION for Summary Judgment , 83 MOTION for Summary Judgment to October 3, 2023 filed by NH Attorney General, NH Commission for Human Rights, Chairperson, NH Commission for Human Rights, Executive Director, NH Department of Education, Commissioner, NH Department of Labor, Commissioner. (Attachments: # 1 Exhibit Completed Civil Form 3)(Kenison–Marvin, Nathan) (Entered: 09/25/2023) |
| 09/27/2023 | | **ENDORSED ORDER granting 92 Motion to Extend Time to Object/Respond RE 83 Motion for Summary Judgment, 84 Motion for Summary Judgment to October 3, 2023. *Text of Order: Granted.* So Ordered by Judge Paul J. Barbadoro.(jwb)** (Entered: 09/27/2023) |
| 10/03/2023 | 93 | Joint Assented to MOTION to Exceed Page Limit filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman.(Bissonnette, Gilles) (Entered: |

| | | |
|---|---|---|
| | | 10/03/2023) |
| 10/03/2023 | 94 | OBJECTION to 84 MOTION for Summary Judgment filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman. Follow up on Reply on 10/10/2023. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit A –– DOE Privilege Log)(Bissonnette, Gilles) (Additional attachment(s) added on 10/10/2023: # 2 REDACTED PLAINTIFFS JOINT OBJECTION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT) (jwb). (Entered: 10/03/2023) |
| 10/03/2023 | 95 | Assented to MOTION SEAL THE UNREDACTED VERSION OF PLAINTIFFS JOINT OBJECTION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman.(Bissonnette, Gilles) (Entered: 10/03/2023) |
| 10/03/2023 | 96 | MEMORANDUM in Opposition re 83 MOTION for Summary Judgment filed by NH Attorney General, NH Commission for Human Rights, Chairperson, NH Commission for Human Rights, Executive Director, NH Department of Education, Commissioner, NH Department of Labor, Commissioner. Follow up on Reply on 10/10/2023. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Kenison–Marvin, Nathan) (Entered: 10/03/2023) |
| 10/03/2023 | 97 | SEALED PLAINTIFFS' JOINT OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT re: 94 Objection to Motion at Level I filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman(jwb) (Entered: 10/04/2023) |
| 10/04/2023 | | **ENDORSED ORDER granting 93 Motion to Exceed Page Limit. *Text of Order: Granted.* So Ordered by Judge Paul J. Barbadoro.(jwb)** (Entered: 10/04/2023) |
| 10/04/2023 | | **ENDORSED ORDER granting 95 Motion to SEAL THE UNREDACTED VERSION OF PLAINTIFFS JOINT OBJECTION TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT. *Text of Order: Granted.* So Ordered by Judge Paul J. Barbadoro.(jwb)** (Entered: 10/04/2023) |
| 10/10/2023 | | Document Added to 94 Objection to Motion: REDACTED PLAINTIFFS' JOINT OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT. (jwb) (Entered: 10/10/2023) |
| 10/13/2023 | | NOTICE re: 83 MOTION for Summary Judgment, 84 MOTION for Summary Judgment. Motion Hearing set for 1/16/2024 10:00 AM before Judge Paul J. Barbadoro.(jwb) (Entered: 10/13/2023) |
| 01/10/2024 | 98 | Assented to MOTION for Harry Sandick to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2464122.) filed by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Joceyln Merrill. (Attachments: # 1 Exhibit (Affidavit))(Perroni, Peter) (Entered: 01/10/2024) |
| 01/10/2024 | 99 | Assented to MOTION for Joshua Goldman to Appear Pro Hac Vice (Filing fee $ 100, Receipt # ANHDC–2464130.) filed by John Dube, Meghan Evelyn Durden, Kimberly |

| | | |
|---|---|---|
| | | Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Joceyln Merrill. (Attachments: # 1 Exhibit (Affidavit))(Perroni, Peter) (Entered: 01/10/2024) |
| 01/11/2024 | | **ENDORSED ORDER granting 98 Motion for Harry Sandick to Appear Pro Hac Vice; granting 99 Motion for Joshua Goldman to Appear Pro Hac Vice.** *Text of Order: Granted. Local counsel shall comply with all obligations required by L.R. 83.2(b) absent order of the court.* **So Ordered by Judge Paul J. Barbadoro.**<br><br>The clerk's office will provide the admitted attorney with instructions on how to obtain access to electronic filing by separate email. The admitted attorney must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of New Hampshire. After obtaining e–filing access, the admitted attorney must file an appearance to begin receiving electronic notices.(jwb)<br><br>(Entered: 01/11/2024) |
| 01/12/2024 | 100 | NOTICE of Attorney Appearance by Harry Sandick on behalf of John Dube, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Joceyln Merrill, Ryan Richman Attorney Harry Sandick added to party John Dube(pty:pla), Attorney Harry Sandick added to party Kimberly Green Elliot(pty:pla), Attorney Harry Sandick added to party Local 8027, AFT–New Hampshire, AFL–CIO(pty:pla), Attorney Harry Sandick added to party Joceyln Merrill(pty:pla), Attorney Harry Sandick added to party Ryan Richman(pty:pla).(Sandick, Harry) (Entered: 01/12/2024) |
| 01/12/2024 | 101 | NOTICE of Attorney Appearance by Joshua M. Goldman on behalf of John Dube, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Joceyln Merrill, Ryan Richman Attorney Joshua M. Goldman added to party John Dube(pty:pla), Attorney Joshua M. Goldman added to party Kimberly Green Elliot(pty:pla), Attorney Joshua M. Goldman added to party Local 8027, AFT–New Hampshire, AFL–CIO(pty:pla), Attorney Joshua M. Goldman added to party Joceyln Merrill(pty:pla), Attorney Joshua M. Goldman added to party Ryan Richman(pty:pla).(Goldman, Joshua) (Entered: 01/12/2024) |
| 01/16/2024 | | Minute Entry for proceedings held before Judge Paul J. Barbadoro. MOTION HEARING held on 1/16/2024 re 84 MOTION for Summary Judgment, 83 MOTION for Summary Judgment. Motions taken under advisement. Order to issue. (Court Reporter: Brenda Hancock) (Pltfs Atty: Gilles R. Bissonnette; Charles Moerdler; Joshua M. Goldman; Harry Sandick; Morgan C. Nighan; Chris Erchull) (Defts Atty: Samuel R. V. Garland; Nathan W. Kenison–Marvin)(Total Hearing Time: 3 hours 15 minutes) (jwb) (Entered: 01/16/2024) |
| 01/16/2024 | | Minute Entry for proceedings held before Judge Paul J. Barbadoro. IN CAMERA HEARING HELD UNDER SEAL on 1/16/2024. (Court Reporter: Brenda Hancock) (Pltfs Atty: Gilles R. Bissonnette; Charles Moerdler; Joshua M. Goldman; Harry Sandick; Morgan C. Nighan; Chris Erchull) (Defts Atty: Samuel R. V. Garland; Nathan W. Kenison–Marvin)(Total Hearing Time: 35 minutes) (jwb) Modified on 1/17/2024 to add UNDER SEAL(jwb). (Entered: 01/16/2024) |
| 01/18/2024 | 102 | NOTICE of Additional Authority Referenced at Rule 56 Hearing by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman.(Perroni, Peter) (Entered: 01/18/2024) |

| | | |
|---|---|---|
| 02/28/2024 | 103 | NOTICE of Attorney Withdrawal by Esther Kane Dickinson on behalf of National Education Association–New Hampshire(Dickinson, Esther) (Entered: 02/28/2024) |
| 03/05/2024 | 104 | NOTICE of Supplemental Authority by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman. (Attachments: # 1 Exhibit 11th Circuit Honeyfund Decision)(Bissonnette, Gilles) (Entered: 03/05/2024) |
| 03/18/2024 | 105 | SEALED TRANSCRIPT of Proceedings for SEALED IN CAMERA HEARING held on January 16, 2024. Sealed at Level I. Court Reporter: Brenda Hancock, Telephone # 603–225–1454.(jwb) (Entered: 03/19/2024) |
| 05/09/2024 | 106 | NOTICE of Regarding Plaintiff Andres Mejia by Andres Mejia, Christina Kim Philibotte.(Bissonnette, Gilles) (Entered: 05/09/2024) |
| 05/14/2024 | 107 | NOTICE of Supplemental Authority by John Dube, Meghan Evelyn Durden, Kimberly Green Elliot, Local 8027, AFT–New Hampshire, AFL–CIO, Andres Mejia, Joceyln Merrill, National Education Association–New Hampshire, Christina Kim Philibotte, Ryan Richman. (Attachments: # 1 Exhibit Tenn. Educ. Assn v. Reynolds, No. 3:23–cv–00751, 2024 U.S. Dist. LEXIS 80277 (M.D. Tenn. May 2, 2024))(Bissonnette, Gilles) (Entered: 05/14/2024) |
| 05/28/2024 | 108 | TRANSCRIPT of Proceedings for TWO EXCERPTS FROM MOTION HEARING BEFORE THE HONORABLE PAUL J. BARBADORO held on January 16, 2024. Court Reporter: Brenda Hancock, Telephone # 603–225–1454. Transcript is available for public inspection, but may not be copied or otherwise reproduced, at the Clerk's Office for a period of 90 days. Additionally, only attorneys of record and pro se parties with an ECF login and password who purchase a transcript from the court reporter will have access to the transcript through PACER during this 90–day period. If you would like to order a copy, please contact the court reporter at the above listed phone number. **NOTICE: Any party who requests an original transcript has 21 days from service of this notice to determine whether it is necessary to redact any personal identifiers and, if so, to electronically file a Redaction Request.** Redaction Request Follow Up 6/18/2024. Redacted Transcript Follow Up 6/28/2024. Release of Transcript Restriction set for 8/26/2024.(jwb) (Entered: 05/28/2024) |
| 05/28/2024 | 109 | **///MEMORANDUM AND ORDER granting 83 Motion for Summary Judgment; denying 84 Motion for Summary Judgment.** *For the reasons discussed, the plaintiffs' motion for summary judgment (Doc. 83) is granted as set forth herein. The defendants' cross–motion for summary judgment (Doc. 84) is denied.* **So Ordered by Judge Paul J. Barbadoro.**(jwb) (Entered: 05/28/2024) |
| 06/02/2024 | 110 | TRANSCRIPT of Proceedings for Hearing on Motions for Summary Judgment held on January 16, 2024. Court Reporter: Brenda Hancock, Telephone # 603–225–1454. Transcript is available for public inspection, but may not be copied or otherwise reproduced, at the Clerk's Office for a period of 90 days. Additionally, only attorneys of record and pro se parties with an ECF login and password who purchase a transcript from the court reporter will have access to the transcript through PACER during this 90–day period. If you would like to order a copy, please contact the court reporter at the above listed phone number. |

| | | |
|---|---|---|
| | | **NOTICE: Any party who requests an original transcript has 21 days from service of this notice to determine whether it is necessary to redact any personal identifiers and, if so, to electronically file a Redaction Request.** Redaction Request Follow Up 6/24/2024. Redacted Transcript Follow Up 7/3/2024. Release of Transcript Restriction set for 9/3/2024.(jwb) (Entered: 06/03/2024) |
| 06/12/2024 | | NOTICE of VIDEO Conference. Status Conference set VIA VIDEO CONFERENCE for 6/17/2024 03:00 PM before Judge Paul J. Barbadoro.(jwb) (Entered: 06/12/2024) |
| 06/12/2024 | | RESCHEDULING NOTICE of Hearing. Status Conference set VIA VIDEO CONFERENCE for 6/18/2024 10:00 AM before Judge Paul J. Barbadoro.(jwb) (Entered: 06/12/2024) |
| 06/18/2024 | | Minute Entry for proceedings held before Judge Paul J. Barbadoro. STATUS CONFERENCE held on 6/18/2024. (Court Reporter: Liza Dubois) (Pltfs Atty: Gilles R. Bissonnette, Charles Moerdler, Chris Erchull, Harry Sandick, Joshua M. Goldman, Kayla Jade Turner, Morgan C. Nighan, Nathan Reed Fennessy, Peter J. Perroni, Suzanne Amy Spencer) (Defts Atty: Samuel Garland)(Total Hearing Time: 15 min.) (lw) (Entered: 06/18/2024) |
| 06/18/2024 | | **ENDORSED ORDER –** *Text of Order: Within 14 days of the date a notice of appeal is filed or the appeal period has run, whichever occurs first, the parties shall file a joint status report proposing a schedule for the resolution of any issue concerning attorneys' fees.* **So Ordered by Judge Paul J. Barbadoro.**(lw) (Entered: 06/18/2024) |
| 06/24/2024 | 111 | **JUDGMENT is hereby entered in accordance with 63 Order on Motion to Dismiss for Failure to State a Claim, 109 Order on Motion for Summary Judgment. Signed by Daniel J. Lynch, Clerk of Court. APPROVED AS TO FORM: by Paul J. Barbadoro.** *(Case Closed)* **(jwb)** (Entered: 06/24/2024) |
| 07/24/2024 | 112 | NOTICE OF APPEAL as to 111 Judgment, by NH Attorney General, NH Commission for Human Rights, Chairperson, NH Commission for Human Rights, Executive Director, NH Department of Education, Commissioner, NH Department of Labor, Commissioner.( Filing fee $ 605, receipt number ANHDC–2534501.) [NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the Forms & Notices section of the First Circuit website at www.ca1.uscourts.gov, MUST be completed and submitted to the U.S. Court of Appeals for the First Circuit.] **NOTICE TO COUNSEL: Counsel should register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf/. Counsel should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at  http://www.ca1.uscourts.gov/cmecf** (Garland, Samuel) (Entered: 07/24/2024) |
| 07/24/2024 | 113 | Appeal Cover Sheet as to 112 Notice of Appeal filed by NH Commission for Human Rights, Executive Director, NH Department of Education, Commissioner, NH Commission for Human Rights, Chairperson, NH Attorney General, NH Department of Labor, Commissioner. (jwb) (Entered: 07/24/2024) |
| 07/24/2024 | 114 | Clerk's Certificate transmitting Record on Appeal to US Court of Appeals documents numbered 63, 109, 111–114, re 112 Notice of Appeal. A copy of the Notice of Appeal electronically mailed to all parties this date.(jwb) (Entered: 07/24/2024) |

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Local 8027, AFT-New Hampshire, AFL-CIO, et. al.

    v.                                No. 1:21-cv-01077-PB

NH Department of Education, Commissioner, et. al.


CLERK'S CERTIFICATE TO
CIRCUIT COURT OF APPEALS


    I, Jennifer Bartlett, Deputy Clerk of the United States District Court for the District of New Hampshire, do hereby certify that the following documents constitute the record on appeal to the First Circuit Court of Appeals:

    DOCUMENTS NUMBERED: 63, 109, 111-114

    The Clerk's Office hereby certifies the record and docket sheet available through ECF to be the certified record and the certified copy of the docket entries.


                           IN TESTIMONY WHEREOF, I hereunto set my hand and affix the seal of said Court, at Concord, in said District, on this day, July 24, 2024

                           F CP IGN'LON[ P EJ , Clerk

                           By: /s/ Jennifer Bartlett, Deputy Clerk

                           Jul 24, 2024

cc: Counsel of Record

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

APPEAL COVER SHEET

1.      USDC/NH Case No. 1:21-cv-01077-PB

2.      TITLE OF CASE: Local 8027, AFT-New Hampshire, AFL-CIO et al v. NH Department
of Education, Commissioner et al

3.      TYPE OF CASE: Civil

4.      NAME OF APPELLANT(S) & COUNSEL FOR APPELLANT(S):
        See certified copy of docket (ECF registered users not provided with a copy of docket)

5.      NAME OF APPELLEE(S) & COUNSEL FOR APPELLEE(S):
        See certified copy of docket (ECF registered users not provided with a copy of docket)

6.      NAME OF JUDGE: Judge Barbadoro

7.      DATE OF JUDGMENT OR ORDER ON APPEAL: **June 24, 2024**

8.      DATE OF NOTICE OF APPEAL: **July 24, 2024**

9.      FEE PAID or IFP :YES

10.     COURT APPOINTED COUNSEL: NO

11.     COURT REPORTER(S):   and DATES:     3/8/22- Status Conference Jan-Marie Glaze;
9/14/22 Motion Hearing Brenda Hancock; 2/15/23 Pretrial Conference Liza Dubois; 1/16/24
Motion Hearing Brenda Hancock; 1/16/24 SEALED In Camera Hearing Brenda Hancock; 6/18/24
Status Conference Liza Dubois

12.     TRANSCRIPTS ORDERED/ON FILE: YES

13.     HEARING/TRIAL EXHIBITS: YES

14.     MOTIONS PENDING: NO

15.     GUIDELINES CASE: Not Applicable

16.     RELATED CASES or CROSS APPEAL:

17.     SPECIAL COMMENTS:

cc: Counsel of Record

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

```
_____
                                  )
LOCAL, 8027 AFT-NEW HAMPSHIRE,    )
AFL-CIO, et al.,                  )
                                  )
          Plaintiffs,             )
                                  )
     v.                           )       Case No. 1:21-cv-1077-PB
                                  )
FRANK EDELBLUT, in his official   )
capacity only as the Commissioner )
of the New Hampshire Department   )
of Education, et al.,             )
                                  )
          Defendants.             )
_____ )
```

## <u>NOTICE OF APPEAL</u>

Notice is hereby given that defendants Frank Edelblut, in his official capacity as Commissioner of the Department of Education; John M. Formella, in his official capacity as Attorney General of the State of New Hampshire; Ahni Malachi, in her official capacity as Executive Director of the New Hampshire Commission for Human Rights; Christian Kim, in his official capacity as Chair of the Commission for Human Rights; and Kenneth Merrifield, in his Official Capacity as Commissioner of the Department of Labor, hereby appeal to the United States Court of Appeals for the First Circuit from this Court's June 24, 2024 Judgment awarding the plaintiffs "declaratory relief that N.H. Rev. Stat. Ann. §§ 354-A:31, 354-A:32, and 193:40 are unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment."

