# UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

———————————

No. 24-1690

———————————

ANDRES MEJIA; CHRISTINA KIM PHILIBOTTE; NATIONAL EDU-
CATION ASSOCIATION - NEW HAMPSHIRE; LOCAL 8027, AFT-
NEW HAMPSHIRE, AFL-CIO; JOCELYN MERRILL; KIMBERLY
GREEN ELLIOT; RYAN RICHMAN; MEGHAN EVELYN DURDEN;
JOHN DUBE,

Plaintiffs - Appellees,

v.

FRANK EDELBLUT, in their official capacity as Commissioner, New
Hampshire Department of Education; JOHN M. FORMELLA, in their
official capacity as New Hampshire Attorney General; AHNI MALA-
CHI, in their official capacity as Executive Director, New Hampshire
Commission for Human Rights; CHRISTIAN KIM, in their official ca-
pacity as Chairperson, New Hampshire Commission for Human Rights;
KEN MERRIFIELD, in their official capacity as Commissioner, New
Hampshire Department of Labor,

Defendants – Appellants.

———————————————————————

On Appeal from the United States District Court for the
District of New Hampshire

———————————————————————

## REPLY BRIEF FOR DEFENDANTS – APPELLANTS

<table>
<tr><td>JOHN M. FORMELLA</td><td></td><td>ANTHONY J. GALDIERI</td></tr>
<tr><td>NEW HAMPSHIRE</td><td>and</td><td>NEW HAMPSHIRE</td></tr>
<tr><td>ATTORNEY GENERAL</td><td></td><td>SOLICITOR GENERAL</td></tr>
</table>

MARY A. TRIICK, No. 1213543
Senior Assistant Attorney General
Office of the Attorney General
1 Granite Place, South
Concord, N.H. 03301
(603) 271-0447

and

SAMUEL R.V. GARLAND, No. 1189913
Senior Assistant Attorney General
Office of the Attorney General
1 Granite Place, South
Concord, N.H. 03301
(603) 271-3650

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................. 4

ARGUMENT ................................................................................ 6

I.    THE STATUTORY PROHIBITIONS AT ISSUE DO NOT
IMPLICATE CONSTITUTIONALLY PROTECTED SPEECH. .................6

II.    SIMILAR CASES IN OTHER JURISDICTIONS. ............................................8

III.   EXTENDING A VAGUENESS CHALLENGE BEYOND THE
STATUTORY TEXT ................................................................................15

       A.    The Parties Agree on the Legal Standry Text. ...................................15

       B.    The Limits of the Evidence Relied Upon by Plaintiffs. ....................16

IV.   ANY UNCONSTITUTIONAL VAGUENESS MUST BE
REMEDIED WITHOUT WHOLESALE INVALIDATION OF
ALL STATUTORY PROVISIONS. .....................................................19

V.    THE DISCUSSIONS WITHIN THE AMICI BRIEFS ARE
IRRELEVANT TO THE RESOLUTION OF THIS APPEAL. ...................23

CERTIFICATE OF COMPLIANCE .................................................. 27

CERTIFICATE OF SERVICE .......................................................... 28

# TABLE OF AUTHORITIES

**Cases**

*Ambach v. Norwick*, 441 U.S. 68 (1979) ............................................................. 7

*Ashton v. Kentucky*, 384 U.S. 195 (1966) ........................................................ 12

*Black Emergency Response Team v. Drummond*, 737 F. Supp.
3d 1136 (N.D. Okla. 2024) .................................................................. 13, 14, 15

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) ................................................. 6, 7, 8

*Haynes v. Mayor & Council of Oradell*, 425 U.S. 610 (1976) ........................... 6

*Honeyfund.com, Inc. v. DeSantis*, 622 F. Supp. 3d 1159
(N.D. Fla. 2022) ................................................................................. 10, 11, 12