[Signature Page to Follow]

Respectfully submitted,

FRANK EDELBLUT, in his official capacity
as Commissioner of the Department of
Education,

JOHN M. FORMELLA, in his
official capacity only as Attorney General
of the State of New Hampshire,

AHNI MALACHI, in her official capacity as
Executive Director of the Commission for
Human Rights,

CHRISTIAN KIM, in his official capacity as
Chair of the Commission for Human Rights,

     *and*

KENNETH MERRIFIELD, in his official
capacity as Commissioner of the Department of
Labor

By their attorney,

JOHN M. FORMELLA
ATTORNEY GENERAL

Date: July 24, 2024

*/s/ Samuel Garland*
Samuel R.V. Garland, Bar #266273
Senior Assistant Attorney General
Nathan Kenison-Marvin, Bar # 270162
Assistant Attorney General
Civil Bureau
New Hampshire Dept. of Justice
33 Capitol Street
Concord, NH 03301
(603) 271-3650
Samuel.RV.Garland@doj.nh.gov
Nathan.w.kenison-marvin@doj.nh.gov

**Certificate of Service**

I hereby certify that a copy of the foregoing was served on all counsel of recording using the Court's electronic-filing service.

/s/ Samuel Garland
Samuel R.V. Garland

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

<u>Local 8027, AFT-N.H., AFL-CIO, et al.,</u>

       v.                                   Case No. 21-cv-1077-PB

<u>Frank Edelblut, Commissioner,</u>
<u>N.H. Department of Education, et al.</u>

## **JUDGMENT**

In accordance with the Memorandum and Order dated January 12, 2023, and the Memorandum and Order dated May 28, 2024, judgment is hereby entered as follows:

1.  Plaintiffs are awarded declaratory relief that N.H. Rev. Stat. Ann. §§ 354-A:31, 354-A:32, and 193:40 are unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment.

2. Plaintiffs' claim that they have a First Amendment right to control their curricular speech is dismissed for failure to state a claim.

3.  Plaintiffs' remaining claims are dismissed as moot.

                                     BY THE COURT:

                                     Daniel J. Lynch
                                     Clerk of Court

June 24, 2024

                                     APPROVED AS TO FORM:

                                     /s/ Paul J. Barbadoro
                                     Paul J. Barbadoro
                                     United States District Judge

cc:     Counsel of Record

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

Local 8027, AFT-N.H., AFL-CIO, et al.,

      v.

Frank Edelblut, Commissioner,
N.H. Department of Education, et al.

Case No. 21-cv-1077-PB
Opinion No. 2024 DNH 040

## MEMORANDUM AND ORDER

In 2021, the State of New Hampshire substantially amended its education and antidiscrimination laws. The new laws were quickly challenged in two separate lawsuits. The cases, both filed on behalf of public school educators, were subsequently consolidated into the present action. The matter is before me on the parties' cross-motions for summary judgment.

## I.    BACKGROUND

### A.    The Amendments

The laws at issue in this case have their genesis in New Hampshire House Bill 544 ("HB544"). HB544, in turn, was based on President Trump's executive order on "Combating Race and Sex Stereotyping." See Exec. Order No. 13950, 85 Fed. Reg. 60683 (Sept. 22, 2020), revoked by Exec. Order No. 13985, 86 Fed. Reg. 7009 (Jan. 20, 2021). That executive order sought to end federally-funded training based on "anti-American propaganda," such as

"critical race theory" ("CRT")[1] See OFF. OF MGMT. & BUDGET, EXEC. OFF. OF

THE PRESIDENT, OMB MEMORANDUM NO. M-20-34, TRAINING IN THE FEDERAL

GOVERNMENT (2020). To this end, the executive order prohibited the use of

public funds to promote so-called "divisive concepts" pertaining to race and

sex. Exec. Order No. 13950, 85 Fed. Reg. at 60685.

    After President Biden revoked President Trump's executive order, New

Hampshire state legislators introduced HB544 to prohibit the state from

teaching the same "divisive concepts" identified in President Trump's

executive order. The core components of HB544 were later added by

amendment to House Bill 2 ("HB2"), a budget bill that was passed by the

House and sent to the Senate on April 7, 2021. The Senate made substantial

changes to HB2's divisive concepts provisions, which appear in sections 297

---

[1]     CRT refers to a 1970s-era movement within the legal academy that
sought to analyze the role of race and racism in the American legal system.
VICTOR RAY, ON CRITICAL RACE THEORY xxi-xxiii (2022). Although the phrase
is used to describe a diverse category of scholarship, CRT fundamentally
looks to "the various ways in which assumptions about race affect the players
within the legal system (judges, lawyers, and lay people) and have a
determining effect on substantive legal doctrines." Douglas E. Litowitz, Some
Critical Thoughts on Critical Race Theory, 72 NOTRE DAME L. REV. 503, 503-
04 (1999). CRT is premised on several "core tenets," including, most notably,
that race is a social construct, rather than a biological reality; that racism is
a common and pervasive force throughout society that exists on a structural,
rather than purely individual, level; and that racism cannot be effectively
addressed through "[c]olorblindness" or race-neutral policies. Angela
Onwuachi-Willig, The CRT of Black Lives Matter, 66 ST. LOUIS U.L.J. 663,
669-70 (2022) (collecting sources); accord RAY, supra, at 3, 17, 32.

and 298 of the bill, and rebranded them as antidiscrimination laws.
Differences between the House and Senate versions of the bill were resolved
in conference, and HB2 became law on June 25, 2021.

HB2 modified the state's education and antidiscrimination laws in
several ways.[2] It added a new provision to the education laws, codified at
N.H. Rev. Stat. Ann. ("RSA") § 193:40, which identifies four concepts that
public primary or secondary school students may not be "taught, instructed,
inculcated or compelled to express belief in, or support for":

> (a) That one's age, sex, gender identity, sexual orientation, race, creed,
> color, marital status, familial status, mental or physical disability,
> religion or national origin is inherently superior to people of another
> age, sex, gender identity, sexual orientation, race, creed, color,
> marital status, familial status, mental or physical disability,
> religion, or national origin;
>
> (b) That an individual, by virtue of his or her age, sex, gender identity,
> sexual orientation, race, creed, color, marital status, familial status,
> mental or physical disability, religion, or national origin, is
> inherently racist, sexist, or oppressive, whether consciously or
> unconsciously;
>
> (c) That an individual should be discriminated against or receive
> adverse treatment solely or partly because of his or her age, sex,
> gender identity, sexual orientation, race, creed, color, marital
> status, familial status, mental or physical disability, religion, or
> national origin; or
>
> (d) That people of one age, sex, gender identity, sexual orientation,
> race, creed, color, marital status, familial status, mental or physical

---

[2]    I refer to the amendments to the state's education and
antidiscrimination laws collectively as the "Amendments."

disability, religion, or national origin cannot and should not attempt to treat others without regard to age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin.

RSA § 193:40, I.

HB2 also added several new sections to Chapter 354-A, known as the "Law Against Discrimination," that employ substantially similar versions of the banned concepts. RSA § 354-A:31 makes it unlawful for a public employer to "teach, advocate, instruct, or train" the banned concepts to "any employee, student, service recipient, contractor, staff member, inmate, or any other individual or group." RSA § 354-A:32 similarly states that "[n]o government program shall teach, advocate, or advance" any of the banned concepts. And RSA § 354-A:33 protects public employees from being disciplined for refusing to participate in any activity "at which a public employer or government program advocates, trains, teaches, instructs, or compels participants to express belief in, or support for," any of the banned concepts.

RSA § 193:40, III permits the Attorney General, or any other person "claiming to be aggrieved by a violation" of the new law, to obtain damages and injunctive relief from an offending school or school district, either by filing a lawsuit in superior court or by filing a complaint with New Hampshire's Commission for Human Rights. RSA § 354-A:34 similarly permits a person "aggrieved" by a violation of the antidiscrimination

4

amendments to pursue "all of the remedies available under" Chapter 354-A, which include compensatory damages and injunctive relief.

RSA § 193:40, IV provides that a "[v]iolation of this section by an educator shall be considered a violation of the educator code of conduct that justifies disciplinary sanction by the state board of education." An "educator" is defined as "a professional employee of any school district whose position requires certification by the state board [of education]." RSA § 193:40, V. Potential disciplinary sanctions include reprimand, suspension, and revocation of the educator's certification. See N.H. Code Admin. R. Ed 511.01. In other words, an educator who is found to have taught or advocated a banned concept may lose not only his or her job, but also the ability to teach anywhere in the state. See id.; see also N.H. Code Admin. R. Ed 501.02(ad).

The new laws create safe harbors for certain conduct that may otherwise constitute teaching or advocacy of a banned concept. RSA § 193:40, II allows "discussing, as part of a larger course of academic instruction, the historical existence of ideas and subjects identified" as a banned concept. RSA § 354-A:29, II permits public employers to conduct "racial, sexual, religious, or other workplace sensitivity training based on the inherent humanity and equality of all persons." And RSA § 354-A:29, III

states that the new laws do not impose any limitations on "the academic freedom of faculty members" at public colleges and universities.

Passage of the Amendments led to immediate controversy over their scope. The following month, three state agencies—the Department of Education, the Commission for Human Rights, and the Department of Justice ("enforcing agencies")—collectively produced guidance regarding the scope and effects of the new provisions in the form of two "Frequently Asked Questions" documents ("FAQs"). Doc. 36-8; Doc. 36-9. Educators and other stakeholders, however, continued to raise concerns that the Amendments were "confusing and that public employers and schools will struggle to understand the scope of the new prohibitions." Doc. 36-10 at 1.

Accordingly, in September 2021, the New Hampshire Attorney General ("AG") issued an official opinion concerning the scope and application of the new laws. Id. Describing the new statutory provisions as "legislation of limited reach," the AG opined that the first two banned concepts proscribe advocacy that an identified group has "natural, biological, or innate characteristics, as opposed to apparent or accidental characteristics that: (1) make them superior or inferior to other identified groups or (2) make one identified group racist, sexist, or oppressive." Id. at 3, 5. According to the opinion, the last two banned concepts prohibit advocacy "that any identified

group can or should be treated unequally to any other identified group and that one identified group should be discriminated against or treated adversely." Id. at 3.

Defendant Frank Edelblut, the Commissioner of the Department of Education, also published two opinion articles in the *New Hampshire Union Leader* that expressed his support for the Amendments. The first of the two op-eds was published on June 13, 2021, prior to HB2's passage. In it, Edelblut argued that the Amendments were "important" and a necessary "contribution to our education system." Doc. 85-22 at 4. The second op-ed, entitled "Education's Sacred Trust" and published on April 15, 2022, criticized "activist educators who might be knowingly dismantling the foundations of a value system [parents] are attempting to build." Doc. 85-41 at 3.

In its online version, the April 2022 article appended several documents that, according to Edelblut, exemplified "actual instructional material from New Hampshire schools that parents have identified as conflicting with their values" and which demonstrated "biases [that] are beginning to seep into our own institutions." Id. Several of those attachments had been submitted to the Department of Education by parents and other community members, including two books—Stamped: Racism, Antiracism,

and You: A Remix of the National Book Award-winning "Stamped from the Beginning," by Jason Reynolds and Dr. Ibram X. Kendi, and This Book is Anti-Racist, by Tiffany Jewell—as well as materials concerning diversity that were provided to students in a Human Relations course. Id. at 20, 39-40, 63-66.

B.    **Procedural Background**

In December 2021, two groups of plaintiffs filed suit against the education commissioner and other state officials, challenging the Amendments in separate complaints. The first group consists of five educators and Local 8027 of the American Federation of Teachers-New Hampshire, a labor union representing approximately 3,400 public school teachers, school support staff, city and town employees, police officers, library employees, and higher education faculty in the state (collectively, "AFT plaintiffs"). The second group includes two diversity, equity, and inclusion ("DEI") school administrators, and the National Education Association-New Hampshire, a professional association representing more than 17,000 educators in the state (collectively, "NEA plaintiffs"). Both sets of plaintiffs argued that the Amendments are unconstitutionally vague on their face. The AFT plaintiffs also asserted that the Amendments violate their First

Amendment right to free speech. The two actions were later consolidated, and the defendants moved to dismiss both complaints.

My memorandum order, issued on January 12, 2023, granted the defendants' motions in part and denied them in part. Doc. 63. I dismissed the AFT plaintiffs' First Amendment claim to the extent that it was based on the plaintiffs' assertion that primary and secondary school teachers have a constitutional right to control their curricular speech. Id. at 17. Because, however, I determined that the Amendments plausibly could be construed to also reach teachers' constitutionally protected private speech, I declined to dismiss the claim in full. Id.

When addressing the plaintiffs' vagueness claim, I first resolved a dispute concerning the standard a court must use when evaluating a pre-enforcement facial vagueness claim.[3] Id. at 21. The defendants, relying on Village of Hoffman Estates v. Flipside, Hoffman Estates., Inc., 455 U.S. 489 (1982), took the position that a facial vagueness challenge can never succeed

---

[3]     In addition to the plaintiffs' pre-enforcement facial vagueness claim, they also assert what they describe as an as-applied vagueness claim in the sense that the Amendments are vague "as applied" specifically to teachers. I expressed skepticism that their claim is really an as-applied challenge when I addressed the defendants' motions to dismiss, but I declined to dismiss the claim because the issue had not been adequately briefed. Id. at 20. The parties have again declined to brief the issue. Because I conclude that the Amendments are facially invalid, I need not consider whether the plaintiffs can maintain their as-applied challenge as a distinct cause of action.

unless the challenged statute is vague in all applications. I rejected the

defendants' argument based on Johnson v. United States, 576 U.S. 591

(2015), Sessions v. Dimaya, 584 U.S. 148 (2018), and United States v. Davis,

588 U.S. 445 (2019), a trio of more recent decisions in which the Supreme

Court refused to apply the "vague in all applications" standard to the facial

vagueness challenges that were before the Court.[4] Applying the generally

accepted test for vagueness challenges, I then determined that the plaintiffs

had stated a plausible claim for relief. Doc. 63 at 42.