*Mayer v. Monroe Cnty. Cmty. Sch. Corp.*, 474 F3d ................................. 12, 25

*Modern Continental/Obayashi v. Occupational Safety and Health
Review Commissioner*, 196 F.3d 274 (1st Cir. 1999) ..................................... 15

*Pernell v. Fla. Bd. of Governors of the State Univ. Sys.*,
641 F. Supp. 3d 1218 (N.D. Fla. 2022) .......................................... 10, 11, 12, 15

*Santa Cruz Lesbian & Gay Cmty. Ctr. v. Trump*, 508 F. Supp.
3d 521 (N.D. Cal. 2020) ......................................................................... 9, 10, 13

*U.S. EEOC v. Fred Fuller Oil Co.*, 168 N.H. 606 (2016) ............................... 22

**Statutes**

RSA 193:38 ..................................................................................................... 20

RSA 193:39 ..................................................................................................... 20

RSA 193:40 ................................................................................................ passim

RSA 354-A ................................................................................................. 7, 19

RSA 354-A:1 ................................................................................. 21

RSA 354-A:2, XV(d)........................................................................ 22

RSA 354-A:31-:32 ............................................................... 6, 7, 21, 22

## Rules

N.H. Admin. R. Ed. 510.01 – 510.03 ............................................... 20

## ARGUMENT

## I.   THE STATUTORY PROHIBITIONS AT ISSUE DO NOT IMPLI-CATE CONSTITUTIONALLY PROTECTED SPEECH.

If a statute interferes with speech protected by the First Amend-ment, the constitution will tolerate less vagueness. *Haynes v. Mayor & Council of Oradell*, 425 U.S. 610, 620 (1976). As such, central to the resolution of this appeal is the question of whether RSA 193:40 and RSA 354-A:31-:32—the statutory provisions declared unconstitutional by the district court—implicate speech protected by the First Amend-ment.

To be sure, the statutory provisions implicate speech. But not all speech is protected. When K-12 public school teachers speak pursuant to their official duties, they are engaged in governmental speech and such speech does not enjoy First Amendment protections. *See Garcetti v. Ceballos*, 547 U.S. 410 (2006). Only when the educator speaks as a citizen on a matter of public concern is the First Amendment implicated and heightened vagueness review applied. *Id.*; *Haynes*, 425 U.S. at 620.

The statutory language of RSA 193:40[1] ensures that students in public schools will not be "taught, instructed, inculcated or compelled to express belief in, or support for, any" of four enumerated concepts.  It is hard to imagine anything more squarely within the official duties of a teacher than teaching/instructing his or her students.  While verbs like inculcate and compel are less commonly associated with the work of teachers, they fall no less squarely within a teacher's official duties.  Our society has long recognized that a teacher's function is "to mold young minds[,]" and in doing so he or she hold enormous power as an "inoculcating [sic] force as to national ideals[,]" and a "profound influence in the impartation of our society's values." *Ambach v. Norwick*, 441 U.S. 68, 88 (1979) (J. Blackmun, dissenting).

Plaintiffs argue that because the statutory prohibitions at issue in this case have a reach which extends beyond classroom instruction, they automatically "reach educators' private speech[.]" Plaintiffs' Brief, P.70.

---

[1] While the district court also declared RSA 354-A:31-:32 unconstitutional, the court's analysis engaged with RSA 354-A only to the extent it overlaps with RSA 193:40 and applies to public school teachers.  Plaintiffs did not raise, and the district court did not articulate, any First Amendment concerns with relation to RSA 354-A's application to other public employers.  However, to any extent such a claim was raised, the same reasoning would apply.  RSA 354-A:31-:32 applies to public employers and programs put on by those employers.  Actions taken by public employees which are *not* within their duties (and thus potentially protected by the First Amendment under *Garcetti*) would not be actions taken by a public employer and would thereby not be covered by the law.