The parties have since engaged in expedited discovery and filed cross-

motions for summary judgment. Both sides agree that no material facts are

---

[4]     The defendants maintain that Village of Hoffman Estates remains good
law, and they argue again in favor of the "vague in all applications" standard.
I see no reason to revisit my earlier conclusion, beyond noting that, since I
issued my order, the Courts of Appeals for the Fourth and Eleventh Circuits
have also concluded that Johnson, Sessions, and Davis widened the path for
facial vagueness challenges beyond the "vague in all applications" standard.
See Young Israel of Tampa, Inc. v. Hillsborough Area Reg'l Transit Auth., 89
F.4th 1337, 1349-50 (11th Cir. 2024) (explaining that pursuant to United
States v. Salerno, 481 U.S. 739 (1987), a "successful facial challenge
require[d] a showing that the law in question is unconstitutional in all of its
applications," but that "in its more recent cases," including Sessions and
Johnson, "the Supreme Court has cut back on the broad statement . . . at
least when vagueness is the constitutional vice"); Carolina Youth Action
Project v. Wilson, 60 F.4th 770, 781-82 (4th Cir. 2023) ("[T]he Supreme Court
has now twice clarified that 'although statements in some of [its] opinions
could be read to suggest otherwise,' the Court's 'holdings squarely contradict
the theory that a vague provision is constitutional merely because there is
some conduct that clearly falls within the provision's grasp.'") (emphasis in
original) (quoting Johnson, 576 U.S. at 602).

in dispute and the case is ready for resolution. Because I conclude that the Amendments are unconstitutionally vague, I grant the plaintiffs' motion for summary judgment (Doc. 83) and deny the defendants' corresponding cross-motion (Doc. 84) without addressing the AFT plaintiffs' First Amendment argument.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law." Perea v. Editorial Cultural, Inc., 13 F.4th 43, 50 (1st Cir. 2021) (cleaned up). The evidence submitted in support of the motion must be considered in the light most favorable to the nonmoving party, drawing all reasonable inferences in its favor. Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

A party seeking summary judgment must first identify the absence of any genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A material fact "is one 'that might affect the outcome of the suit under the governing law.'" United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). If the moving party satisfies this burden, the nonmoving party must then "produce evidence on which a reasonable finder

of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala–Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323.

When parties cross-move for summary judgment, the standard of review is applied to each motion separately. Am. Home Assurance Co. v. AGM Marine Contractors, Inc., 467 F.3d 810, 812 (1st Cir. 2006); see Mandel v. Boston Phoenix, Inc., 456 F.3d 198, 205 (1st Cir. 2006) ("The presence of cross-motions for summary judgment neither dilutes nor distorts this standard of review."). Thus, I must "determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Adria Int'l Grp., Inc. v. Ferré Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001).

## III.   ANALYSIS

The plaintiffs argue that the Amendments violate the Fourteenth Amendment's Due Process Clause because they are unconstitutionally vague. I begin with the legal principles that shape my analysis.

### A.   The Vagueness Standard

Vagueness doctrine "rests on the twin constitutional pillars of due process and separation of powers." Davis, 588 U.S. at 451; see also Sessions, 584 U.S. at 155-56. The doctrine serves due process concerns by requiring

that those subject to the law be given "a reasonable opportunity to know what is prohibited." Grayned v. City of Rockford, 408 U.S. 104, 108 (1972). It also promotes the proper allocation of power among the three branches of government by requiring legislatures, rather than less politically accountable judges and executive branch officials, to "define what conduct is sanctionable and what is not." Sessions, 584 U.S. at 156. Accordingly, a legislative enactment will be found to be unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." United States v. Williams, 553 U.S. 285, 304 (2008); see also McCoy v. Town of Pittsfield, 59 F.4th 497, 509 (1st Cir. 2023) (applying Williams to a vagueness challenge to a town ordinance).

Vagueness doctrine does not require perfect legislative precision. "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." Williams, 553 U.S. at 306. "Because words are rough-hewn tools, not surgically precise instruments, some degree of inexactitude is acceptable in statutory language. Reasonable breadth in the terms employed by an ordinance does not require that it be invalidated on vagueness grounds."

Draper v. Healey, 827 F.3d 1, 4 (Souter, Circuit Justice, 1st Cir. 2016)

(cleaned up). Instead, a statute is unconstitutionally vague "only if it

prohibits an act in terms so uncertain that persons of average intelligence

would have no choice but to guess at its meaning and modes of application."

Frese v. Formella, 53 F.4th 1, 10 (1st Cir. 2022) (cleaned up). And a "statute

authorizes an impermissible degree of enforcement discretion—and is

therefore void for vagueness—where it fails to set reasonably clear

guidelines for law enforcement officials and triers of fact in order to prevent

arbitrary and discriminatory enforcement." Id. at 7 (quoting Act Now to Stop

War & End Racism Coal. v. District of Columbia, 846 F.3d 391, 410 (D.C.

Cir. 2017)).

    1.   <u>Speech Restrictions</u>

       The degree of scrutiny that a legislative enactment will receive when it

is challenged on vagueness grounds will vary depending on both the nature of

the enactment and the consequences that follow from its violation. When

assessing a vagueness challenge, the "test of vagueness applies with

particular force in review of laws dealing with speech." Hynes v. Mayor of

Oradell, 425 U.S. 610, 620 (1976); <u>see also</u> Vill. of Hoffman Ests., 455 U.S. at

499 (noting that "a more stringent vagueness test should apply" to laws

interfering with the right of free speech). This is because First Amendment

"freedoms are delicate and vulnerable, as well as supremely precious in our

society. The threat of sanctions may deter their exercise almost as potently as

the actual application of sanctions. Because First Amendment freedoms need

breathing space to survive, government may regulate in the area only with

narrow specificity." NAACP v. Button, 371 U.S. 415, 433 (1963) (citations

omitted). "[W]here a vague statute abuts upon sensitive areas of basic First

Amendment freedoms, it operates to inhibit the exercise of those freedoms."

Grayned, 408 U.S. at 109 (cleaned up). "Uncertain meanings inevitably lead

citizens to steer far wider of the unlawful zone than if the boundaries of the

forbidden areas were clearly marked." Id. (cleaned up). Such self-censorship

is inimical to our democracy, as "[t]he right to speak freely and to promote

diversity of ideas and programs is . . . one of the chief distinctions that sets us

apart from totalitarian regimes." Terminiello v. City of Chicago, 337 U.S. 1, 4

(1949).

     The danger presented by vague speech restrictions is especially severe

when a law purports to regulate speech based on the speaker's viewpoint. As

the Supreme Court has explained:

> Discrimination against speech because of its message is presumed
> to be unconstitutional. . . . When the government targets not
> subject matter, but particular views taken by speakers on a
> subject, the violation of the First Amendment is all the more
> blatant. Viewpoint discrimination is thus an egregious form of
> content discrimination. The government must abstain from

regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.

Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 828-29 (1995) (citations omitted); see also Ridley v. Mass. Bay Transp. Auth., 390 F.3d 65, 82 (1st Cir. 2004) ("The bedrock principle of viewpoint neutrality demands that the state not suppress speech where the real rationale for the restriction is disagreement with the underlying ideology or perspective that the speech expresses."). Courts should thus "apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content." Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 642 (1994).

2.    Penalty Provisions

The consequences that follow from a violation of an allegedly vague statute can also affect "[t]he degree of vagueness that the Constitution tolerates." Vill. of Hoffman Ests., 455 U.S. at 498. Civil statutes will often be subject to lesser scrutiny than criminal statutes because "the consequences of imprecision are less severe." Sessions, 584 U.S. at 156 (quoting Vill. of Hoffman Ests., 455 U.S. at 498-99). But "the happenstance that a law is found in the civil or criminal part of the statute books" is not dispositive. Id. at 184 (Gorsuch, J., concurring in part). As Justice Gorsuch observed in

16

*Sessions*, certain civil penalties are "routinely graver than those associated with misdemeanor crimes—and often harsher than the punishment for felonies." Id.; see also Kashem v. Barr, 941 F.3d 358, 370 (9th Cir. 2019) ("A provision that nominally imposes only civil penalties but nonetheless carries a 'prohibitory and stigmatizing effect' may warrant 'a relatively strict test.'") (quoting Vill. of Hoffman Estates, 455 U.S. at 499)). Grave civil penalties can include "remedies that strip persons of their professional licenses and livelihoods." Sessions, 584 U.S. at 184 (Gorsuch, J., concurring in part).

Those are precisely the sanctions that the Amendments contemplate here. RSA § 193:40, IV states that teaching a banned concept constitutes a "violation of the educator code of conduct." Because those who violate the educator code of conduct may have their teaching credentials revoked, the education amendments threaten teachers with the loss of their livelihood as well as the inability to practice their chosen profession anywhere in the state. See N.H. Code Admin. R. Ed 511.01(j)(2)(b). And, despite the defendants' arguments to the contrary, the antidiscrimination amendments expose teachers to civil liability. The antidiscrimination amendments provide that anyone aggrieved by a violation of the statute can pursue "all of the remedies available under" the Law Against Discrimination. RSA § 354-A:34. The Law Against Discrimination, in turn, authorizes aggrieved

parties to sue not only employers but also individual employees who aid and abet in an employer's "unlawful discriminatory practice." See RSA § 354:A-21, I(a); see also U.S. Equal Opportunity Comm'n v. Fred Fuller Oil Co., 168 N.H. 606, 610 (2016). Because the phrase "unlawful discriminatory practice" is defined to include a violation of any provision of Chapter 354-A— including the antidiscrimination amendments—a teacher found to have aided and abetted the teaching of a banned concept in violation of RSA § 354-A:31 may be subject to monetary damages.[5] See RSA § 354-A:2, XV.

---

[5]     Although the defendants did not address the issue in their brief, they argued at the motions hearing that teachers cannot be held liable for monetary damages under the antidiscrimination amendments. Relying on the "well established canon of statutory interpretation . . . 'that the specific governs the general,'" the defendants argue that the narrow relief against teachers specified in RSA § 193:40 supersedes the broader relief that is generally permitted under the Law Against Discrimination. RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 645 (2012) (quoting Morales v. Trans World Airlines, Inc., 504 U.S. 374, 384 (1992)). The defendants' argument, however, rests on the faulty premise that RSA § 193:40 provides an exclusive remedy against teachers who teach banned concepts. RSA § 193:40 addresses the professional consequences that could befall teachers who violate the education amendments, but it does not imply that those consequences are to the exclusion of any other remedies. And RSA § 193:40 does not reference, let alone restrict, the availability of damages for violations of the antidiscrimination amendments. Cf. In re Johnson, 161 N.H. 419, 424 (2011) (noting that the specific/general canon comes into play where "one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way") (quoting State v. Bell, 125 N.H. 425, 432 (1984)); In re Heinrich, 160 N.H. 650, 654-55 (2010) (finding

In sum, RSA § 193:40 threatens teachers with the loss of their license, while RSA § 354-A:31 threatens teachers with civil liability. Although teachers do not face criminal penalties for teaching a banned concept, it is difficult to conceive of more serious consequences that could befall a person in a civil proceeding than those that a teacher might face if they are found to have done something that the Amendments prohibit. For this reason, the laws are subject to the "most exacting vagueness review." Doc. 63 at 33.

3.   <u>Statutory Interpretation</u>

Before determining whether the Amendments satisfy this standard, I must first attempt to determine what they prohibit. Because the Amendments are state laws, I construe them using the interpretive principles that the New Hampshire Supreme Court employs when it interprets legislation. <u>See</u> Faber v. Ciox Health, LLC, 944 F.3d 593, 602 n.7 (6th Cir. 2019) (explaining that federal courts use state law when construing state statutes); <u>see</u> generally Abbe R. Gluck, Intersystemic Statutory Interpretation: Methodology as "Law" and the Erie Doctrine, 120 Yale L.J. 1898 (2011). Following this approach, I begin with the statutory text. State v. Priceline.com, Inc., 172 N.H. 28, 33 (2019). If a statute defines its terms, a

---

that a statute that provided detail as to a particular subject controlled over one that lacked any detail).

court ordinarily will defer to the meaning provided by the legislature. Id. But where those terms are left undefined, a court must attempt to determine whether legislative language has a "plain and ordinary meaning." Id. (quoting Appeal of Town of Pelham, 143 N.H. 536, 538 (1999)). In undertaking this process, a court "will not consider what the legislature might have said or add language that the legislature did not see fit to include." Conduent State & Local Sols., Inc. v. N.H. Dep't of Transp., 171 N.H. 414, 420 (2018). Statutes must be read "in the context of the overall statutory scheme, not in isolation." Czyzewski v. N.H. Dep't of Safety, 165 N.H. 109, 111 (2013).

There is an important difference, however, between ordinary statutory interpretation and judicial rewriting of legislation to save it from a vagueness challenge. As the Supreme Court has explained when considering vagueness challenges to federal statutes, "[t]his Court may impose a limiting construction on a statute only if it is readily susceptible to such a construction. We will not rewrite a law to conform it to constitutional requirements, for doing so would constitute a serious invasion of the legislative domain and sharply diminish Congress's incentive to draft a narrowly tailored law in the first place." United States v. Stevens, 559 U.S. 460, 481 (2010) (cleaned up); see also Davis, 588 U.S. at 448 ("When

Congress passes a vague law, the role of courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try again."). Because the Amendments are state laws, the New Hampshire Supreme Court has the final say as to their meaning. Accordingly, I will sustain the plaintiffs' vagueness challenge only if I determine that the Amendments are "not readily subject to a narrowing construction by the state courts." Erznoznik v. City of Jacksonville, 422 U.S. 205, 216 (1975).

## B.   **The Amendments**

The Amendments identify four banned concepts that a student may not be "taught, instructed, inculcated or compelled to express belief in, or support for." RSA § 193:40, I. They do not, however, define any of the terms that must be understood to determine what is prohibited. Nor has either the Department of Education or the Commission on Human Rights adopted regulations to explain the Amendments. See, e.g., In re Weaver, 150 N.H. 254, 256 (2003) (explaining that although "the interpretation of a statute is to be decided ultimately by" the courts, "statutory construction by those charged with its administration is entitled to substantial deference").

In light of the limited guidance as to what the Amendments prohibit, I am persuaded they are fatally vague in three ways: (1) they do not provide

fair notice as to the concepts that teachers may not teach, (2) they do not

sufficiently explain when classroom discussion of a banned concept qualifies

as impermissible teaching, and (3) they do not give teachers enough

guidance to know when their extracurricular communications are within the

Amendments' reach. I address each of these defects below and then explain

why the vagueness of the Amendments is compounded by the fact that they

permit teachers to be disciplined without a finding that a teacher has acted

with scienter. In the concluding section, I review the evidence in the record

that reveals how teachers have been affected by the Amendments since their

enactment.

    1.   <u>The Concepts</u>

One of the most difficult interpretive challenges the Amendments

present is that they fail to address their intended target directly. <u>Cf.</u> <u>Teeboom</u>

<u>v. City of Nashua</u>, 172 N.H. 301, 310 (2019) (noting that statutory

construction is guided by "the circumstances which led to [the statute's]

enactment, and especially the evil or mischief which it was designed to

correct or remedy") (quoting <u>Appeal of Coastal Materials Corp.</u>, 130 N.H. 98,

103 (1987)). Supporters of the Amendments have made no secret of the fact

that their aim is to restrict what teachers can say about what plaintiffs call

DEI initiatives but supporters of the Amendments call CRT.[6] But rather than take on issues like structural racism, implicit bias, and affirmative action directly, the Amendments employ general terms such as teaching that one race is superior to another, that individuals are inherently racist, and that individuals should not be subject to adverse treatment because of their race. While these banned concepts may appear straightforward at first glance, their ambiguity comes to light when put into practice.[7]

Take, for example, the second concept, which prohibits teaching that a person, by virtue of his status in an identified group, is "inherently racist,

---

[6]    See, e.g., Doc 85-22 at 4 (Edelblut op-ed asserting that the law will address "those who promote Critical Race Theory or similar concepts"); Senate Finance Committee, HB 2 Deliberations, YOUTUBE (May 26, 2021), https://www.youtube.com/watch?v=0AbLc51xKrU (statement by Senator Bob Giuda advocating for the Amendments as necessary to "ensure that the minds of our future generations of our state are not being unduly influenced by advocacy for such toxins as Critical Race Theory").

[7]    The first concept, which prohibits teaching that certain groups are "inherently superior" to others, is only scarcely addressed in the parties' briefs. The defendants have not attempted to interpret the concept beyond reiterating its prohibitions, and the plaintiffs have not explained how the first concept fails to give adequate notice or invites arbitrary enforcement. Given the lack of developed argument on the matter, I do not address the first concept beyond noting that it suffers from the same interpretive challenges as the other three concepts. That is, because the first concept does not address its intended target directly, it is unclear "what is prohibited beyond literally espousing that, for example, 'White people are superior to Black people.'" Honeyfund.com, Inc. v. DeSantis, 622 F. Supp. 3d 1159, 1181 (N.D. Fla. 2022).

sexist, or oppressive, whether consciously or unconsciously." One broadly accepted form of bias is "implicit bias," which is understood to be a "negative attitude, of which one is not consciously aware, against a specific social group." See Implicit Bias, AM. PSYCH. ASS'N, https://www.apa.org/topics/implicit-bias [https://perma.cc/2ES7-YE4V]. Implicit biases are "thought to be shaped by experience and based on learned associations between particular qualities and social categories" and may influence behavior, even if unconsciously. Id. Does instructing students on the prevalence of implicit bias teach them that some groups are "inherently racist, sexist, or oppressive"?