However, this conclusion does not follow from its premise. As outlined in *Garcetti*, the line between constitutionally protected speech and governmental speech does not turn on whether the activity is labeled curricular or extra-curricular but rather whether the employee was speaking as an employee or as a citizen. *See Garcetti*, 547 U.S. at 420. It is the position of the State of New Hampshire that the statutory prohibitions in RSA 193:40 "apply to all activities carried out *by public schools in their role as public schools*, including extra-curricular activities that are part of *the public school's work*." APP524 (emphasis added). If a teacher is teaching, instructing, inculcating, or compelling a student to express a belief in something during an activity which is being carried out by the public school in its role as a public school—curricular or extracurricular—then the teacher is acting squarely within his or her official duties as a public-school teacher and the teacher's speech is governmental speech, not speech protected by the First Amendment.

## II.    SIMILAR CASES IN OTHER JURISDICTIONS.

Plaintiffs cite four district court cases in support of a proposition that "every court to review similar statutory prohibitions has raised

constitutional concerns." Plaintiffs' Brief P.26-27. While this statement is not incorrect, a close examination of the four cases reveals three which are clearly distinguishable as they presented profound First Amendment problems and one which, while considering legislation similar to New Hampshire's RSA 193:40, provides as much support for the defendants' positions in this case as it does the plaintiffs' position.

In the first case, *Santa Cruz Lesbian & Gay Cmty. Ctr. v. Trump*, 508 F. Supp. 3d 521 (N.D. Cal. 2020), the district court considered President Trump's divisive concepts executive order at a preliminary injunction stage, finding the plaintiffs had shown a sufficient likelihood of success on the merits of their claim that the executive order was unconstitutional under the First and the Fourteenth Amendments to justify an injunction. *Id.*

The executive order at issue in *Santa Cruz* had broad applicability beyond governmental employees to include any organization receiving federal grants or working as a governmental contractor. *Id.* at 529-30. As to all these organizations, it prohibited promoting or training in "divisive concepts" and defined "divisive concepts" in a way which over-

lapped with, but went beyond, New Hampshire's statutory provisions. *Id.* at 529-30.

The plaintiff's first claim in *Santa Cruz* was that the executive order violated their First Amendment rights "because it impermissibly chills" their exercise of "constitutionally protected speech, based on the content and viewpoint of their speech." *Id.* at 540.  They also argued the order unconstitutionally penalized their engagement in protected speech activities "by leveraging the federal funding that is necessary to their missions and work." *Id.*  The District Court found Plaintiffs to have established a likelihood of success on the merits of these First Amendment claims and only thereafter turned to the vagueness question. *Id.* at 540-43.  As such, a heightened standard of vagueness review clearly applied.

The next two cases relate to Florida's Individual Freedom Act, which defined eight forbidden concepts and which, like the executive order above, overlap with but goes beyond New Hampshire's statutory provisions. *Honeyfund.com, Inc. v. DeSantis*, 622 F. Supp. 3d 1159, 1168-69 (N.D. Fla. 2022); *Pernell v. Fla. Bd. of Governors of the State Univ. Sys.*, 641 F. Supp. 3d 1218, 1231 (N.D. Fla. 2022).  In *Honeyfund*,

the district court considered a position of the statute which made it an unlawful employment practices to require employees to attend activities which promoted any of eight forbidden concepts. *Honeyfund.com, Inc.*, 622 F. Supp. 3d at 1168-69. In *Pernell*, the court considered a portion of the law which prohibited public colleges and universities from "training or instruction that espouses, promotes, advances, inculcated, or compels … student[s] or employee[s] to believe" one of the eight forbidden concepts. *Pernell*, 641 F. Supp. 3d at 1231-32.