The AG addressed this question in an official opinion, which concluded that implicit bias trainings are not prohibited by the second concept. Doc. 85-54 at 9. But, because the AG's opinion substantially departs from any accepted method of statutory interpretation, it exacerbates, rather than resolves, the significant ambiguity created by the second concept.

The AG begins his argument by quoting a dictionary definition of "inherent" as something that is "structural or involved in the constitution or essential character of something : belonging by nature or settled habit : intrinsic, essential." Id. at 8 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1163 (2002)). He then focuses on the terms "intrinsic" and

"essential," without addressing the fact that the definition on which he relies includes tendencies that arise out of either "nature" or "settled habit." Id. Then, for reasons that the AG does not provide, he proceeds to develop his own definition of inherent as something that is "natural, biological, or innate, as opposed to being apparent, accidental, or a characteristic created by external action or external factors, such as current or historical discrimination, stereotyping, environment, or cultural messaging." Id. Again, without further explanation, the AG applies this definition to conclude that the second concept does not prohibit teaching about implicit bias because it is not an inherent form of bias. Id. at 8-9.

The AG's analysis fails to persuade for several reasons. First, the AG considers only a portion of the dictionary's definition of "inherent," without grappling with the fact that the definition also states that something can be inherent if it arises out of "settled habit." Second, he does not attempt to explain why implicit bias is not "inherent" even under his newly proffered definition. And, finally, he does not specify what other forms of unconscious bias may not be taught if the second concept does not include implicit bias.

Accordingly, the AG's opinion does not resolve the lack of clarity left by the text of the second concept. See Appeal of Pub. Serv. Co. of N.H., 124 N.H. 79, 87 (1983) (noting that, although an enforcing agency's interpretation of a

25

statute is "entitled to [the court's] consideration," it need not be deferred to where it is "based upon a misconstruction of the statute"). Without sufficient guidance from the text of the Amendments or the AG, teachers cannot know what, if any, instruction they can provide on implicit biases.

The third concept suffers from a similar vagueness problem. By its terms, it prohibits only teaching that a person "should be discriminated against or receive adverse treatment" because they belong to an identified group. But how, if at all, does the concept apply to teaching about affirmative action?

If one accepts the premise that providing a preference to one group necessarily entails discrimination against other groups, then advocating for at least some forms of affirmative action would be prohibited by the Amendments. See Pernell v. Fla. Bd. of Governors of State Univ. Sys., 641 F. Supp. 3d 1218, 1233-34 (N.D. Fla. 2022) (recognizing that teaching the merits of affirmative action would be prohibited by a similarly worded statute); see also Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 600 U.S. 181, 218-19 (2023) (concluding that giving preference to members of certain racial groups in college admissions necessarily subjects members of other racial groups to unlawful discrimination). But whether this premise is correct in all applications is an issue on which there is no real

consensus.[8] See, e.g., Caroline Mala Corbin, A Critical Race Theory Analysis of Critical Race Theory Bans, 14 U.C. IRVINE L. REV. 57, 83 (2024) (asserting that the third concept does not impact teaching about affirmative action because "taking race into account" is not the same as "teaching that an individual should be discriminated against" on the basis of race) (cleaned up). Because the third concept makes no mention of this premise, and expressly prohibits only teaching that a person should be "discriminated against" because of their group status, teachers are left to guess when, if at all, the third concept prohibits teachers from teaching about the benefits of affirmative action.

The issue only becomes murkier when considering specific efforts to redress past discrimination and promote diversity. The Supreme Court has concluded that at least some race-conscious remedies are legally permissible and, indeed, constitutionally mandated in order to remedy the effects of past discrimination. See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Ed., 402 U.S. 1, 18 (1971) (approving use of race conscious remedies to redress state-imposed segregation); see also Parents Involved in Cmty. Schs., 551 U.S. 701,

---

[8]    Indeed, at the motions hearing, counsel for the defendants appeared to recognize a distinction between teaching that one group "should be discriminated against" and teaching that "one group [should be] preferred over another." Doc. 108 at 7.

737 (2007) ("[N]o one questions that the obligation to disestablish a school system segregated by law can include race-conscious remedies . . . ."). Can teachers extol the virtues of these court-sanctioned efforts to remedy past discrimination, even though they expressly involve differential treatment on the basis of race?

What of efforts to increase diversity on which there is no judicial consensus? For example, the First Circuit recently held that schools may implement facially neutral measures to increase diversity, even if those measures are adopted with the intention of reducing the percentage of over-represented races within a particular institution. Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. for Bos., 89 F.4th 46, 60 (1st Cir. 2023). But at least two members of the Supreme Court have questioned this holding, expressing their view that even facially neutral policies can constitute racial discrimination if undertaken with the purpose of increasing diversity. Coal. for TJ v. Fairfax Cnty. Sch. Bd., No. 23-170, --- S. Ct. ----, 2024 WL 674659 (Mem), at *4 (Feb. 20, 2024) (Alito, J., joined by Thomas, J., dissenting from the denial of certiorari).

As these cases demonstrate, the question of when efforts to redress past discrimination or increase diversity cross into impermissible racial discrimination presents a legal quandary on which reasonable minds can,

and do, differ. Yet the Amendments force teachers to guess as to which diversity efforts can be touted and which must be repudiated, gambling with their careers in the process.

The most obvious vagueness problem is presented by the fourth concept, which prohibits teaching that individuals of one group "cannot and should not attempt to treat others without regard to" their membership in another group. As other courts have observed, this language is "bordering on unintelligible" because it employs the dreaded triple negative form. Honeyfund.com, 622 F. Supp. 3d at 1182; see also Pernell, 641 F. Supp. 3d at 1281 ("[C]oncept four thus features a rarely seen triple negative, resulting in a cacophony of confusion."). The defendants' failure to resolve this confusion and offer a substantive explanation as to the meaning of the concept only highlights its lack of clarity.

But even if this were not enough, I cannot determine what, if anything, the fourth concept prohibits that is not already banned by the first three concepts. The New Hampshire Supreme Court has consistently made clear that "[t]he legislature is not presumed to waste words or enact redundant provisions and whenever possible, every word of a statute should be given effect." State v. Beattie, 173 N.H. 716, 720 (2020) (quoting Garand v. Town of Exeter, 159 N.H. 136, 141, (2009)); see also White v. Auger, 171 N.H. 660,

666-67 (2019). Thus, the legislature presumably intended to ban something in the fourth concept that was not already covered by the first three.

But I am unable to discern what this might be given the substantial—if not total—overlap between the first three concepts and the fourth. How, if at all, is teaching that individuals should be discriminated against on the basis of race different than teaching that individuals should not be treated without regard for race? And how is teaching that certain individuals cannot treat others without regard for sex different than teaching that certain individuals are inherently sexist? The text provides no clues, thus rendering it impossible to interpret the fourth concept consistent with the New Hampshire Supreme Court's rules of statutory construction.

All told, the banned concepts speak only obliquely about the speech that they target and, in doing so, fail to provide teachers with much-needed clarity as to how the Amendments apply to the very topics that they were meant to address. This lack of clarity sows confusion and leaves significant gaps that can only be filled in by those charged with enforcing the Amendments, thereby inviting arbitrary enforcement.

2. <u>Teaching</u>

The Amendments are also fatally flawed because they do not sufficiently explain when a teacher will be subject to sanctions for teaching a

banned concept. The Amendments provide that students may not be "taught, instructed, inculcated or compelled to express belief in, or support for" the banned concepts, but they lack clarity as to what it means to "teach" a banned concept.

In attempting to construe the Amendments, the defendants cite to various dictionary definitions but do not grapple with the individual meaning of the word "taught" (or, for that matter, any of the other enumerated verbs). Rather, the defendants read the Amendments' text as collectively prohibiting "the affirmative and deliberate act of conveying information with knowledge of what information is being conveyed." Doc. 84-1 at 27.

I cannot accept the defendants' reading of the Amendments because it fundamentally ignores the separate prohibitions against teaching, instructing, inculcating, and compelling and instead construes each prohibition as essentially synonymous. See id. (asserting that each of the prohibited acts relies on "similar dictionary definitions"). Adopting such a construction would violate "the well-recognized principles of statutory construction that all words of a statute are to be given effect, that the legislature is presumed not to use words that are superfluous or redundant, and that when the legislature uses two different words, it generally means two different things." State v. Bakunczyk, 164 N.H. 77, 79 (2012). Thus,

contrary to the defendants' argument, "taught" ordinarily means something different from "instructed," "inculcated," or "compelled to express belief in, or support for." But what exactly is prohibited by the word "taught" is far from clear.

While teaching can sometimes consist of merely instructing students on objective facts, teachers often employ more nuanced techniques designed to encourage the development of critical thinking skills. For example, teachers may attempt to stimulate discussion by asking students pointed questions or encourage debate by presenting students with ideas contrary to their own. When such techniques are used to explore a banned concept, it is impossible to know whether a banned concept has been impermissibly taught.

Take, for example, a teacher who decides to teach the Supreme Court's most recent affirmative action decision and touts the dissenters' analysis while paying limited attention to the majority opinion. See generally Students for Fair Admissions, Inc., 600 U.S. at 190. The teacher may view herself as simply teaching students about the dissenters' method of constitutional analysis, but a student may interpret her lesson as teaching that the dissenters were correct. Could her discussion of the case expose her to discipline if she does not explain that the dissenters' analysis is wrong? The text of the Amendments provides no hint, leaving the teacher's fate

subject only to an enforcing agency's subjective interpretation of what was taught.

Or suppose that, during a class discussion of the affirmative action case, a student forcefully argues that the majority's decision was wrong and that race-conscious remedies should be permitted to promote diversity even if they tend to favor one group over another. Will the teacher be subject to discipline if she fails to immediately rebuke the student? The defendants suggest that she might, noting that teachers may sometimes be required to offer "disclaimers" in response to student statements to avoid running afoul of the Amendments. Doc. 108 at 4-6, 10.  When the failure to issue a disclaimer constitutes teaching, however, remains a mystery.

A similar ambiguity as to what it means to teach a concept proved fatal in Keyishian v. Bd. of Regents of Univ. of State of N.Y., 385 U.S. 589 (1967). In that case, the Supreme Court invalidated a statute that banned state universities from employing any person who "by word of mouth or writing wilfully and deliberately advocates, advises or teaches the doctrine that the government of the United States . . . should be overthrown or overturned by force, violence or any unlawful means." N.Y. CIV. SERV. § 105(1)(a). The Court explained that, because "advocacy of the doctrine of forceful overthrow is separately prohibited," the prohibition against teaching the doctrine could

ostensibly extend to a professor who merely "informs his class" about the banned doctrine, without in any way advocating for that doctrine. Keyishian, 385 U.S. at 600. For this reason, the Court concluded that the statute was "plainly susceptible of sweeping and improper application" and unconstitutionally vague. Id. at 599.

So too here, the Amendments' ambiguity as to when a concept is "taught" means that teachers could be prohibited from merely discussing ideas that fit within the banned concepts.[9] Given the unclear line between acceptable and unacceptable discussions, teachers have virtually no way of knowing whether a lesson that touches upon the banned concepts violates the Amendments.[10] Teachers are thus left in the untenable position of having to

---

[9]     Indeed, the Amendments here implicate even greater vagueness concerns than those at issue in Keyishian given that, as I will explain, the Amendments do not contain a scienter requirement. Cf. id. at 600 (finding that the word "teach" rendered the statute impermissibly vague, even though the statute only prohibited "wilful[]" and "deliberate[]" teaching).

[10]     The safe harbor for discussions involving the "historical existence" of banned concepts "as part of a larger course of academic instruction" does little to guide teachers as to what they may and may not do. As an initial matter, it applies only to historical discussions and therefore has no bearing on discussions of current matters. Moreover, the safe harbor still requires teachers to guess as to when a permissible discussion of a banned concept goes too far and becomes prohibited teaching. See, e.g., Santa Cruz Lesbian & Gay Cmty. Ctr. v. Trump, 508 F. Supp. 3d 521, 544 (N.D. Cal. 2020) ("The line between teaching or implying (prohibited) and informing (not prohibited) 'is so murky, enforcement of the ordinance poses a danger of arbitrary and

wager their careers on a guess or else refrain from discussing matters that implicate the banned concepts altogether. This lack of clarity renders the statute unconstitutionally vague.

3.   Extracurricular Speech

Another profound problem with the Amendments is that they do not provide sufficient guidance as to when teachers may be subject to sanctions for engaging in speech that is protected by the First Amendment. Teachers do not have the right to control their curricular speech, Doc. 63 at 15-16, but nor do they "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate," Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 506 (1969). Whether and to what extent the First Amendment protects a teacher's extracurricular speech is a context-specific and fact-intensive question that turns on the balance of the interests involved. See generally Connick v. Myers, 461 U.S. 138, 142 (1983); Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968). Even though the First Amendment does not protect a teachers' curricular speech, it is beyond dispute that at least some interactions between students and teachers are protected by the First Amendment, even if they occur on school grounds or during school hours. See,

---

discriminatory application.'") (quoting Hunt v. City of Los Angeles, 638 F.3d 703, 712 (9th Cir. 2011)).

e.g., Kennedy v. Bremerton Sch. Dist., 597 U.S. 507, 529-30 (2022)

(concluding that a football coach's post-game, on-field prayers with students

were entitled to First Amendment protection); Wood v. Fla. Dep't of Educ.,

No. 4:23cv526, --- F. Supp. 3d ----, 2024 WL 1536749, at *17 (N.D. Fla. Apr. 9,

2024) (concluding that a teacher's decision to share her pronouns at the start

of class was protected by the First Amendment).

On their face, the Amendments apply whenever and wherever a

teacher instructs a student on a banned concept and thus implicate

constitutionally protected interactions between teachers and students.

Indeed, the defendants made their intention to apply the Amendments to

extracurricular speech clear by asserting in the July 2021 FAQs that the

Amendments "apply to all activities carried out by public schools in their role

as public schools, including extra-curricular activities that are part of the

school's work." Doc. 36-8 at 2. Accordingly, as the plaintiffs note in their brief:

> The Amendments restrict speech at sporting events, bus rides to
> and from events, chess competitions, yearbook club meetings,
> newspaper meeting discussions, orchestra rehearsals, and all
> spontaneous run-ins between students and teachers outside the
> classroom and in the halls of the school. The Amendments cover
> off-campus, non-instructional interactions with students, often
> without pay and frequently in response to searching questions,
> at student-led initiatives such as Young Republicans Club, the
> Gay-Straight Alliance, and Students for Racial Justice.

Doc. 83-2 at 61.

Because the Amendments apply broadly to both curricular and extracurricular speech, they potentially intrude on many informal communications between teachers and students that could be entitled to constitutional protection. Where, as here, a law "is capable of reaching expression sheltered by the First Amendment, [due process] demands a greater degree of specificity than in other contexts." Smith v. Goguen, 415 U.S. 566, 573 (1974). Yet, for the reasons I have explained, the Amendments fail to draw the bright line between covered and noncovered speech that the Constitution demands of laws affecting free speech. See Ozonoff v. Berzak, 744 F.2d 224, 231 (1st Cir. 1984) ("Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms. Without precision, an inhibitory regulation may prevent speech far beyond the regulation's intent.") (cleaned up).

4.   Scienter

As the Supreme Court has recognized, a "scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."[11] Vill. of Hoffman Ests.,

---

[11]   Scienter is the "degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission; the fact of an act's having been done knowingly, esp[ecially] as a ground for civil damages or criminal punishment." Scienter, BLACK'S LAW DICTIONARY (11th ed. 2019).

455 U.S. at 499; see also Hill v. Colorado, 530 U.S. 703, 732 (2000). The defendants concede that the Amendments do not contain an "express scienter requirement," but they assert that this omission is largely irrelevant because the act of teaching "requires that a teacher affirmatively and deliberately convey information and know what that information is." Doc. 84-1 at 35.

I am unpersuaded by the defendants' argument because it misconstrues the role that scienter plays in mitigating vagueness concerns. The value of a scienter requirement is that it limits a law's scope to those who knowingly engage in a particular course of conduct. Even if I were to accept the defendants' contention that a teacher can violate the Amendments only by deliberately conveying information to her students,[12] the absence of a true scienter requirement leaves teachers vulnerable to sanctions if they inadvertently cross the boundary between permissible and prohibited speech.