While the courts in both of these cases considered and ruled upon vagueness challenges, they did so only after concluding Florida's Individual Freedom Act clearly violates the First Amendment. In *Honeyfund*, this First Amendment violation was "self-evident" given the broad applicability of the statute's viewpoint-based speech restrictions on all private employers in the state.[2] *Honeyfund.com, Inc.*, 622 F. Supp. 3d at 1179-80. In *Pernell*, the court found a First Amendment violation given the law's viewpoint-based restrictions on the protected speech of college

---

[2] *Honeyfund* was affirmed by the Eleventh Circuit Court of Appeals solely as a First Amendment case without any consideration of the vagueness issue. *Honeyfund.com Inc. v. Governor*, 94 F.4th 1272 (11th Cir. 2024).

professors.[3] *Pernell*, 641 F. Supp. 3d at 1277 ("The [Individual Freedom Act] is antithetical to academic freedom and has cast a leaden pall of orthodoxy over Florida's state universities.").

Once turning to the vagueness question, the district court in both *Honeyfund* and *Pernell* start from the proposition that "[w]hen First Amendment rights are involved," a court is required to "look even more closely" at vagueness issues "lest under the guise of regulating conduct that is reachable by the police power, freedom of speech or of the press suffers." *Honeyfund*, 622 F. Supp. 3d at 1180 (quoting *Ashton v. Kentucky*, 384 U.S. 195, 200 (1966)); *Pernell*, 641 F. Supp. 3d at 1279. Further, even under this heightened standard, both decisions conclude that "Defendants may be right that some of the prohibited concepts are not vague." *Honeyfund*, 622 F. Supp. 3d at 1181; *Pernell*, 641 F. Supp. 3d 1281.

The statutory scheme at issue here does not offend the First Amendment. As such, the constitution tolerates a greater degree of

---

[3] In reaching this conclusion, the district court noted the distinction between K-12 schools and universities. *Id.* at 1240. The court explained that its holding was limited to universities because, unlike at the university level, "the first amendment does not entitle primary and secondary teachers, when conducting the education of captive audiences, to … advocate viewpoints[] that depart from the curriculum adopted by the school system." *Id.* (quoting *Mayer v. Monroe Cnty. Cmty. Sch. Corp.*, 474 F3d 477, 480 (7th Cir. 2007)).

vagueness than it did in *Santa Cruz*, *Honeyfund*, and *Pernell*, and their rulings, issued at the preliminary injunction stage regarding the plaintiffs' likelihood of success on the merits, are of limited application to this case.

The final case cited by Plaintiffs is *Black Emergency Response Team v. Drummond*, 737 F. Supp. 3d 1136 (N.D. Okla. 2024). That decision considered a law with much greater similarity to RSA 193:40 than the previous three cases as it sought to prescribe what was taught in K-12 schools. *Id.* at 1143-44. Oklahoma prohibited employees of public-school districts from requiring or making a part of a course any one of eight enumerated concepts. *Id.* (These concepts again overlap with but are not identical to those within New Hampshire's laws. *Id.*) Unlike the cases above, the district court did not find a First Amendment violation before proceeding to the vagueness issue.[4] *Id.*

As to vagueness, the court first considered the verbs, finding the statute's prohibition on making the prohibited concepts a "part of a course" to be clear because "the plain and ordinary understood meaning

_____

[4] The court nevertheless applied a heightened vagueness standard of review, finding that the penalty of suspending or revoking a teacher's license was sufficiently serious to justify the higher standard of review. *Black Emergency Response Team*, 737 F. Supp. 3d at 1150. The defendants believe this conclusion was in error for the reasons outlined in the Defendants' opening brief.

… is to prohibit school personnel from directly endorsing, promoting, or inculcating any concept as a normative value." *Id.* at 1150.  As to the term "require," the court found unconstitutional vagueness, but only because it believed itself unable to rewrite the statute so as to define requiring a concept to be the same as teaching the concept to be true. *Id.* New Hampshire's law uses just the kind of verbs found to be sufficiently clear in the *Drummond* case; terms such as teach and inculcate.