---

[12]   For the reasons I have explained, the defendants' assertion that the Amendments' prohibition against teaching applies only to the "affirmative and deliberate act of conveying information with knowledge of what information is being conveyed" rests on an untenable reading of the text. Id. at 27. Given the inherent ambiguity as to when a concept is "taught," a teacher could violate the Amendments without affirmatively and deliberately instructing students on a particular concept—for example, by failing to offer a disclaimer in response to a student's advocacy for a banned concept, which the defendants concede could form the basis for liability. Doc. 108 at 4-6, 10.

The First Circuit's decision in United States v. Nieves-Castano, 480 F.3d 597, 603 (1st Cir. 2007), illustrates the way in which a scienter requirement can mitigate the impact of an otherwise vague statute. There, the court considered a vagueness challenge to a criminal statute that prohibited a person from knowingly possessing a firearm "at a place that the individual knows, or has reasonable cause to believe, is a school zone." Id. at 602 (quoting 18 U.S.C. § 922(q)(2)(A) (amended 2015)). Because the statute defined the term "school zone" broadly as "the area 'within a distance of 1,000 feet from the grounds of a public, parochial[,] or private school,'" the defendant argued that the statute failed to provide objective criteria that a person could use to determine when they had entered a school zone. Id. at 603 (quoting 18 U.S.C. § 921(a)(25)(B)). In rejecting this argument, the court emphasized the importance of the statute's scienter requirement by stating that the defendant "could only have been convicted if she knew or reasonably should have known that her possession of the firearm was within a school zone, and this scienter requirement ameliorates any vagueness concerns." Id.

The legislation at issue in this case differs from the statute before the court in Nieves-Castano because teachers can face discipline for violating the Amendments by conveying banned information to a student without any proof that they have knowingly crossed the line that separates permissible

and prohibited speech. Because teachers can be found to have crossed that indistinct line without any finding of scienter, the vagueness of the Amendments is compounded rather than mitigated.

## C.  **Impact**

For the reasons I have explained, the Amendments are vague in ways that cannot be resolved through ordinary statutory interpretation. The record demonstrates that these ambiguities invite arbitrary enforcement and deprive teachers of fair notice, not only in theory but also in practice.

### 1.   Arbitrary Enforcement

Because the Amendments fail to establish "minimal guidelines to govern [their] enforcement," officials are free to "pursue their personal predilections" when applying the law. Kolender v. Lawson, 461 U.S. 352, 358 (1983) (quoting Goguen, 415 U.S. at 574-75 (1974)). Indeed, the record demonstrates that those charged with enforcing the law have relied on Commissioner Edelblut's personal opinions on what is appropriate instruction, as expressed in his op-ed articles, to guide their efforts.

The articles, which were written by Edelblut in his personal capacity, identified various actions by teachers and instructional materials that he viewed as problematic. Doc. 85-22 at 4; Doc. 85-41 at 3-4. The June 2021 article advocates for the Amendments by asserting that they are necessary to

address content that undermines American values and teaches students "to be racists," such as Kendi's book How to Be an Antiracist. Doc. 85-22 at 4. The April 2022 article does not reference the Amendments at all, but rather identifies various classroom materials pertaining to race and sexuality that, in Edelblut's view, "undermin[e] the sacred trust that educators hold" by "compromis[ing] the values of families." Doc. 85-41 at 4. Neither article explicitly states that the identified content runs afoul of the Amendments, let alone explains how it conflicts with the law.

Despite the fact that the articles offer minimal interpretive guidance, Department of Education officials have referred educators to them as a reference point. For example, after showing two music videos to her class as part of a unit on the Harlem Renaissance, Alison O'Brien, a social studies teacher at Windham High School, was called into a meeting with her principal and informed that she was being investigated by the Department of Education in response to a parent's complaint. Doc. 85-12 at 3. Department of Education Investigator Richard Farrell recommended that Windham's administrators consult Edelblut's April 2022 opinion article to understand the context of the investigation against O'Brien, without otherwise explaining why O'Brien's lesson warranted investigation. Id. at 5-6. After witnessing her

experience, O'Brien's colleagues grew anxious about facing similar actions themselves and modified their lesson plans accordingly. Id. at 6.

The threat of arbitrary enforcement based on Edelblut's personal views has impacted teachers even in the absence of a formal complaint. For example, teachers at Keene Middle School planned to have their eighth graders read another one of Kendi's books, Stamped: Racism, Antiracism, and You: A Remix of The National Book Award-winning "Stamped from the Beginning". Doc. 85-17 at 3. The school purchased 250 copies of the book but, after reading Edelblut's June 2021 article criticizing one of Kendi's other books, the planned reading was cancelled. Id. at 3-4.

As one teacher at the school explained, he and his colleagues were confused about what "kinds of teaching could take place and what kind[s] of materials could be used" under the Amendments and looked to "publicly available comments from the Commissioner" for guidance. Id. at 4. After reading Edelblut's June 2021 op-ed, the teachers concluded that Edelblut "believed the work of Dr. Kendi violated the [Amendments]." Id. Accordingly, the teachers decided against the planned reading. Id.

As these examples demonstrate, the Amendments' ambiguities leave significant gaps that both officials and teachers understand can only be filled by those charged with their enforcement. By referring educators to Edelblut's

articles for guidance, the department relies on Edelblut's personal views to serve as gap-filler and therefore threatens teachers with enforcement on an "ad hoc and subjective basis" guided by the "personal preferences" of an unelected official rather than clearly delineated statutory standards. Grayned, 408 U.S. at 109, 113 n.22.

2.   Insufficient Notice

Vague laws have been likened to a sword of Damocles, dangling above the heads of those it governs and threatening to drop without any warning. As Justice Marshall observed in Arnett v. Kennedy, the "value of a sword of Damocles is that it hangs—not that it drops. For every employee who risks his job by testing the limits of the statute, many more will choose the cautious path and not speak at all." 416 U.S. 134, 231 (1974) (Marshall, J., dissenting).

Justice Marshall's remarks ring true here. As the record demonstrates, uncertainty surrounding what the Amendments do and do not prohibit has caused teachers to err on the broad side of caution by self-censoring their lesson plans and, in some circumstances, leaving the profession altogether.

Consider, for example, Jennifer Given, a former high school social studies teacher at Hollis/Brookline High School with 19 years of experience in the field. Doc. 85-15 at 3. Based on the "constant confusion with students and

parents" caused by the Amendments, Given felt the need to significantly modify her teaching methods "out of fear that [she] would be accused of" violating the Amendments, regardless of whether she was actually doing so. Id. at 3. For example, Given stopped assessing student performance through essay and open-ended short answer questions out of concern that those methodologies might be misinterpreted by students who believed they had to agree with a certain position to score well on an assessment. Id. Given also significantly restricted open class discussion and stopped allowing her students to choose their own topics for research papers out of a concern that the students would include subject matter in their papers that could violate the Amendments. Id. at 3-4. Additionally, Given refrained from "analogizing material to students' own experiences and interests"—despite the pedogeological value of doing so "in social studies curriculums and historical courses where students can easily believe historical events only happened in the past"—out of fear that such discussions could lead to a complaint against her. Id. at 4. Given found that these changes negatively impacted student learning and resulted in decreased class participation. Id. at 3-4. Given was so troubled by this fact, and so frustrated by the difficulties presented by the Amendments, that she decided to leave teaching altogether. Id. at 3.

Patrick Keefe, a high school English teacher at Campbell High School, has also modified his teaching practices out of fear of violating the Amendments. Doc. 85-13 at 3. For example, Keefe's students read the novel Beloved, by Toni Morrison, which examines the "destructive legacy of slavery" through the story of a formerly enslaved woman in the post-Civil War period. Id. at 5. Prior to the Amendments' passage, Keefe would attempt to place the novel "in a contemporary framework" by inviting students to consider, for example, whether the legacy of slavery is evident in the modern world or how the novel's themes relate to current events like the Black Lives Matter movement. Id. Now, however, Keefe is uncomfortable engaging with students in this way because he worries that it could be "misunderstood" as implying that "there is a 'correct' answer to [his] question[s]" or that students are "'require[ed]' . . . to agree" with the premise of those questions. Id. at 5-6. Keefe fears that, because "parents and students misunderstand instruction techniques, such as using the Socratic method, playing devil's advocate, or seemingly agreeing or disagreeing with a student in order to draw out analytical thinking," he might be subject to a complaint based on a misinterpretation of his lesson. Id. at 6. In an attempt to assuage his fears, Keefe asked the school administration for additional guidance on how to comply with the Amendments, but he "was told there was none available

other than the Attorney General's Frequently Asked Questions." Id. Given

the uncertainty as to the law's reach, Keefe is unsure how to engage in "any

contemporary investigation of race" without violating the Amendments and

feels compelled to avoid the topic altogether, despite the "valuable analytical

training" that the exercise provides to students. Id.

The Amendments have chilled extracurricular speech as well. Ryan

Richman, a high school history teacher at Timberlane Regional High School,

has censored not only his lesson plans but also his interactions with students

through his role as a faculty advisor for the school's Model United Nations

team. Doc. 85-18 at 3-4. Richman explains that he has restricted what he

says "around the students in their research for competitions, on the way to

competitions, and in everyday interactions"—conversations which could be

subject to First Amendment protection—out of fear that he might violate the

Amendments by commenting on the sort of "controversial topics" that

frequently arise at Model UN competitions. Id. at 4. As a result of these

constraints and Richman's concerns about the effects that they are having on

his students, Richman is considering resigning. Id.

These examples are only illustrative of the wide-ranging difficulties

that teachers face in attempting to conform their behavior to the vague

strictures of the Amendments. Without adequate notice of what the

Amendments prohibit, teachers are incentivized to steer well clear of anything that could be construed as violating the Amendments, even if it means utilizing less effective teaching methods. As a result, the work teachers do best is inhibited, and students are forced to bear the costs of the Amendments' ambiguity.

## IV.   <u>REMEDY</u>

Having concluded that the Amendments' prohibitions against teaching banned concepts are unconstitutionally vague, I must consider which, if any, parts of the Amendments may nonetheless be upheld. The Amendments are subject to a severability clause that requires courts to preserve any parts or applications of the Amendments that are unaffected by a judicial determination that other parts or applications are invalid.[13] Relying on this clause, the defendants argue that, if the plaintiffs' vagueness claim has merit, it should be resolved by invalidating only subsection IV of RSA § 193:40, which treats any violation of RSA § 193:40 as a violation of the educator code of conduct. The defendants appear to base this argument on their view that the Amendments can only be unconstitutionally vague if

---

[13]   The clause states that "[i]f any provision of sections 297-298, or the application of any provision to any person or circumstance is held to be invalid, the remainder of such sections, and their application to any other persons or circumstances shall not be affected thereby." HB2 § 91:299.

teaching a banned concept can be sanctioned as a code of conduct violation. I am unpersuaded by this argument because the premise on which it is based is false.

The Amendments are vague not because they subject teachers to severe professional sanctions, but because they fail to provide teachers with sufficient notice of what is prohibited and raise the specter of arbitrary and discretionary enforcement. Invalidating RSA § 193:40, IV would fail to address these concerns because the plaintiffs would continue to be directly barred from teaching the banned concepts by the remaining subsections of RSA § 193:40. They would also be indirectly prohibited from teaching the banned concepts by RSA §§ 354-A:32 and 354-A:33, which bar public schools from teaching the concepts, because schools would be required to enforce the prohibitions against their teachers to avoid damages actions. And, for the reasons I explained, teachers who aid and abet their employers in teaching the concepts would themselves continue to face the prospect of individual damages actions under RSA § 354-A.

Thus, although striking down RSA § 193:40, IV would certainly lessen the harm that teachers would face for teaching a banned concept, its invalidation alone would not free teachers from the need to guess as to whether they are acting unlawfully. Nor would it provide those charged with

48

enforcing the Amendments with the guidance they need to prevent arbitrary enforcement. Accordingly, I cannot resolve the plaintiffs' vagueness claim merely by invalidating RSA § 193:40, IV. Instead, the constitutional infirmities I have identified require the invalidation of not only the sanction provided by RSA § 193:40, IV, but also the vague provisions themselves— RSA §§ 354-A:31, 354-A:32, and 193:40.[14]

## V.    CONCLUSION

The Amendments are viewpoint-based restrictions on speech that do not provide either fair warning to educators of what they prohibit or sufficient standards for law enforcement to prevent arbitrary and discriminatory enforcement. Thus, the Amendments violate the Fourteenth Amendment to the U.S. Constitution.

Although the plaintiffs have sought both declaratory and injunctive relief, I have no reason to believe that the defendants will fail to respect this

---

[14]    The plaintiffs do not expressly challenge RSA §§ 354-A:29 or 354-A:33, nor do those provisions include the vague language that plagues RSA §§ 354-A:31, 354-A:32, and 193:40. Thus, I decline to invalidate these provisions. See N.H. Democratic Party v. Sec'y of State, 174 N.H. 312, 331 (2021) (explaining that under New Hampshire law, courts are to "presume that the legislature intended that the invalid part shall not produce entire invalidity if the valid part may be reasonably saved" and consider "whether the unconstitutional provisions of the statute are so integral and essential in the general structure of the act that they may not be rejected without the result of an entire collapse and destruction of the statute") (quoting Associated Press v. State, 153 N.H. 120, 141 (2005)).

court's ruling that the Amendments are unconstitutional on their face.

Accordingly, I grant the plaintiffs' request for declaratory relief but

determine that injunctive relief is not necessary at the present time. <u>See</u>

<u>Wooley v. Maynard</u>, 430 U.S. 705, 711 (1977) (explaining that injunctive

relief is not required if the plaintiffs' interests will be protected by a

declaratory judgment).

For the reasons discussed, the plaintiffs' motion for summary judgment

(Doc. 83) is granted as set forth herein. The defendants' cross-motion for

summary judgment (Doc. 84) is denied.

SO ORDERED.

<u>/s/ Paul J. Barbadoro</u>
Paul J. Barbadoro
United States District Judge

May 28, 2024

cc:      Counsel of Record

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

**Local 8027, AFT-N.H.,**
**AFL-CIO, et al.**

   v.        Case No. 21-cv-1077-PB
             Opinion No. 2023 DNH 005

**Frank Edelblut, Commissioner,**
**N.H. Department of Education, et al.**

## MEMORANDUM AND ORDER

The plaintiffs in these consolidated actions are public school teachers, administrators, and teachers' associations. They challenge the constitutionality of several recent amendments to New Hampshire's education and antidiscrimination laws that restrict what public school teachers can say to their students about how to understand, prevent, and redress discrimination in our society. Several of the plaintiffs contend that the new laws violate their First Amendment right to free speech. They all argue that the laws are unconstitutionally vague. The defendants have responded with a motion to dismiss for failure to state a claim.

## I.  BACKGROUND

The laws at issue in this case have their genesis in New Hampshire House Bill 544 ("HB544"), which was captioned "An Act relative to the propagation of divisive concepts." The core components of HB544 were later

added by amendment to House Bill 2 ("HB2"), a budget bill that was passed by the House and sent to the Senate on April 7, 2021. The Senate made substantial changes to HB2's divisive concepts provisions, which appear in Section 297 and 298 of the bill, and rebranded them as antidiscrimination laws. Differences between the House and Senate versions of the bill were resolved in conference, and HB2 became law on June 25, 2021.

HB2 made several changes to the state's education and antidiscrimination laws.[1] The amendment to the education laws, codified at N.H. Rev. Stat. Ann. ("RSA") § 193:40, identifies four concepts that a public primary or secondary school student may not be "taught, instructed, inculcated or compelled to express belief in, or support for":

> (a) That one's age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion or national origin is inherently superior to people of another age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin;

> (b) That an individual, by virtue of his or her age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin, is inherently racist, sexist, or oppressive, whether consciously or unconsciously;

---

[1]    The parties cannot agree on a name for the new laws. Plaintiffs call them "divisive concept" or "banned concept" laws. Defendants refer to them as "antidiscrimination provisions." Rather than pick a side on this inconsequential point, I refer to the new laws as the "education and antidiscrimination amendments" or the "amendments."

(c) That an individual should be discriminated against or receive adverse treatment solely or partly because of his or her age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin; or

(d) That people of one age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin cannot and should not attempt to treat others without regard to age, sex, gender identity, sexual orientation, race, creed, color, marital status, familial status, mental or physical disability, religion, or national origin.

RSA § 193:40, I.