Moving on to the prohibited concepts, the *Drummond* court found all but two "sufficiently clear to give ordinary people fair notice of the conduct prohibited thereby" and "not so standardless as to invite arbitrary enforcement." *Id.* at 1150-52.  These included concepts similar to those found in New Hampshire's RSA 193:40, I(a) and (b). *Id.*  Furthermore, while the two concepts found vague by *Drummond* do correspond with the provisions of 193:40, I(c) and (d), the vagueness finding was based solely on concern about the term treat/treatment, and the district court's analysis on the issue is thin. *Id.*  The court's main concern seems to be focused on the apparent breadth of the statutory application rather than with any articulated insufficiency in clarity resulting in an ordinary person being unable to understand what was being prohibited.

*Id.* Broad application may be a relevant consideration when applying other constitutional doctrine, but it does not articulate a cognizable vagueness problem. Quite to the contrary, neither the *Drummond* nor the *Pernell* courts seem to have any trouble understanding what is being prohibited. *Id.*; *Pernell*, 641 F. Supp. 3d at 1233-34 (explaining how the prohibited concepts would preclude a teacher from advocating for affirmative action).

## III.   EXTENDING A VAGUENESS CHALLENGE BEYOND THE STATUTORY TEXT

### A.   The Parties Agree on the Legal Standard for Extending a Vagueness Challenge Beyond the Statutory Text.

Section IV of the defendants' opening brief argues that the district court erred in extending its vagueness analysis beyond the statutory text. State's Brief P.48-54. This asserted error rests upon this Court's established precedent that when a statute's application is clear from a plain reading, it is unnecessary to look beyond that text to extrinsic evidence. *See, e.g.*, *Modern Continental/Obayashi v. Occupational Safety and Health Review Commissioner*, 196 F.3d 274, 281 (1st Cir. 1999).

In responding to this argument, Plaintiffs write:

> To be sure, the Law is facially vague even without reliance on the record created in this case.

> But Defendants cite no case from this Court or any other barring the use of factual evidence to highlight a law's textual ambiguity or holding that a court must ignore actual evidence of arbitrary and discriminatory enforcement. Defendants' cases merely establish that, unlike here, such evidence cannot render a law vague when the law is otherwise sufficiently clear from the text.

Plaintiffs' Brief, P.34.

Defendants agrees as to the standard set by the case law; extrinsic evidence "cannot render a law vague when the law is otherwise sufficiently clear from the text." *Id.* Unquestionably, the parties fundamentally disagree as to whether the laws at issue in this case are facially vague, *i.e.* whether the laws' meaning is "sufficiently clear from the text[.]" But this disagreement does not extend to the applicable legal standard for consideration of record evidence beyond the text.

**B.    The Limits of the Evidence Relied Upon by Plaintiffs.**

Even if extrinsic evidence were to be considered, the evidence laid out by the plaintiffs does not establish any discriminatory enforcement and is of limited relevance for several reasons.

First, much of the evidence is comprises of actions taken by outside parties which are not relevant in any way to State enforcement.

16

For example, the fact that some members of the public have raised a broad variety of substantive complaints in which they reference the statutory sections at issue does not inform an analysis of what these statutory sections mean as a legal matter. Similarly, subjective concerns of individual teachers or the actions taken by school districts to change the books covered in the curricula do not evidence any arbitrary or discriminatory enforcement.

As to DOE's actions, Plaintiffs describe what they characterize as a series of "enforcement actions" taken by DOE. *See* Plaintiffs' Brief, P.18-20. However, the facts described do not include anything that could reasonably be characterized as an administrative enforcement action of the kind that could result in the revocation of a teacher's license. Plaintiffs describe the content of several complaints received by DOE. *Id.* They then outline various responses by DOE and Commissioner Edelblut. *Id.* These included the Commissioner, his legal counsel, and a department employee following up with parents and passing the complaints along to school administrators. *Id.* Plaintiffs clearly take issue with the propriety of these actions, but they are not relevant to a constitutional vagueness challenge.