HB2 also added several new sections to chapter 354-A, known as the "Law Against Discrimination," that employ substantially similar versions of the banned concepts. RSA § 345-A:31 makes it unlawful for a public employer to "teach, advocate, instruct, or train" the banned concepts to "any employee, student, service recipient, contractor, staff member, inmate, or any other individual or group." RSA § 354-A:32 similarly states that "[n]o government program shall teach, advocate, or advance" any of the banned concepts. And RSA § 354-A:33 protects public employees from being disciplined for refusing to participate in any activity "at which a public employer or government

program advocates, trains, teaches, instructs, or compels participants to express belief in, or support for," any of the banned concepts.[2]

RSA § 193:40, III permits the Attorney General, or any other person "claiming to be aggrieved by a violation" of the new law, to obtain damages and injunctive relief from an offending school or school district, either by filing a lawsuit in superior court or by filing a complaint with New Hampshire's commission for human rights. RSA § 345-A:34 similarly permits a person "aggrieved" by a violation of the antidiscrimination amendments to pursue "all of the remedies available under" chapter 354-A, which include compensatory damages and injunctive relief.

RSA § 193:40, IV provides that a "[v]iolation of this section by an educator shall be considered a violation of the educator code of conduct that justifies disciplinary sanction by the state board of education." An "educator" is defined as "a professional employee of any school district whose position requires certification by the state board [of education]." RSA § 193:40, V. Potential disciplinary sanctions include reprimand, suspension, or revocation of an educator's certification. See N.H. Code Admin. R. Ed 511.01. In other words, an educator who is found to have taught or advocated a banned

---

[2] The education and antidiscrimination amendments use several different terms to describe the speech that they prohibit. For ease of reference, I refer to the prohibited types of expression collectively as "teaching or advocacy."

concept may lose not only his or her job, but also the ability to teach anywhere in the state. See id.; see also id. Ed. 501.02(ad).

The new laws create safe harbors for certain conduct that may otherwise constitute teaching or advocacy of a banned concept. RSA § 193:40, II allows "discussing, as part of a larger course of academic instruction, the historical existence of ideas and subjects identified" by a banned concept. RSA § 354-A:29, II permits public employers to conduct "racial, sexual, religious, or other workplace sensitivity training based on the inherent humanity and equality of all persons." And RSA § 354-A:29, III disavows any limitation on "the academic freedom of faculty members" at public colleges and universities.

Passage of the education and antidiscrimination amendments led to immediate controversy over their scope. The following month, three state agencies — the department of education, the commission for human rights, and the department of justice ("enforcing agencies") — produced collective guidance regarding the scope and effects of the new provisions. Framed as "Frequently Asked Questions" ("FAQs"), one guidance document dealt with K-12 educational programs and the other concerned public employers and government programs. Both FAQs defined the term "inherent" in the first two banned concepts as referring to characteristics that are "natural, biological, or innate, as opposed to characteristics that are merely apparent,

accidental, or based on external factors." Doc. Nos. 36-8 at 1; 36-9 at 1. The
FAQs also explained that the amendments do not prohibit training or
education geared toward diversity, equity, equality, and inclusion, such as
implicit bias training.

In September 2021, the New Hampshire Attorney General ("AG")
issued an official opinion concerning the scope and application of the new
laws, after some stakeholders raised concerns that they were "confusing and
that public employers and schools will struggle to understand the scope of the
new prohibitions." Doc. No. 36-10 at 1. Describing the new statutory
provisions as "legislation of limited reach," id. at 5, the AG opined that the
first two banned concepts proscribe advocacy that one identified group has
"natural, biological, or innate characteristics, as opposed to apparent or
accidental characteristics that: (1) make them superior or inferior to other
identified groups or (2) make one identified group racist, sexist, or
oppressive." Id. at 3. According to the opinion, the last two banned concepts
prohibit advocacy "that any identified group can or should be treated
unequally to any other identified group and that one identified group should
be discriminated against or treated adversely." Id.

In December 2021, two groups of plaintiffs challenged the new laws in
separate complaints filed against the education commissioner and other state
officials. The first group consists of five educators, two of whom are also

parents of children enrolled in New Hampshire's public schools, and Local 8027 of the American Federation of Teachers-New Hampshire, a labor union that represents approximately 3,400 public school teachers, school support staff, city and town employees, police officers, library employees, and higher education faculty in the state (collectively, "AFT plaintiffs"). The second group includes two diversity, equity, and inclusion school administrators and the National Education Association-New Hampshire, a professional association representing more than 17,000 educators in the state (collectively, "NEA plaintiffs"). The two actions were later consolidated.

The AFT plaintiffs allege that the amendments violate their First Amendment right to free speech. Both complaints assert that the new laws are impermissibly vague in violation of the Fourteenth Amendment's Due Process Clause.

## II.   <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In testing a complaint's sufficiency, I employ a two-step approach. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). First, I screen the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (cleaned up). A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed. Id. Second, I credit as true all of the plaintiff's non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then determine if the claim is plausible. Id. The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct. Twombly, 550 U.S. at 556. The "make-or-break standard" is that those allegations and inferences, "taken as true, must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

## III.   ANALYSIS

Defendants contend that the consolidated complaints must be dismissed because the education and antidiscrimination amendments do not on their face violate either the First Amendment's Free Speech Clause or the Fourteenth Amendment's Due Process Clause. Plaintiffs, unsurprisingly, disagree.

A.      **First Amendment Claim**

The AFT plaintiffs base their First Amendment claim on both their claimed right to speak as teachers and their children's corresponding right to receive information as public school students. I turn first to the claims they bring as teachers.

1.  Teachers' First Amendment Claim

Defendants' challenge to plaintiffs' claim as teachers can be simply stated: (1) plaintiffs are government employees; (2) the education and antidiscrimination amendments only restrict curricular speech; (3) curricular speech is government speech; and (4) the First Amendment does not protect speech by government employees when, as is the case here, they speak for the government rather than as citizens. Defendants base this argument on the Supreme Court's decision in Garcetti v. Ceballos, 547 U.S. 410 (2006), where the Court considered "whether the First Amendment protects a government employee from discipline based on speech made pursuant to the employee's official duties." Id. at 413. In answering that question, the Court built upon its prior decisions in Pickering v. Board of Education of Township High School District 205, 391 U.S. 563 (1968) and Connick v. Myers, 461 U.S. 138 (1983). As the Court explained the analytical framework:

> "Pickering and the cases decided in its wake identify two
> inquiries to guide interpretation of the constitutional protections
> accorded to public employee speech. The first requires

9

determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises."

==Garcetti==, 547 U.S. at 418 (cleaned up).[3]

When an employee's speech may be protected because the employee is speaking as a citizen on a matter of public concern, Garcetti, Connick and Pickering instruct that a court must "attempt to balance the value of the employee's speech — both the employee's own interests and the public's interest in the information the employee seeks to impart — against the employer's legitimate government interest in preventing unnecessary disruptions and inefficiencies in carrying out its public service mission."

==Bruce v. Worcester Reg'l Transit Auth.==, 34 F.4th 129, 137 (1st Cir. 2022) (cleaned up).

Garcetti involved speech by a deputy district attorney that the Court concluded was unprotected because he was speaking as a government

---

[3]    The Supreme Court later qualified its holding in Garcetti by stating that "[t]he critical question under Garcetti is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." ==Lane v. Franks==, 573 U.S. 228, 240 (2014). In a recent case, the First Circuit interpreted both Garcetti and Lane to require courts to determine "whether an employee spoke 'pursuant to their official duties'" by focusing on "whether the speech was 'part of what' the employee was 'employed to do' rather than merely whether the employee engaged in the speech 'at work.'" ==Bruce v. Worcester Reg'l Transit Auth.==, 34 F.4th 129, 136 (1st Cir. 2022) (quoting ==Garcetti==, 547 U.S. at 420, 421).

employee rather than as a citizen. 547 U.S. at 422-24. Although that case did not concern curricular speech by public primary and secondary school teachers, defendants contend that Garcetti supplies the standard that I must apply when ruling on plaintiffs' First Amendment claim.

Plaintiffs argue Garcetti does not apply here because teachers have a First Amendment right to academic freedom that differentiates them from other public employees, at least when they are engaged in teaching. To support their position, they point out that the Supreme Court has not expressly extended Garcetti to curricular speech and argue that the controlling precedent on that issue is the First Circuit's earlier decision in Ward v. Hickey, 996 F.2d 448 (1st Cir. 1993). I disagree.

In Ward, a high school teacher was denied tenure after she discussed the abortion of fetuses with Down syndrome in her ninth-grade biology class. Id. at 450. The First Circuit analyzed the teacher's free speech claim by drawing on Supreme Court precedent addressing student speech. See id. at 452 (citing Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 506 (1969); Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 271 (1988)). Adopting the Tinker-Hazelwood test, the court held that a school may restrict a teacher's curricular speech if "(1) the regulation is reasonably related to a legitimate pedagogical concern, and (2) the school provided the teacher with notice of what conduct was prohibited." Id. (cleaned up).

11

Ward predates Garcetti by more than a decade, and it does not discuss Pickering or Connick. Significantly, the First Circuit has not relied on Ward in any subsequent case for the proposition that plaintiffs advance here, not even in a case involving "curricular discretion" where the district court had relied on Ward. See Griswold v. Driscoll, 625 F. Supp. 2d 49, 60 (D. Mass. 2009), aff'd, 616 F.3d 53, 60 (1st Cir. 2010). Instead, the First Circuit affirmed the district court in Griswold on alternative grounds, holding that the challenged curriculum guide "did not implicate the First Amendment." 616 F.3d at 60. In another decision decided after Ward but prior to Garcetti, the First Circuit similarly rejected a curricular speech claim by a student teacher by using Pickering and Connick rather than Ward. See Hennessy v. City of Melrose, 194 F.3d 237, 248-49 (1st Cir. 1999). Accordingly, I am not persuaded by plaintiffs' contention that Ward rather than Pickering, Connick and Garcetti supply the standard of review in this case.

Plaintiffs alternatively argue that Garcetti does not apply to curricular speech claims even if such claims are governed by Pickering and Connick because the Garcetti majority expressly declined to consider in that case "whether the analysis we conduct today would apply in the same manner to a case involving speech related to scholarship or teaching." Garcetti, 547 U.S. at 425. A careful reading of Garcetti, however, leaves no doubt that the Court's concerns there were directed primarily at academic freedom claims by

college and university faculty rather than public primary and secondary
school teachers. We know this to be true because the majority's comment
responds expressly to Justice Souter's concern in dissent that the majority
opinion might "imperil First Amendment protection of academic freedom in
public colleges and universities, whose teachers necessarily speak and write
pursuant to official duties." Id. at 438 (Souter J., dissenting).

In Garcetti's wake, several circuit courts have recognized that public
college and university professors retain substantial academic freedom under
the First Amendment while engaged in teaching and scholarship. See, e.g.,
Meriwether v. Hartop, 992 F.3d 492, 505 (6th Cir. 2021); Buchanan v.
Alexander, 919 F.3d 847, 852-53 (5th Cir. 2019); Demers v. Austin, 746 F.3d
402, 411 (9th Cir. 2014); Adams v. Trs. of Univ. of N.C.-Wilmington, 640 F.3d
550, 564-65 (4th Cir. 2011).[4] But the circuits that have considered whether
public primary and secondary school teachers enjoy similar freedom to
determine what they will teach have concluded that their curricular speech is

---

[4]     The Ninth Circuit held in Demers that Garcetti does not apply to the
curricular speech of public university professors, but the opinion includes
dicta that could be read to also extend similar protection to public high school
teachers. See 746 F.3d at 412-13. Demers does not discuss the Ninth Circuit's
earlier decision in Johnson v. Poway Unified School District, which holds that
the curricular speech of public primary and secondary teachers is not
protected by the First Amendment. See 658 F.3d 954, 966-70 (9th Cir. 2011).
Thus, I read these opinions together to exempt only curricular speech by
public college and university professors from Garcetti's holding.

not protected by the First Amendment. See Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 966-70 (9th Cir. 2011); Evans-Marshall v. Bd. of Ed. of Tipp City Extended Village Sch. Dist., 624 F.3d 332, 342 (6th Cir. 2010); Mayer v. Monroe Cnty. Comm. Sch. Corp., 474 F.3d 477, 479-80 (7th Cir. 2007); cf. Lee v. York Cnty. Sch. Div., 484 F.3d 687, 694 n.11, 700 (4th Cir. 2007) (declining to apply Garcetti but concluding under Pickering and Connick that a teacher's speech was not protected by the First Amendment).

The reasons for treating curricular speech by college and university faculty differently from similar speech by primary and secondary school teachers are compelling. The Supreme Court has long recognized that "universities occupy a special niche in our constitutional tradition." Grutter v. Bollinger, 539 U.S. 306, 329 (2003); see also Sweezy v. New Hampshire, 354 U.S. 234, 249-55 (1957) (plurality opinion); Keyishian v. Bd. of Regents of Univ. of State of N.Y., 385 U.S. 589, 603 (1967) (recognizing that a university "classroom is peculiarly the 'marketplace of ideas'"). In such environments, "academic freedom . . . is of transcendent value to all of us and not merely to the teachers concerned." Keyishian, 385 U.S. at 603. In short, academic freedom concerns are paramount on college and university campuses.

Public primary and secondary school teachers, by contrast, are hired to teach the curriculum developed by the politically accountable branches of state and local government. Individual primary and secondary school

teachers simply aren't given the latitude to teach whatever they believe

students need to hear. As the Seventh Circuit observed in Mayer:

> A teacher hired to lead a social-studies class can't use it as a
> platform for a revisionist perspective that Benedict Arnold wasn't
> really a traitor, when the approved program calls him one; a
> high-school teacher hired to explicate Moby-Dick in a literature
> class can't use Cry, The Beloved Country instead, even if Paton's
> book better suits the instructor's style and point of view; a math
> teacher can't decide that calculus is more important than
> trigonometry and decide to let Hipparchus and Ptolemy slide in
> favor of Newton and Leibniz.

474 F.3d at 479.

College and university faculty also teach their classes in a very

different environment from the world of primary and secondary education.

No one is required to attend a public college or university, but primary and

secondary school education is compulsory, and most families lack either the

financial means or the spare time to satisfy the requirement through private

schools or home schooling. Id. While local school boards may have good

reasons to grant teachers substantial autonomy in choosing how best to

implement curricular standards, parents, students, and teachers will

inevitably disagree about what should be taught in public school classrooms.

When disagreements arise, they generally are better resolved by politically

accountable officials than by federal judges. See Evans-Marshall, 624 F.3d at

341. Accordingly, I agree with defendants that Garcetti applies and that the

15

First Amendment does not protect the curricular speech of primary and secondary school teachers.

For defendants, that ends the matter. Because they contend that the education and antidiscrimination amendments only apply to curricular speech, they argue that I need not consider plaintiffs' ancillary claim that the amendments also impermissibly restrict their extracurricular speech. I disagree. RSA § 193:40, I provides that "[n]o pupil in any public school in this state shall be taught, instructed, inculcated or compelled to express belief in, or support for," a banned concept. As plaintiffs argue, this provision can plausibly be read to cover interactions with pupils outside the classroom and even beyond the school grounds. After all, a pupil in a public school may interact with a teacher in a school hallway, schoolyard, lunchroom, or library, not to mention during extracurricular activities that take place on or off school grounds. Even the enforcing agencies' guidance in the FAQs recognize the arguably broad scope of the amendments by construing them to apply to extracurricular activities. See Doc. No. 36-8 at 2 ("The prohibitions apply to all activities carried out by public schools in their role as public schools, including extra-curricular activities that are part of the public school's work."). To underscore the point, the only acknowledged exception in the FAQs for activities that take place on a public school's property is for third-party events or activities, such as voluntary after-school programs

administered by outside organizations. See id. Thus, I agree with plaintiffs that the amendments arguably prohibit any advocacy of a banned concept that a teacher directs at a student, even outside the confines of a classroom.

Because the education and antidiscrimination amendments are susceptible to an interpretation that encompasses extracurricular speech, they plausibly restrict teachers' speech as private citizens. See, e.g., Kennedy v. Bremerton Sch. Dist., 142 S. Ct. 2407, 2424-25 (2022) (holding that a high school coach who engaged in prayer while on school property and in the immediate vicinity of students did not engage in government speech). As to such speech, Garcetti indicates that the court should apply the Pickering-Connick balancing test. Defendants have not analyzed plaintiffs' extracurricular speech claim under that test. Accordingly, I decline to dismiss the AFT plaintiffs' First Amendment claim to the extent it is based on the theory that the education and antidiscrimination amendments restrict their extracurricular speech.