Plaintiffs point to one teacher who alleges she was informed by her school's principle that there was a DOE investigation occurring, *id.*, but there was no indication that this subjective characterization of DOE's conduct was accurate.  To the contrary, the record evidence is clear that Commissioner Edelblut and his staff consistently articulated that they would not open an investigation or take any administrative action against any teacher's certification without the HRC first completing an investigation and taking its own action. *See, e.g.*, Appendix P.570-71 (DOE website directing individuals to file complaints with the HRC); Confidential Appendix P.102-04, 190-91; 371.  To take action on an educator's license based upon a code of conduct violation requires a formal process which was never initiated with relation to a violation of the statutory provisions at issue in this case. *See* Confidential Appendix P.166, 169, 180-81, 183-84 (outlining process for investigating code of conduct violations).   As such, any claim that there is evidence of arbitrary enforcement action being taken by DOE is without a basis in the record evidence.

As to the HRC, while a number of complaints were received, only one was ever docketed for investigation. *See* Confidential Appendix

P.358-61, 379, 404-08.  This complaint alleged dual claims, raising both a violation of RSA 354-A and a retaliation claim.  *See* Confidential Appendix P.404-08.  Due to high case loads at the HRC, it has not proceeded to the investigation stage, *id.*, and so there is not a finding of probable cause much less any evidence of discriminatory enforcement.

## IV.   ANY UNCONSTITUTIONAL VAGUENESS MUST BE REMEDIED WITHOUT WHOLESALE INVALIDATION OF ALL STATUTORY PROVISIONS.

Section V of the Defendants' opening brief discusses New Hampshire's presumption in favor of severability.  The State argued that, should this court find one or more of the statutory sections unconstitutional, the unconstitutionality should be remedied through either severance of any unconstitutional sections and/or an appropriately limited reading of the statutory text.

For example, if RSA 193:40 was found to be unconstitutionally vague under a heightened standard of review this Court believed to be necessitated by the consequences imposed on a teacher's license, the proper remedy would be severance of RSA 193:40, IV so as to remove those consequences.

Such severance would be effective and appropriate. RSA 193:40 sits within a section of New Hampshire's education-related laws which addresses issues of "Discrimination in Public Schools[.]" RSA 193:38-:40. With the exception of RSA 193:40, IV, the entire section focuses on the duties and liabilities of schools and school districts. *Id.* School districts must develop and implement policies to "prevent, assess the presence of, intervene in, and respond to incidents of discrimination" within their schools and are liable if they fail to do so. *Id.* Given this context, RSA 193:40, IV's provision regarding the educator code of conduct is not so integral and essential to the general structure of the statutory provisions as to prevent severability. To the contrary, it is an addition at the end.

Plaintiffs respond to this severance argument in two ways. First, Plaintiffs claim that penalties under the educator code of conduct would remain in place under N.H. Admin. R. Ed. 510.01 – 510.03 even if RSA 193:40, IV were declared unconstitutional. Plaintiffs' Brief, P.65. However, such liability does not clearly flow from the referenced administrative rules. N.H. Admin. R. Ed. 510.01 through Ed. 510.03 cover broad principles related to a teachers' responsibilities to other professionals,

to students, and to school community.  Among other things, they define

"[u]nprofessional conduct" to include "[d]iscrimination against" a fellow

professional, a student, a parent, or a community member "as specified

in RSA 354-A:1."[5]  Of note, it does not say discrimination as prohibited

anywhere within RSA Chapter 354-A.  Furthermore, such an argument

is only relevant to the constitutionality/vagueness of RSA 354-A:31-:32

---

[5] RSA 354-A:1 is the title and purpose section of Chapter 354-A and provides:

> This chapter shall be known as the "Law Against Discrimination." It shall be deemed an exercise of the police power of the state for the protection of the public welfare, health and peace of the people of this state, and in fulfillment of the provisions of the constitution of this state concerning civil rights. The general court hereby finds and declares that practices of discrimination against any of its inhabitants because of age, sex, gender identity, race, creed, color, marital status, familial status, physical or mental disability or national origin are a matter of state concern, that such discrimination not only threatens the rights and proper privileges of its inhabitants but menaces the institutions and foundation of a free democratic state and threatens the peace, order, health, safety and general welfare of the state and its inhabitants. A state agency is hereby created with power to eliminate and prevent discrimination in employment, in places of public accommodation and in housing accommodations because of age, sex, gender identity, race, creed, color, marital status, familial status, physical or mental disability or national origin as herein provided; and the commission established hereunder is hereby given general jurisdiction and power for such purposes. In addition, the agencies and councils so created shall exercise their authority to assure that no person be discriminated against on account of sexual orientation.

as applied to teachers and, if found meritorious, it would not justify declaring RSA 193:40 unconstitutional.

Plaintiffs second response to Defendant's argument that RSA 193:40, IV could be severed in order to save the remainder of the statutory provision is to argue that the consequences for teachers remain high even if their licenses are not at risk as they are subject to individual liability for aiding and abetting the teaching of prohibited concepts under *U.S. EEOC v. Fred Fuller Oil Co.*, 168 N.H. 606 (2016). The problem with this argument, similar to above, is that if accepted it justifies only the invalidation of RSA 354-A:31-:32. RSA 193:40, III is clear that civil liability for violations of RSA 193:40, I rests with schools and school districts, not teachers. And RSA 354-A:2, XV(d)'s aider and abetter liability, as discussed in *Fred Fuller*, has no application to violations of RSA 193:40.

By way of a second example, should this Court find that RSA 193:40 is unconstitutionally vague because it implicates First Amendment interests and cannot meet the heightened vagueness standard, this could be easily remedied by reading RSA 193:40, consistently with the reasonable articulation offered by the State above, as to have no ap-

plication to the non-curricular speech of teachers. Given the statute's primary focus on schools and school districts discussed above, it is reasonable to conclude that it only applies to the speech of teachers when that teacher is speaking as a teacher and pursuant to his or her official duties, *i.e.*, those duties which the school district has the authority to control.[6]

## V.    THE DISCUSSIONS WITHIN THE AMICI BRIEFS ARE IRRELEVANT TO THE RESOLUTION OF THIS APPEAL.

Two amici briefs have been filed in this matter in support of the plaintiffs. However, these briefs do little more than expound on their authors' belief that the statutory scheme at issue here is bad public policy. They argue that the statute will result in less discussions of racism and sexism in New Hampshire classrooms and will adversely affect students, particularly those from historically marginalized communities. *See* Civil Rights Org. Amicus Brief.

---

[6] This reading is also applicable to RSA 354-A's application to teachers as RSA 354-A:37, I expressly provides that nothing within New Hampshire's civil rights act should "be construed to diminish or infringe upon any right protected under the First Amendment to the United States Constitution or Pt. I, Art. 22 of the constitution of the state of New Hampshire."

The amici attempt to make their arguments appear relevant by framing them with relation to the First Amendment, discussing concepts like academic freedom and the "chilling effect of these statues on classroom speech[.]" Pen America Amicus Brief, P.12-15. However, as discussed above, curricular speech is not constitutionally protected at the K-12 level. As the Seventh Circuit explained:

> [Public school systems] do[]not "regulate" teachers' speech as much as [they] *hire*[] that speech. Expression is a teacher's stock in trade, the commodity she sells to her employer in exchange for a salary.
> …
> [P]upils are a captive audience. Education is compulsory, and children must attend public schools unless their parents are willing to incur the cost of private education or the considerable time commitment of home schooling. Children who attend school because they must ought not be subject to teachers' idiosyncratic perspectives. Majority rule about what subjects and viewpoints will be expressed in the classroom has the potential to turn into indoctrination; elected school boards are tempted to support majority positions about religious or patriotic subjects especially. But if indoctrination is likely, the power should be reposed in someone the people can vote out of office, rather than tenured teachers. At least the board's views can be debated openly, and the people may choose to elect persons committed to neutrality on contentious issues.