2. Students' First Amendment Claim

Two of the AFT plaintiffs have children who attend public schools in New Hampshire. Although they did not expressly allege a distinct First Amendment claim on behalf of their children, they left no doubt in their objection to defendants' motion to dismiss that they believe that the education and antidiscrimination amendments also violate their children's

17

right to free speech. Defendants object to what they see as an improper attempt by plaintiffs to add a claim that is not asserted in their complaint.

I do not doubt that a parent can assert a First Amendment claim on behalf of a child either as a "general guardian" pursuant to Fed. R. Civ. P. 17(c)(1), or as a "next friend," as is typically done in New Hampshire when a parent represents a child in a state court proceeding, see, e.g., Roberts v. Mills, 85 N.H. 517, 519 (1932). Plaintiffs, however, did not sue in either capacity. Nor did they include a distinct First Amendment claim on behalf of their children in their complaint. Accordingly, if plaintiffs want to sue on behalf of their children, they must file an amended complaint asserting the children's interests in a distinct claim for relief.[5]

---

[5]    In allowing plaintiffs to amend their complaint, I do not mean to suggest that the First Amendment gives plaintiffs' children any greater control over a school's curriculum than it gives to teachers. Although the First Amendment protects a recipient's right to receive information from a willing speaker, Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc., 425 U.S. 748, 757 (1976), a recipient's right to receive information is derivative of the speaker's right to speak. See Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico, 457 U.S. 853, 867 (1982) ("the right to receive ideas follows ineluctably from the sender's First Amendment right to send them"); Doe ex rel. Doe v. Governor of N.J., 783 F.3d 150, 155 (3rd Cir. 2015); Ind. Right to Life, Inc. v. Shepard, 507 F.3d 545, 549 (7th Cir. 2007); Pa. Family Inst., Inc. v. Black, 489 F.3d 156, 165 (3rd Cir. 2007); In re Application of Dow Jones & Co., 842 F.2d 603, 608 (2d Cir. 1988). Should plaintiffs seek to amend their complaint to add a First Amendment claim on behalf of their children, defendants remain free to argue that a child's First Amendment right to receive information about a banned concept is no broader than a teacher's right to speak about the concept.

**B.**    **Vagueness Challenge**

Plaintiffs also argue that the education and antidiscrimination amendments are unconstitutionally vague, both facially and as applied to educators. Construing the claim as a facial vagueness challenge only, defendants argue that it cannot succeed for several reasons. First, defendants contend that the amendments are not vague in all of their applications, the standard that they believe should apply in this case. But even if a less stringent vagueness test applies, defendants argue that the amendments pass muster because they provide a discernible standard of conduct and protect against arbitrary or discriminatory enforcement.

1.    Classifying Plaintiffs' Vagueness Challenge

The complaints purport to assert both facial and as-applied vagueness challenges. Plaintiffs confirmed at oral argument that they are presenting both claims and that, in its current form, their challenge is as applied in the sense that they seek to invalidate the statutory prohibitions as applied to educators. Defendants, in a conclusory manner, construe the vagueness claim to be facial only, without addressing plaintiffs' nuanced as-applied challenge.

Generally, a facial challenge raises constitutional defects as to the terms of the statute itself, independent of its application to a plaintiff's particular set of circumstances. See United States v. Playboy, 529 U.S. 803, 834 n.3 (2000) (Scalia, J., dissenting). By contrast, an as-applied challenge is

focused on whether the statute's application to a plaintiff's actual or proposed conduct is unconstitutional. See id. Plaintiffs who bring a prospective as-applied vagueness challenge typically must identify specific activities that they plan to engage in but that are arguably barred. See Holder v. Humanitarian Law Project, 561 U.S. 1, 18-25 (2010); Copeland v. Vance, 893 F.3d 101, 112 (2d Cir. 2018). "The challenger cannot instead rely on hypothetical situations in which the statute could not validly be applied." Copeland, 893 F.3d at 113; see also Humanitarian Law Project, 561 U.S. at 22 (refusing to analyze "hypothetical situations designed to test the limits" of statutory prohibitions).

The complaints here are silent as to any particular advocacy that plaintiffs would pursue but for fear of running afoul of the statutory prohibitions. Rather, plaintiffs seek to redefine the nature of an as-applied challenge to encompass a facial challenge to a statute as applied to a subset of individuals whom it affects. Although there is reason to doubt plaintiffs' position that they have adequately pleaded an as-applied challenge, defendants' motion to dismiss does not present a developed argument regarding the viability of such a claim. Because the issue has not been adequately briefed, I deny defendants' motion to dismiss plaintiffs' as-applied vagueness claim without prejudice to their ability to argue at a later stage that the claim is without merit.

2.  Applicable Standard for Plaintiffs' Facial Vagueness Claim

The parties dispute the appropriate standard for evaluating plaintiffs' facial vagueness challenge. Defendants argue that plaintiffs must prove that the amendments are vague in all of their applications, citing Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489 (1982). Plaintiffs disagree, pointing to the Supreme Court's more recent rejection of that standard in Johnson v. United States, 576 U.S. 591 (2015), Sessions v. Dimaya, 138 S. Ct. 1204 (2018), and United States v. Davis, 139 S. Ct. 2319 (2019).

The Supreme Court has not taken a consistent position over time on the standard a court should use when evaluating facial vagueness challenges outside of the First Amendment context. See generally Richard H. Fallon, Jr., As-Applied and Facial Challenges and Third-Party Standing, 113 Harv. L. Rev. 1321 (2000). In Flipside, the Court set a high bar for such challenges: a plaintiff had to show that the statute was "impermissibly vague in all of its applications." 455 U.S. at 495. As Justice Thomas noted in his dissent in Johnson, this standard "is simply an application of the broader rule" espoused in United States v. Salerno, 481 U.S. 739 (1987), that "a statute is facially unconstitutional only if 'no set of circumstances exists under which the Act would be valid.'" Johnson, 576 U.S. at 636 n.2 (Thomas, J., dissenting) (quoting Salerno, 481 U.S. at 745). Because plaintiffs must show

under this standard that a statute has no valid applications, a single clear application of the law would defeat a facial vagueness challenge under this test. As the Second Circuit has noted, "[t]his standard effectively eliminates facial challenges outside of the First Amendment context that could not also be brought as an as-applied challenge, since any law that is unconstitutional in every set of circumstances is also necessarily unconstitutional when applied to any plaintiff." Dickerson v. Napolitano, 604 F.3d 732, 743-44 (2d Cir. 2010).

About a decade after Flipside was decided, a plurality of the Supreme Court in City of Chicago v. Morales challenged the notion that the Salerno standard applies in facial vagueness cases. See 527 U.S. 41, 55 n.22 (1999) (Stevens, J., with Souter, J. and Ginsburg, J., concurring) ("To the extent we have consistently articulated a clear standard for facial challenges, it is not the Salerno formulation, which has never been the decisive factor in any decision of this Court, including Salerno itself . . . ."). Although several courts of appeals subsequently questioned the continued vitality of the "no set of circumstances" standard, lower courts continued to apply it after Morales. See, e.g., Alphonsus v. Holder, 705 F.3d 1031, 1042 n.11 (9th Cir. 2013); United States v. Comstock, 627 F.3d 513, 518 (4th Cir. 2010).

More recently, however, the Supreme Court has decisively rejected the notion that clarity in some applications can save a statute from a facial

vagueness attack. In a trio of facial challenges not involving the First Amendment, the Court refused to adopt the view that "a statute is void for vagueness only if it is vague in all its applications." Johnson, 576 U.S. at 602; accord Dimaya, 138 S. Ct. at 1214 n.3; see also Davis, 139 S. Ct. at 2336. The residual clauses in the statutes at issue in those cases required judges to determine whether an offense qualified as a violent felony or a crime of violence by using a categorical approach, divorced from a defendant's actual conduct. The Court struck down all three statutes on vagueness grounds.

In Johnson, the Court considered a facial challenge to the residual clause of the Armed Career Criminal Act (ACCA), which imposed enhanced penalties for offenders with prior convictions for a "violent felony," defined to include any felony that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 576 U.S. at 593-94 (cleaned up). The Court concluded that the clause was unconstitutionally vague even though there were some "straightforward cases" that clearly fell within its scope. See Id. at 602-03. In doing so, the Court acknowledged that some of its opinions have used the "vague in all applications" language that would have mandated a different result. See id. But, the Court concluded, "our holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." Id. at 602. The Court cited two prior holdings to illustrate the point:

For instance, we have deemed a law prohibiting grocers from
charging an "unjust or unreasonable rate" void for vagueness —
even through charging someone a thousand dollars for a pound of
sugar would surely be unjust and unreasonable. We have
similarly deemed void for vagueness a law prohibiting people on
sidewalks from "conduct[ing] themselves in a manner annoying
to persons passing by" — even though spitting in someone's face
would surely be annoying.

Id. at 602-03 (quoting United States v. L. Cohen Grocery Co., 255 U.S. 81, 89

(1921); Coates v. Cincinnati, 402 U.S. 611, 611 (1971)). "These decisions," the

Court reasoned, "refute any suggestion that the existence of some obviously

risky crimes establishes the residual clause's constitutionality." Id. at 603.

Further, the Court observed that the "supposed requirement of vagueness in

all applications is not a requirement at all, but a tautology: If we hold a

statute to be vague, it is vague in all its applications (and never mind the

reality)." Id. Because the ACCA's residual clause "produce[d] more

unpredictability and arbitrariness than the Due Process Clause tolerates," id.

at 598, the Court invalidated it in its entirety, even as to "straightforward

cases." Id. at 602-03. In his dissent, Justice Thomas defended Flipside's

"vague in all applications" standard as an extension of Salerno's "no set of

circumstances" test and suggested that the majority was carving out an

exception to that rule in facial vagueness cases. See id. at 636 & n.2 (Thomas,

J., dissenting).

24

In Dimaya, the Supreme Court relied on Johnson to strike down as facially vague a similarly worded residual clause in an immigration statute that authorized the removal of aliens convicted of "a crime of violence." See 138 S. Ct. at 1213-16. Dissenting again, Justice Thomas reiterated his view that "a facial challenge requires a statute to be vague 'in all applications,'" but he acknowledged that Johnson "weakened" that principle. Id. at 1250 (Thomas, J., dissenting). In response, the majority confirmed that "Johnson made clear that our decisions 'squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp.'" Id. at 1214 n.3 (majority opinion) (quoting Johnson, 576 U.S. at 602).

In the last installment of the trilogy, the Supreme Court invalidated on facial vagueness grounds the residual clause of a criminal statute that authorized enhanced penalties for certain firearms offenses. See Davis, 139 S. Ct. at 2336. Without expressly reiterating its rejection of the "vague in all applications" standard, the Court in Davis endorsed its approach in Johnson and Dimaya and held that the statute's categorical approach was void for vagueness. See id. at 2325-36.

At least three circuit courts have analyzed the impact of Johnson and its progeny on facial vagueness challenges. The Seventh and Ninth Circuits have interpreted those cases as "put[ting] to rest the notion — found in any

number of pre-Johnson cases — that a litigant must show that the statute in question is vague in all of its applications in order to successfully mount a facial challenge." United States v. Cook, 914 F.3d 545, 553 (7th Cir.), vacated on other grounds, 140 S. Ct. 41 (2019); see Guerrero v. Whitaker, 908 F.3d 541, 544 (9th Cir. 2018) ("[W]e [previously] observed that the 'no set of circumstances' standard was subject to some doubt but that we would continue to apply that standard until a majority of the Supreme Court directs otherwise. That day has come. Johnson and Dimaya expressly rejected the notion that a statutory provision survives a facial vagueness challenge merely because some conduct clearly falls within the statute's scope.") (cleaned up).

By contrast, the Second Circuit has limited the Johnson line of cases to their "exceptional" facts. See United States v. Requena, 980 F.3d 30, 41-42 (2d Cir. 2020), cert. denied sub nom., Raymond v. United States, 141 S. Ct. 2761 (2021). In Requena, that court held that "vague in all applications" continues to be the default rule in facial vagueness cases with three limited exceptions: the First Amendment context, criminal laws lacking a scienter requirement, and Johnson-type cases where the statute calls for a categorical approach. See id. at 39-40. In doing so, the Second Circuit held "that Johnson's license to strike down a 'criminal statute . . . as facially vague even where it has some valid applications' extends only to the 'exceptional

26

circumstances' present in that case and its progeny." Id. at 42 (quoting Copeland, 893 F.3d at 111 n.2). Thus, the Second Circuit has narrowly read Johnson's rejection of the "vague in all applications" standard as limited to the residual clause of the ACCA and its functional equivalents.

I agree with the Seventh and Ninth Circuits that the Johnson trio heralded a more meaningful shift in the void for vagueness doctrine than the Second Circuit recognized. In those cases, the Supreme Court rejected the language in Flipside and Salerno that the mere existence of some clear application can save a statute from unconstitutional vagueness. The Court did not tie the demise of that standard to the facts of those cases. Instead, it unequivocally rejected the notion that its holdings support the view that clarity in some instances is enough to survive a vagueness challenge. Moreover, the cases cited in Johnson to support its abandonment of the "vague in all applications" standard did not concern categorical applications of law such that the Court's discussion in Johnson could be construed as limited to that context. See Coates, 402 U.S. at 611; L. Cohen Grocery Co., 255 U.S. at 89. Therefore, the Supreme Court's rejection of the "vague in all applications" standard was in no way tethered to the facts in Johnson. And if any doubt remained after Johnson, it was dispelled in Dimaya, when the Court plainly stated that Johnson had rejected the "vague in all applications" standard as inconsistent with its holdings. See Dimaya, 138 S. Ct. at 1214

n.3. Because the Supreme Court's rationale in the <u>Johnson</u> line of cases was carefully considered and not expressly limited to the facts of those cases, it is binding on lower courts. <u>Cf.</u> <u>United Nurses & Allied Pros. v. Nat'l Lab. Rels. Bd.</u>, 975 F.3d 34, 40 (1st Cir. 2020) (explaining that lower courts are "bound by the Supreme Court's considered dicta") (cleaned up).

In support of their view that the "vague in all applications" standard remains viable post-<u>Johnson</u>, defendants cite to the First Circuit's recent decision in <u>Frese v. Formella</u>, 53 F.4th 1 (1st Cir. 2022). That case challenged New Hampshire's criminal defamation statute on First Amendment and vagueness grounds. <u>Id.</u> at 5. In setting forth background principles applicable to the vagueness claim, the court in <u>Frese</u> cited <u>Salerno</u> for the proposition that a successful facial vagueness challenge requires a showing "that no set of circumstances exists under which the [statute] would be valid." <u>Id.</u> at 7 (citing <u>Dutil v. Murphy</u>, 550 F.3d 154, 160 (1st Cir. 2008) (quoting <u>Salerno,</u> 481 U.S. at 745)). Because the case arose in the First Amendment context, however, the court in <u>Frese</u> did not apply that standard. Rather, it determined that the statute in question passed muster because it provided adequate notice and meaningful enforcement guidelines. <u>See</u> <u>id.</u> at 7-11. In other words, the fact that some conduct clearly fell within the provision's scope was not the reason the statute survived constitutional scrutiny. Considering that the court's brief mention of the <u>Salerno</u> standard played no

part in the disposition of the case, which gave the court no occasion to consider the impact of the <u>Johnson</u> line of cases on that standard, it does not bind lower courts. See <u>Rossiter v. Potter</u>, 357 F.3d 26, 31 (1st Cir. 2004).

Although not raised by the parties, I am also mindful that, post-<u>Johnson</u>, the Supreme Court has continued to cite to <u>Salerno</u>'s "no set of circumstances" test when addressing other types of facial constitutional challenges. See <u>Ams. for Prosp. Found. v. Bonta</u>, 141 S. Ct. 2373, 2387 (2021); <u>City of L.A. v. Patel</u>, 576 U.S. 409, 417 (2015). But, like <u>Salerno</u>, those cases did not involve facial vagueness claims. <u>Salerno</u> addressed a facial attack on the federal Bail Reform Act based on substantive due process and Eighth Amendment grounds. See 481 U.S. at 746-55. In <u>Bonta</u>, the facial challenge to a state regulation was based on the First Amendment, and the Court noted that <u>Salerno</u> did not apply in that context. See 141 S. Ct. at 2387. Lastly, <u>Patel</u> involved a facial challenge to a state ordinance on Fourth Amendment grounds. See 576 U.S. at 419-28.