*Mayer v. Monroe Cnty. Cmty. Sch. Corp.*, 474 F3d 477, 479-80 (7th Cir. 2007). In other words, "[t]he Constitution does not entitle teachers to present personal views to captive audiences against the instructions of elected officials." *Id.*

The fact that the statutes have an effect on the subjects covered in New Hampshire's K-12 public school curriculum and may influence a teacher's "choice of curriculum materials or instruction practices[,]" does not offend the First Amendment. Civil Rights Org. Amicus Brief, P.7. Nor does the fact that some people believe the effects of these changes will produce negative consequences. The statutes represent policy choices made by the politically elected representatives of the people of New Hampshire about what will be taught in New Hampshire's public schools. These choices were legitimately made and do not offend federal constitutional principles.

Respectfully submitted,

FRANK EDELBLUT, in their official capacity as Commissioner, New Hampshire Department of Education; JOHN M. FORMELLA, in their official capacity as New Hampshire Attorney General; AHNI MALACHI, in their official capacity as Executive Director, New Hampshire

Commission for Human Rights; CHRIS-
TIAN KIM, in their official capacity as
Chairperson, New Hampshire Commission
for Human Rights; KEN MERRIFIELD, in
their official capacity as Commissioner,
New Hampshire Department of Labor,

By their attorneys,

JOHN M. FORMELLA
N.H. ATTORNEY GENERAL

    and

ANTHONY J. GALDIERI
N.H. SOLICITOR GENERAL


March 10, 2025         */s/ Mary A. Triick*
                       Mary A. Triick, No. 1213543
                       Senior Assistant Attorney General
                       Office of the Attorney General
                       1 Granite Place, South
                       Concord, N.H.  03301
                       (603) 271-0447
                       mary.a.triick@doj.nh.gov

                       and

                       */s/ Samuel R.V. Garland*
                       Samuel R.V. Garland, No. 1189913
                       Senior Assistant Attorney General
                       Office of the Attorney General
                       1 Granite Place, South
                       Concord, N.H.  03301

## CERTIFICATE OF COMPLIANCE

This document complies with Fed. R. App. P. 32(a)(7)(B), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 4,110 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared with a proportionally spaced typeface using Microsoft Word in 14-point Century font.

March 10, 2025                                    */s/ Mary A. Triick*
                                                  Mary A. Triick, No. 1213543

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2025, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF filers and will be served via the CM/ECF System:

Peter J. Perroni, Esq.
Harry Sandick, Esq.
Gilles R. Bissonnette, Esq.
SangYeob Kim, Esq.
Jennifer Eber, Esq.
Morgan C. Nighan, Esq.
S. Amy Spencer, Esq.
Emerson Sykes, Esq.
Sarah Hinger, Esq.
Lauren Snow Chadwick, Esq.
Ronald Minkoff, Esq
Nathan R. Fennessy, Esq.
Catherine E. Stetson, Esq
Elizabeth E. Theran, Esq.

Charles G. Moerdler, Esq.
Joshua M. Goldman, Esq.
Henry R. Klementowicz, Esq.
Chris Erchull, Esq.
Kayla Turner, Esq.
David A. Vicinanzo, Esq.
William E. Christie, Esq.
Leah Watson, Esq.
Jason Walta, Esq.
Faith, Gay Esq.
Sean R. Ouellette
Shiwali G. Patel, Esq
Callan Sullivan, Esq.
Faith, Gay Esq.

March 10, 2025

*/s/ Mary A. Triick*
Mary A. Triick, No. 1213543