The continued viability of <u>Salerno</u> in these other contexts can fairly be reconciled with my interpretation of <u>Johnson</u>. As Justice Thomas suggested in his dissent in <u>Johnson</u>, the Supreme Court has effectively recognized that "void-for-vagueness claims are different from all other facial challenges not based on the First Amendment." 576 U.S. at 636 n.2 (Thomas, J., dissenting). Writing for the majority in <u>Davis</u>, Justice Gorsuch explained why vagueness

challenges merit special treatment. The core concern of the vagueness doctrine is lack of fair notice, that is, subjecting people to laws without giving them adequate warning about what those laws require. See Davis, 139 S. Ct. at 2323. In addition, vague laws constitute an impermissible delegation of legislative power because "[t]hey hand off the legislature's responsibility for defining criminal behavior to unelected prosecutors and judges." See id. Because of these constitutional infirmities, "a vague law is no law at all." Id. This reasoning is consistent with Johnson and leads me to conclude that plaintiffs should have a wider path to raise facial vagueness challenges than the stringent "vague in all applications" standard otherwise allows.

But even if I am wrong that Johnson requires more than such a minimal showing to defeat a vagueness claim, the "vague in all applications" standard would not apply here for several reasons. First, plaintiffs have alleged that the amendments abridge their First Amendment freedoms, which is a recognized exception to that standard. See, e.g., United States v. Williams, 553 U.S. 285, 304 (2008); Frese, 53 F.4th at 6-7; see also Grayned v. City of Rockford, 408 U.S. 104, 109 (1972) (recognizing that "where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms") (cleaned up).

Second, unlike the statute in Flipside, the education and antidiscrimination amendments neither "simply regulate business behavior"

nor "contain[] a scienter requirement." See 455 U.S. at 499. Rather, as defendants conceded at oral argument, the amendments lack a scienter requirement and their violation can lead to serious consequences, including the loss of livelihood. These features make the amendments more analogous to the anti-loitering statute in Morales, where a plurality of the Supreme Court sustained a facial vagueness challenge because the statute had no scienter requirement, burdened a constitutional right, and vagueness "permeate[d] the text" of the law. See 527 U.S. at 55.

To summarize, the void-for-vagueness doctrine does not require a showing that a statute is vague in all of its applications, especially where, as here, the law subjects a violator to serious consequences, lacks a scienter requirement, and implicates First Amendment rights. Therefore, that some conduct clearly falls within the amendments' scope is insufficient to defeat plaintiffs' vagueness claim.

### 3.  Application of the Vagueness Standard to Plaintiffs' Claim

"The vagueness doctrine, a derivative of due process, protects against the ills of laws whose prohibitions are not clearly defined." Frese, 53 F.4th at 6 (cleaned up). The Supreme Court has stated that "[t]he degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment." Flipside, 455 U.S. at 498. Notably, greater clarity is required

when a statute either restricts speech, imposes a particularly severe penalty, or lacks a scienter requirement.

The prospect of "the chilling of constitutionally protected speech" has led courts to "apply a heightened standard" when reviewing statutes that impose restrictions on speech. Frese, 53 F.4th at 6 (cleaned up); see also Grayned, 408 U.S. at 109. As a result, speech restrictions "require a greater degree of specificity." Frese, 53 F.4th at 6 (cleaned up). The amendments at issue in this case are explicit viewpoint-based speech limitations that, as discussed above, arguably affect both the curricular and extracurricular speech of public primary and secondary school teachers. Because their extracurricular speech is plausibly entitled to First Amendment protection, a rigorous vagueness review is required.

The need for clarity is likewise paramount when a statutory provision authorizes severe consequences for a violator. For example, it is well-settled that criminal laws are subjected to the most exacting vagueness review. See Dimaya, 138 S. Ct. at 1212. Although the Supreme Court has at times endorsed "greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe," Flipside, 455 U.S. at 498-99, the Court in Dimaya rejected the notion that a less stringent standard should apply in civil cases involving particularly severe consequences. See Dimaya, 138 S. Ct. at 1212-13. In light

of the "grave nature of deportation" at issue in that case, the Court reasoned that the same standard of certainty required of criminal laws applies in the civil removal context. Id. at 1213 (cleaned up). In his concurrence, Justice Gorsuch also called into question the basis for imposing a lesser standard in the civil context in part because many civil laws carry greater penalties than some criminal laws, such as those "that strip persons of their professional licenses and livelihoods." Id. at 1229 (Gorsuch, J., concurring). Considering that teachers who are found to have advocated a banned concept can be stripped of their teaching credentials and thus deprived of their livelihoods, this factor points in favor of requiring the most exacting vagueness review.

Lastly, laws that fail to incorporate a scienter requirement may also receive greater scrutiny. See, e.g., United States v. Nieves-Castano, 480 F.3d 597, 603 (1st Cir. 2007) (explaining that the statute's "scienter requirement ameliorates any vagueness concerns") (citing Hill v. Colorado, 530 U.S. 703, 732 (2000)). Indeed, the Supreme Court "has long recognized that the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of mens rea." Colautti v. Franklin, 439 U.S. 379, 395 (1979), abrogated on other grounds, Dobbs v. Jackson Women's Health Org., 142 S. Ct. 2228 (2022) (citing United States v. U.S. Gypsum Co., 438 U.S. 422, 434-46 (1978); Papachristou v. City of Jacksonville, 405 U.S. 156, 163 (1972); Boyce Motor Lines v. United States,

342 U.S. 337, 342 (1952)). As defendants have acknowledged, the education and antidiscrimination amendments lack a scienter requirement. In other words, teachers are not "protected from being caught in [the statute's] net by the necessity of having a specific intent to commit" a violation. See Papachristou, 405 U.S. at 163. As a result, inadvertent statements that are later deemed to advocate a banned concept can violate the amendments. This concern, combined with the amendments' viewpoint-based speech restrictions and the severe consequences that can follow if a teacher is found to have taught or advocated a banned concept, lead me to conclude that the exacting vagueness standard applied in criminal cases should apply here as well.

That standard requires that the law must give "a person of ordinary intelligence fair notice of what is prohibited" and must not be "so standardless that it authorizes or encourages seriously discriminatory enforcement." Williams, 553 U.S. at 304. A law is unconstitutionally vague if it fails either requirement. See id. Even under this demanding standard, however, vagueness doctrine does not require "perfect clarity and precise guidance." Id. (cleaned up). Rather, a statute is unconstitutionally vague for failing to provide adequate notice "only if it prohibits . . . an act in terms so uncertain that persons of average intelligence would have no choice but to guess at its meaning and modes of application." Frese, 53 F.4th at 10 (cleaned up). Similarly, a "statute authorizes an impermissible degree of enforcement

discretion — and is therefore void for vagueness — where it fails to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent arbitrary and discriminatory enforcement." Id. at 7 (cleaned up).

Defendants argue that they should prevail even under this standard because the education and antidiscrimination amendments provide adequate notice and sufficient enforcement guidelines. I disagree. Although the amendments identify certain core concepts that may not be taught, they do not give either teachers or enforcers the guidance they need to find the line between what the amendments prohibit and what they permit. This is so especially because the amendments allow teachers to be sanctioned for speech that advocates a banned concept only by implication.

In addition to express advocacy, the AG has opined that the amendments can be violated by conduct that merely implies the truthfulness of a banned concept. See Doc. No. 36-10 at 7. For example, the opinion states that a public employer could violate the amendments if it creates a web-based anti-racist resource and states that it was designed to "serve as a resource for our white employees." Id. According to the AG, this conduct could violate the amendments because it "may imply that white people, specifically and for no other reason, are in need of anti-racist resources." Id. (emphasis added). In other words, a teacher could unknowingly violate the amendments by making

35

a statement that does not expressly endorse a banned concept but that could be understood to imply it. Coupled with the enforcing agencies' view that the amendments are not limited to curricular speech but also governs teachers' conduct during extracurricular activities, this statutory construction leaves open countless applications where a teacher does not directly assert a banned concept but, in the view of an enforcer, implies its correctness.

Consider, for example, the third banned concept, which bars an educator from teaching or advocating "[t]hat an individual should be discriminated against or receive adverse treatment solely or partly because of his or her . . . race." RSA § 193:40, I(c). In the coming months, the Supreme Court will decide whether colleges and universities can continue to use race-conscious admission policies. The plaintiffs in those cases assert that such policies improperly favor Black applicants at the expense of white and Asian-American applicants, whereas the defendants argue that the policies are necessary to ensure diversity in higher education. If a high school teacher attempts to explain the diversity argument to her class during a discussion of the case, will she face sanctions for teaching a banned concept? We simply don't know.

Likewise, consider the fourth banned concept, which prohibits, among other things, teaching or advocating that white people cannot treat Black people "without regard to" their race. RSA § 193:40, I(d). Given that advocacy

36

can take many forms, there is a real risk that a teacher could face sanctions for discussing the concept of implicit bias with a student.

Although I do not understand implicit bias to expressly embrace the notion that a person in one group "cannot" treat a person in another group equally, a discussion may certainly imply as much in the minds of others who have a different understanding of the concept. For example, a teacher may state that white persons can have difficulty treating non-white persons without regard to their race. An enforcer may later decide that the discussion implied support for the proposition that a white person "cannot" treat a Black person without regard to race, in violation of the fourth banned concept.

These examples illustrate the principal problem with the amendments: they do not give teachers fair notice of what they can and cannot teach. Teachers can be sanctioned for speech that they do not intend to advocate a banned concept. They can be sanctioned even for speech that is later deemed to violate the amendments only by implication. Because teachers can lose their jobs and teaching credentials if they cross the line into prohibited speech, they should not be left to guess about where that line will be drawn.

These problems are compounded because, as plaintiffs point out, teachers in New Hampshire have an affirmative duty to teach topics that potentially implicate several of the banned concepts. For example, state law explicitly mandates teaching about the evolution of "intolerance, bigotry,

37

antisemitism, and national, ethnic, racial, or religious hatred and discrimination," as well as "how to prevent the evolution of such practices." RSA § 189:11, I(j). Although the education and antidiscrimination amendments create an exception for teaching the "historical existence of ideas and subjects identified" as banned concepts, see RSA § 193:40, II, this exception does not fully encompass the broader scope of learning that RSA § 189:11 mandates. For example, beyond teaching the historical existence of Jim Crow laws, teachers are supposed to discuss their evolution and how such practices can be prevented. In this context, it is not difficult to imagine that a discussion of remedies for past discrimination such as reparations would take place, which could subject a teacher to sanctions for teaching a banned concept. As a result, teachers could, in plaintiffs' words, be left with "an impermissible Hobson's choice": shirking their responsibilities under RSA § 189:11, or teaching what RSA § 189:11 requires and potentially violating the prohibition against teaching a banned concept in RSA § 193:40. See Doc. No. 46 at 9. This is even more reason to require clarity in the amendments. Teachers should not be put in a position where they must instruct students on certain concepts but face the threat of job loss if their instruction unintentionally and only by implication crosses the line drawn in RSA § 193:40.

Defendants argue that a sufficiently narrow construction of the amendments would allay these fair notice concerns. In fact, during oral argument, defendants — one of whom is the AG — invited me to reject the AG's opinion that implied advocacy of a banned concept can violate the amendments. This position is untenable for several reasons.

First, a federal court is "without power to adopt a narrowing construction of a state statute unless such a construction is reasonable and readily apparent." Stenberg v. Carhart, 530 U.S. 914, 944 (2000) (quoting Boos v. Barry, 485 U.S. 312, 330 (1988)). This principle is an extension of the rule that a court cannot simply rewrite a statute to make it sufficiently clear. See id. Although defendants now seem to endorse the view that only express advocacy of a banned concept is prohibited, they have not persuaded me at this early stage in the case that the amendments are readily susceptible to such a construction.

Second, defendants' interpretation is at odds with the position that the AG has taken and that, to my knowledge, remains his official opinion on the subject. Although the AG's opinion does not have the force and effect of law, see id. at 940, it is a plausible reading of the statutory text. RSA § 193:40, I provides that "[n]o pupil . . . shall be taught, instructed, inculcated or compelled to express belief in, or support for," the banned concepts. It is arguable that these forms of expression encompass not only express

39

statements but also conduct that, by implication, constitutes teaching, instruction, or inculcation, such that the amendments sweep as broadly as plaintiffs fear.

So construed, the amendments also lack sufficient standards to guide agency discretion when determining what conduct constitutes a violation. How is an agency to determine whether a teacher has implied the truth of a banned concept? The amendments are silent on the matter, leaving it to the subjective ad hoc judgment of an enforcer. Cf. U.S. Lab. Party v. Pomerleau, 557 F.2d 410, 412 (4th Cir. 1977) ("Because a violation depends on the subjective opinion of the investigator, the speaker has no protection against arbitrary enforcement of the ordinance."); James v. Wilkinson, No. 89-0139-P(CS), 1991 WL 626750, at *5 (W.D. Ky. May 20, 1991) (explaining that when the focus is on what was implied rather than expressed, "the implication is, as with beauty, in the eye of the beholder"). As such, the amendments arguably create a significant risk of arbitrary enforcement. See Grayned, 408 U.S. at 108 ("[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.").

Defendants argue that the amendments' enforcement structure protects against arbitrary or discriminatory enforcement. But nothing precludes a person from reporting a teacher to the department of education for violating the educator code of conduct. Under that department's

regulations, "[a] case shall be opened when a complaint of possible

misconduct against a credential holder has come to the attention of the

department either through direct reporting or other means." N.H. Code

Admin. R. Ed 511.01(a). Further, an investigation must be opened if there is

a "possible violation" of the educator code of conduct. Id. Ed 511.01(b). Thus,

the department of education must investigate possible violations of RSA

§ 193:40, which provides an avenue for directly pursuing teachers.

Defendants maintain, however, that the enforcing agencies have

informally settled on a process whereby such complaints against teachers are

not considered until there has been a finding of a violation against the school.

This process, defendants assert, is designed to "weed out the types of

harassing or spurious complaints [that plaintiffs] appear to be concerned

with." Doc. No. 36-1 at 35. But that process is neither a statutory nor a

regulatory requirement. It is only at the sufferance of the education

commissioner that complaints against teachers are purportedly held in

abeyance.[6] As such, the procedural safeguards that defendants tout are

arguably insufficient to protect plaintiffs against arbitrary enforcement.

---

[6]     In any event, plaintiffs have alleged that the department of education
is independently investigating such complaints prior to any finding of a
statutory violation against a school. They appended to their pleading
material suggesting that the department has engaged in investigative
activities concerning complaints that are at least plausibly based on alleged
violations of RSA § 193:40. See Doc. No. 45-2 at 17–21.

Instead, as plaintiffs suggest, "the fragmented and multiple layers of enforcement only serve to create many more opportunities for arbitrary and discriminatory enforcement." Doc. No. 45 at 36.[7]

In sum, the amendments' vague terminology, their lack of a scienter requirement, and the possibility that teachers could be found liable for teaching a banned concept by implication, leave both teachers and enforcers to guess at what speech the amendments prohibit. Given the severe consequences that teachers face if they are found to have taught or advocated a banned concept, plaintiffs have pleaded a plausible claim that the amendments are unconstitutionally vague.

---

[7]    Although the issue has not yet been briefed, it is difficult to reconcile the AG's position that teachers will not face individual liability for damages with a fair reading of chapter 354-A as amended. RSA § 354-A:31 now prohibits a public employer from teaching or advocating a banned concept to a student. RSA § 354-A:2, XV(a) provides that any violation of chapter 354-A is an "unlawful discriminatory practice." RSA § 354-A:2, XV(d) states that aiding and abetting an unlawful discriminatory practice is itself an unlawful discriminatory practice. And the New Hampshire Supreme Court ruled in U.S. Equal Opportunity Commission v. Fred Fuller Oil Company, 168 N.H. 606, 611 (N.H. 2016) that individual employees can be sued for aiding and abetting an unlawful discriminatory practice by an employer. Thus, in its current form, chapter 354-A appears to allow damage actions to be brought against individual teachers for aiding and abetting a violation of RSA § 354-A:31 by their employers.

## IV. <u>CONCLUSION</u>

Defendants' motion to dismiss the AFT plaintiffs' First Amendment claim (Doc. No. 36) is granted in part and denied in part. Defendants' motions to dismiss plaintiffs' vagueness claims (Doc. Nos. 36 and 37) are denied.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

January 12, 2023

cc:     Counsel of record

43